**UNITED STATES DISTRICT COURT**
**IN THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| CAPELLA PHOTONICS, INC., | |
| Plaintiff, | Case No. 2:20-cv-77-JRG |
| v. | **ORAL ARGUMENT REQUESTED** |
| INFINERA CORPORATION, TELLABS, INC., TELLABS OPERATIONS INC., CORIANT AMERICA INC., and CORIANT (USA) INC., | |
| Defendants. | |

**INFINERA CORPORATION, TELLABS, INC., TELLABS OPERATIONS INC.,**
**CORIANT AMERICA INC., AND CORIANT (USA) INC.'S MOTION TO TRANSFER**
**VENUE TO NORTHERN DISTRICT OF CALIFORNIA**

## <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND .............................................................................. 2

   A.   Capella Litigated the Predecessor Patents in NDCA ........................................ 2

   B.   Capella Is a California-Based Company with No Ties to Texas ........................ 4

   C.   Defendants Are California Companies or Have Strong Ties to California ...................... 7

   D.   Associated Evidence and Witnesses Related to Capella's Infringement Allegations, Which Focus on WSS Components of the Accused Infinera Products, Are Located in NDCA ................................................................................................ 8

III. THIS CASE SHOULD BE TRANSFERRED TO NDCA WHERE VENUE IS MORE CONVENIENT ........................................................................ 10

   A.   Capella Could Have Brought This Action in NDCA ........................................ 10

   B.   Private Interest Factors Strongly Favor Transfer .............................................. 11

   C.   Public Interest Factors Strongly Favor Transfer ............................................... 13

IV.  CONCLUSION .................................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Capella Photonics, Inc. v. Cisco Sys., Inc.*,
   711 F. App'x 642 (Fed. Cir. 2018) ...............................................................................3

*ICHL, LLC v. NEC Corp. of Am.*,
   No. 5:08CV175, 2009 WL 1748573 (E.D. Tex. June 19, 2009) ............................................12

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009)...............................................................................................12

*In re Hoffman-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009)...............................................................................................14

*In re Morgan Stanley*,
   417 F. App'x 947 (Fed. Cir. 2011) .........................................................................................15

*In re Nintendo Co.*,
   589 F.3d 1194 (Fed. Cir. 2009)...............................................................................................12

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008)...............................................................................11, 12, 15

*In re Vistaprint Ltd.*,
   628 F.3d 1342 (Fed. Cir. 2010)...............................................................................13, 14

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ...............................................................................................10

*Invitrogen Corp. v. Gen. Elec. Co.*,
   No. CIV A 6:08CV112, 2009 WL 331891 (E.D. Tex. Feb. 9, 2009)................................13, 15

*Regents of the Univ. of California v. Eli Lilly & Co.*,
   119 F.3d 1559 (Fed. Cir. 1997)...............................................................................................13

STATUTES

28 U.S.C. § 1331...............................................................................................................................10

28 U.S.C. § 1338...............................................................................................................................10

28 U.S.C. §§ 1391...........................................................................................................................11

28 U.S.C. § 1400(b) ........................................................................................................................10

28 U.S.C § 1404(a) ...................................................................................................................2, 10

## I.      INTRODUCTION

This case is far removed from Texas and this District. Plaintiff Capella is a Delaware corporation, headquartered in San Jose, California, in the Northern District of California ("NDCA"). It alleges no special connection to Texas in its Complaint, and this Court is not even Capella's first choice of forums. Each of the Defendants[1] is a Delaware corporation. Defendant Infinera Corporation, the parent company to the other named Defendants, is headquartered in Sunnyvale, California in NDCA. The other named Defendants have very few employees, and many of those are based in NDCA. And, critically, no relevant employees of any Defendant are in Texas.

Because this is the second case Capella has brought against Defendants, Capella is well-aware of Defendants' primary ties to California. In 2014, Capella sued most of the Defendants in this case and other companies in the Southern District of Florida ("SDFL"), asserting infringement of predecessor patents. All of those cases were transferred to NDCA for convenience. Capella ultimately lost when all the claims were found invalid. Capella now seeks a different result by again charging Defendants with infringement of (as Capella itself claims) "substantially identical" patents in a new forum. Despite the case being in its early stages, Capella is already attempting to relitigate issues that the NDCA court already decided; Capella filed a motion to strike Defendants' inequitable conduct defense—a motion that it similarly pursued (and lost in relevant part) in NDCA. And by filing a case in this District—nearly 2,000 miles from NDCA—Capella has attempted to shield from trial the key third-party witnesses related to inequitable conduct that were

---

[1] Defendants herein refers to Infinera Corporation ("Infinera"), Tellabs, Inc., Tellabs Operations, Inc. ("Tellabs Ops"), Coriant America Inc. ("Coriant America"), and Coriant (USA) Inc. ("Coriant USA"). Except for Infinera, all other Defendants have been renamed by virtue of acquisition by Infinera. For ease of reference, the Motion refers to each by the name used in the case caption throughout.

previously identified to Capella in the 2014 cases.

SDFL has already determined, based on the same parties and "substantially identical" patents and allegations, that NDCA is clearly convenient for the parties under 28 U.S.C § 1404(a). Nothing of significance has since changed, except to make NDCA *even more* convenient based on the interests of judicial economy, given its familiarity with the parties, the patent family, and the issues presented.

## II.    FACTUAL BACKGROUND

On March 17, 2020, Capella filed this lawsuit against Defendants, alleging infringement of U.S. Patent Nos. RE47,905 ("the '905 patent") and RE47,906 ("the '906 patent") (collectively, the "Patents-in-Suit"). Dkt. 1 ¶¶ 31, 34; Exhibit A, Declaration of Sarah J. Guske ("Guske Decl."), Exs. 36-37. The '905 and '906 patents were both issued on March 17, 2020, from reissue proceedings of U.S. Patent No. RE42,368 ("the '368 patent") and RE42,678 (the "'678 patent") (collectively, "the Predecessor Patents"). Guske Decl., Ex. 8-9.

### A.    Capella Litigated the Predecessor Patents in NDCA

In 2014, Capella filed a patent infringement complaint in SDFL, alleging that Tellabs, Inc., Tellabs Ops, and Coriant USA infringed the Predecessor Patents in *Capella v. Tellabs*, No. 14-60350 ("*Capella-Tellabs*"). Guske Decl., Exs. 59 ¶¶ 20, 26; Ex. 60. On the same day, Capella also filed three other cases in SDFL asserting infringement of the same two Predecessor Patents against Ciena, Cisco, and Fujitsu.[2] Pursuant to § 1404(a), SDFL transferred the First Wave Cases to NDCA, finding it clearly more convenient than SDFL given the proximity of NDCA to the key witnesses in the case. Guske Decl., Ex. 38.

---

[2] *Capella v. Ciena Corporation*, No. 14-20530 ("*Capella-Ciena*"); *Capella v. Cisco Systems, Inc.*, No. 14-20529 ("*Capella-Cisco*"); and *Capella v. Fujitsu Network Communications, Inc.*, No. 14-20531 ("*Capella-Fujitsu*") (collectively, with *Capella-Tellabs*, "the First Wave Cases").

The Honorable Edward M. Chen presided over the cases in NDCA. Judge Chen conducted six hearings over the nearly six-year history of the case. Of note, Judge Chen analyzed and denied in relevant part Capella's motion to strike Cisco's and Fujitsu's counterclaims and defenses of inequitable conduct based on failure to disclose U.S. Patent No. 6,798,941 ("the Smith patent") to the Patent Office during the original prosecution or subsequent reissue proceedings, finding it sufficiently pled. Guske Decl., Exs. 39-40. Judge Chen then stayed the litigation pending the *inter partes* review ("IPR") proceedings of the Predecessor Patents. *Id.*, Ex. 41. All asserted claims in the litigation were determined invalid in the IPRs, and the Federal Circuit summarily affirmed that determination. *See Capella Photonics, Inc. v. Cisco Sys., Inc.*, 711 F. App'x 642 (Fed. Cir. 2018).

During the pendency of the IPR proceedings, Capella pursued reissue of the Predecessor Patents, culminating in the issuance on March 17, 2020 of the Patents-in-Suit. Capella even alleges in this case that the Patents-in-Suit are substantially identical to the Predecessor Patents. Dkt. 1 ¶¶ 32, 35 ("One or more claims of the '905 patent is substantially identical to one or more claims of the original '368 patent," and "[o]ne or more claims of the '906 patent is substantially identical to one or more claims of the original '678 patent."); *see also* Guske Decl., Ex. 42 at 2-3 (asserting that "[c]laims in these newly reissued patents that are substantially identical with the original claims") (quoting Capella). Capella also alleges that this case is sufficiently related to the earlier *Capella-Tellabs* case from the First Wave as to give rise to notice of infringement by Infinera since at least 2014. *See* Dkt. 1 ¶ 40.

On March 16, 2020, Cisco filed a declaratory judgment complaint in NDCA of noninfringement of the Patents-in-Suit. *See Cisco v. Capella*, No. 20-01858 (N.D. Cal.) ("*Cisco DJ Action*"). Cisco alleges that it had a reasonable apprehension of suit based on Capella's statements during the reissue proceedings regarding similar claim scope of the Patents-in-Suit.

Guske Decl., Ex. 43 ¶¶ 21, 32; *see also id.* Ex. 44 ¶¶ 4-7, 25, 40. Capella counterclaimed for infringement of the Patents-in-Suit, and Cisco has since asserted many of the same defenses that Defendants asserted in this case: invalidity, laches, estoppel, waiver, license, and prosecution history estoppel. *Cisco DJ Action*, Dkt. 32 at 25-26 (July 1, 2020). Likely knowing that filing a substantially similar case in its first-choice forum (SDFL) would result in another transfer—Capella decided to file three new complaints, against the parties from the First Wave, across two other districts far outside the subpoena power of California courts. One day after Cisco's DJ Action, Capella filed two complaints in this District—this case against Defendants and a second against Fujitsu (*Capella v. Fujitsu*, No. 20-00076)—and a third complaint in the District of Maryland against Ciena (*Capella v. Ciena*, No. 20-00702)—all of which asserted infringement of the Patents-in-Suit. NDCA has since found the Cisco DJ Action related to the 2014 *Capella-Cisco* action (from the First Wave) and reassigned the Cisco DJ Action to Judge Chen. *Cisco DJ Action*, No. 20-01858, Dkt. 14-15 (N.D. Cal. Apr. 1, 2020).

### B.      Capella Is a California-Based Company with No Ties to Texas

Other than filing suit in this District, Capella has no ties to Texas; it is a Delaware corporation and its principal place of business is in San Jose, California in NDCA. Dkt. 1 ¶ 1; Guske Decl., Exs. 1, 2, 38 at 4. As to Texas or this District, Capella does not allege that it has any offices or employees in this District, or anywhere else in Texas, nor does it allege that it makes or supplies any product or service anywhere, much less in Texas. *Cf.* Guske Decl., Ex. 38 at 4.

On the other hand, Capella has established strong connections to NDCA, many of which are relevant to this case. In particular, six of Capella's eight most recent senior executives are located in NDCA—(1) Steve Real, (2) Larry Schwerin, (3) Rafael Torres, (4) George Berberis, (5) Harvey Trop, (6) Mark Garrett—with the remaining two ((7) Christopher B. Lucas and (8) Bruce Gray) in nearby California cities. Guske Decl., Exs. 1-3, 19, 24, 27-28, 30-31, 34-35.

Capella's lead counsel in this case, Robert Becker and Christopher Wagner, are also located in NDCA. *Id.*, Exs. 1, 4. As for the patents themselves, the '906 and '678 patents name Jeffrey P. Wilde and Joseph E. Davis as inventors, and the '905 and '368 patents include a third inventor, Tai Chen. *Id.*, Exs. 8-9, 36-37. All three inventors are located in NDCA. *Id.*, Exs. 1, 20, 21, 26. The prosecuting attorneys for the Predecessor Patents—Barry Young, David Alberti, and Joshua Isenberg—are also located in NDCA. *Id.*, Exs. 1, 5-7, 29. These individuals and their relevance to the issues in the case are summarized below:

| Name | Location | Relevance to Issues in Case |
|---|---|---|
| Christopher B. Lucas | Glendale, CA | Capella's CEO and CFO, relevant to valuation of, the commercial success/failure of, and any licensing or enforcement for the patents-in suit |
| Steve Real | Corte Madera, CA | Capella's Secretary, relevant to valuation of, the commercial success/failure of, and any licensing or enforcement for the patents-in suit |
| Harvey Trop | Fremont, CA | Capella's former VP, Quality & Reliability, relevant to valuation of, the commercial success/failure of, and any licensing or enforcement for the patents-in suit |
| Rafael Torres | San Jose, CA | Capella's former CFO, relevant to valuation of, the commercial success/failure of, and any licensing or enforcement for the patents-in suit |
| George Berberis | San Jose, CA | Capella's former COO, relevant to valuation of, the commercial success/failure of, and any licensing or enforcement for the patents-in suit |
| Larry Schwerin | Saratoga, CA | Capella's former CEO, involved in prosecution of Predecessor Patents and relevant to inequitable conduct |
| Bruce Gray | El Dorado Hills, CA | Capella's former President, relevant to valuation of, the commercial success/failure of, and any licensing or enforcement for the patents-in suit |
| Mark Garrett | Morgan Hill, CA | Capella's former Director of Optical Engineering, involved in prosecution of Predecessor Patents and relevant to inequitable conduct |
| Robert D. Becker | San Francisco, CA and Palo Alto, CA | Capella's Lead Counsel |
| Christopher L. Wagner | San Francisco, CA | Capella's Lead Counsel |

| Jeffery P. Wilde | Los Altos, CA | Named inventor on the Predecessor Patents and Patents-in-Suit, and relevant to inequitable conduct, and conception and reduction to practice |
| Joseph Davis | Morgan Hill, CA | Named inventor on the Predecessor Patents and Patents-in-Suit and Capella's former CEO; involved in prosecution of Predecessor Patents and relevant to inequitable conduct, and conception and reduction to practice, valuation of, the commercial success/failure of, and any licensing or enforcement for the patents-in suit |
| Tai Chen | San Jose, CA | Named inventor on one of the Predecessor Patents (the '368 patent) and one of Patents-in-Suit (the '905 patent), and relevant to inequitable conduct, and conception and reduction to practice |
| Barry Young | Los Altos, CA | Patent prosecutor for Capella for the Predecessor Patents; relevant to inequitable conduct |
| Joshua Isenberg | Fremont, CA | Patent prosecutor for Capella for patents related to the Predecessor Patents; relevant to inequitable conduct |
| David Alberti | San Francisco, CA | Patent prosecutor for Capella for patents related to the Predecessor Patents; relevant to inequitable conduct |

Capella itself has identified three individuals—including two of the above-identified individuals, Christopher Lucas and Steve Real—as the *only* relevant Capella witnesses in its initial disclosures. Guske Decl., Ex. 52.[3] Other than "[u]nidentified current and former employees of Defendants and suppliers," Capella identifies only one other relevant witness: Jason Eisenberg of the law firm of Sterne Kessler Goldstein & Fox. *Id.* The Patents-in-Suit were prosecuted by Mr. Eisenberg and Sterne Kessler, located in Washington, DC and not in Texas. Guske Decl., Ex. 18. Mr. Eisenberg's statements are also relevant to Defendants' inequitable conduct defense. *See* Dkt. 22 at 35-38 ¶¶ 65-70.

---

[3] The third individual, Rick Snyder, could not be located and Capella provided no contact information for him.

C.     **Defendants Are California Companies or Have Strong Ties to California**

None of Defendants in this case are Texas companies or have strong ties to Texas; instead, all are Delaware corporations. Exhibit B, Declaration of Jianwei Guo ("Guo Decl.") ¶¶ 18-22, 25.

Infinera is the parent company to the other named Defendants, having acquired each of those companies by 2018—while the Capella-Tellabs First Wave case was stayed. Dkt. 1 ¶¶ 13-16; Guo Decl. ¶ 7. Infinera is headquartered in Sunnyvale, California in NDCA. Dkt. 1 ¶ 2; Guo Decl. ¶ 18; Guske Decl., Exs. 32, 48. By virtue of the acquisition, each of the other Defendants, as subsidiaries of Infinera, operate under the Infinera brand, were renamed to adopt the "Infinera" namesake, and, for the operating Defendants, regularly conduct their business from the Sunnyvale headquarters in NDCA. Tellabs, Inc. was renamed to "Infinera Optical Holding, Inc.," Guske Decl., Ex. 49; Tellabs Ops was renamed to "Infinera Optical Networks, Inc.," *id.* Exs. 46, 50; Coriant America was renamed to "Infinera America Inc.," *id.*, Ex. 51; and Coriant USA was renamed to "Infinera (USA) Inc.," *id.*, Ex. 33, 47. *See also* Guo Decl. ¶ 7. Each is a Delaware corporation. Guo Decl. ¶¶ 19-22. Tellabs, Inc. is a holding company that makes no products and provides no services. *Id.* ¶ 19. Other than a few C-suite executives (five of which are located in northern California and based in the Sunnyvale office) and fewer than 20 employees of Coriant America (none of which are located in Texas), none of the other Defendants has any employees. *Id.* ¶¶ 20-22; Guske Decl., Exs. 53-57.

Also by virtue of the acquisition, Defendants' documents were migrated into Infinera's document management systems in Sunnyvale. Guo Decl. ¶¶ 26-27. Therefore, Defendants' key technical, sales, and financial documents related to the Accused Infinera Products in this case are generally accessible via the document management systems at Infinera's Sunnyvale corporate headquarters. *Id.* None of Defendants design the Accused Infinera Products in Texas. *Id.* ¶ 11. Rather, the primary activities related to the design of the FlexILS platform occur at Infinera's

7

headquarters in Sunnyvale, California and in Canada, and, for the accused 7100 Series, 7300 Series, and mTera platforms, primarily in Germany and China, and none in Texas. *Id.*

     **D.**     **Associated Evidence and Witnesses Related to Capella's Infringement Allegations, Which Focus on WSS Components of the Accused Infinera Products, Are Located in NDCA**

In this case, Capella accuses the "7300 Series," "7100 Series," "mTera," and "FlexILS" platforms of infringement (collectively, "the Accused Infinera Products"). Dkt. 1 ¶ 42; Guske Decl., Ex. 25. Capella alleges that the Accused Infinera Products infringe the Patents-in-Suit by virtue of their "ROADM functionality," which "is delivered using Wavelength Selective Switch[s] (WSS)" (the "WSS components"). Dkt. 1 ¶ 57; *see also* Guske Decl., Ex. 25. In its infringement contentions, Capella makes clear that these WSS components, incorporated in the Accused Infinera Products, are at the heart of its infringement allegations in this litigation. *See generally* Guske Decl., Ex. 25 (identifying the "WSS switching modules" in Accused Infinera Products as satisfying multiple claim elements in all asserted claims).

Importantly, none of Defendants *themselves* design, develop, or manufacture the WSS components used in the Accused Infinera Products. Guo Decl. ¶¶ 11-12. The WSS components are instead supplied by ▮▮▮ independent and non-affiliated vendors—▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 12. Historically, the vast majority of the WSS components used in the Accused Infinera Products have been supplied by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶ 14. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



Guske Decl., Exs. 10, 12-13, 17; Guo Decl. ¶¶ 14-15.

None of the WSS suppliers are located in Texas, and none appear to design, develop, or manufacture the WSS components in Texas. Guo Decl. ¶ 16.

Because Capella has focused its infringement allegations on the WSS components, and has identified Defendants' "suppliers" as relevant witnesses in its initial disclosures, Guske Decl., Ex. 52, key third-party witnesses and evidence in this case related to infringement will likely be located in NDCA



---

4

Guske Decl., Exs. 13, 17; Guo Decl. ¶ 14.



## III.   THIS CASE SHOULD BE TRANSFERRED TO NDCA WHERE VENUE IS MORE CONVENIENT

The Court should transfer this case to NDCA in the interests of justice and judicial economy and because it is clearly more convenient for the parties, as SDFL has already found in evaluating nearly identical factors. Guske Decl., Ex. 38. A district court "may transfer any civil action to any other district or division where it might have been brought . . . for the convenience of the parties and witnesses" or "in the interest of justice." 28 U.S.C. § 1404(a). Courts evaluate multiple private and public interest factors to determine whether a venue change would be more convenient for parties and witnesses or serve the interest of justice. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). The private factors include: (1) the relative ease of access to sources of proof; (2) the availability of the compulsory process to secure witnesses' attendance; (3) the willing witnesses' cost of attendance; and (4) all other practical considerations that make a trial easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d at 203. The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having local issues decided at home; (3) the forum's familiarity with the governing law; and (4) the avoidance of unnecessary conflict of law problems involving foreign law's application. *Id.*

### A.   Capella Could Have Brought This Action in NDCA

Capella could have brought this action in NDCA, which would have subject-matter jurisdiction over patent-infringement actions under 28 U.S.C. §§ 1331, 1338. Each Defendant is either qualified to do business in California, operates part of their business from Sunnyvale, and/or has several C-suite executives based in Sunnyvale. *See* § 1400(b); Guo Decl. ¶¶ 19-22, 25; Guske

Decl., Exs. 53-57; Dkt. 1 ¶¶ 2-12, 18-19 (conceding venue for all Defendants is based, in part, on regular and established place of business of Infinera). The Accused Infinera Products have been offered for sale in many states, including in California. Guo Decl. ¶ 10. Defendants are each subject to personal jurisdiction in NDCA for purposes of this action. 28 U.S.C. §§ 1391(b)-(d).

### B.    Private Interest Factors Strongly Favor Transfer

*Relative ease of access to sources of proof:* Sources of proof here are more easily accessible in NDCA than in this District because the vast majority of the parties' fact witnesses reside in NDCA. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1320-21 (Fed. Cir. 2008). Capella's relevant evidence and witnesses are located at its headquarters in NDCA, as identified in its initial disclosures. *See supra* Section II.B; Guske Decl., Ex. 52. Most of Defendants' documents are located or accessible in NDCA. *See supra* Section II.C; Guo Decl. ¶¶ 26-27. And technical, design, development, and sales documents, and other material (*e.g.*, prototypes) related to the WSS components—which appear to be at the heart of this dispute—likely are located at or accessible in NDCA, ███████████████████████████████████████████████████████████████ ██████████████████████████████. *See supra* Section II.D. Similarly, NDCA is home to sixteen of Capella's own witnesses (executives, inventors, and prosecuting attorneys)—fourteen of which reside in NDCA, two of which reside in neighboring California cities, and none of which appear to reside in this District or Texas. *See supra* Section II.B. Importantly, NDCA is also home to sources of proof related to Defendants' inequitable conduct defense (Dkt. 22 at 20-39 ¶¶ 12-73), including Capella's CEO Larry Schwerin (Saratoga, CA), its former CEO and named inventor on the Predecessor Patents and Patents-in-Suit Joseph Davis (Morgan Hill, CA), and its prosecuting attorney Barry Young, Esq. (Los Altos, CA). *See id.*; *see supra* Section II.B. Conversely, none of the relevant documents or sources of proof are located in this District. Guo Decl. ¶¶ 11, 15-16. Thus, this factor weighs strongly in favor of transfer. *TS Tech*, 551 F.3d at

1320-21.

*Compulsory process for witness testimony*: Many of the important witnesses in this case related to noninfringement, damages, and inequitable conduct will be non-party witnesses, the vast majority of whom reside in NDCA. *See supra* Section II. For noninfringement and damages, this includes the third-party WSS vendors ███████████████████████████████████

███████████████████████████████████████████ Many of the key witnesses related to Defendants' inequitable conduct defense—Mark Garrett, Joseph Davis, Jeffrey Wilde, Tai Chen, Barry Young, Joshua Isenberg, David Alberti—are also third-party witnesses who reside in NDCA. *Id.*; Dkt. 22 at 20-22 ¶¶ 12-17. NDCA will be able to secure attendance of these nine third-party witnesses at trial using its subpoena power. *ICHL, LLC v. NEC Corp. of Am.*, No. 5:08CV175, 2009 WL 1748573, at *8-10 (E.D. Tex. June 19, 2009) (finding factor weighs in favor of transfer when transferee court had subpoena power over inventor, patent owner, prosecuting attorney, and other fact witnesses); *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Litigating in this District will prevent Defendants from subpoenaing these witnesses to testify at trial about issues related to inequitable conduct. In sharp contrast, Defendants are unaware of any material witnesses that reside in Texas or within this District's subpoena power. Guo Decl. ¶¶ 19-22. This factor weighs heavily in favor of transfer.

*Cost for willing witnesses*: The majority of the parties' fact witnesses appear to reside in NDCA. *See TS Tech*, 551 F.3d at 1320; *see supra* Section II.B-C. The convenience of transferring this case to Capella's and Defendants' shared home forum in NDCA heavily outweighs litigating this case in this District, where Capella appears to have no offices or relevant employees. *In re Nintendo Co.*, 589 F.3d 1194, 1198-99 (Fed. Cir. 2009). This factor strongly favors transfer.

*Practical considerations*: Because Capella's and Defendants' California headquarters are

located in NDCA, it would be less costly and more efficient for the parties to litigate this case in their shared home forum in NDCA, which is the same forum where the Cisco DJ Action will inevitably go forward as the first-filed case involving the Patents-in-Suit and involves the same defenses of invalidity and estoppel, among others. Indeed, Capella itself has emphasized the importance of keeping all four of the First Wave Cases together in the same court. *See, e.g.*, Guske Decl. Ex. 61 at 19-20. The same logic applies to this case, especially for the issues common to both Cisco and Defendants, which strongly favors transfer.

### C.    Public Interest Factors Strongly Favor Transfer

*Judicial economy*: The "interest of justice" and "judicial economy" "'may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result.'" *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (citation omitted); *see also Invitrogen Corp. v. Gen. Elec. Co.*, No. CIV A 6:08CV112, 2009 WL 331891, at *4 (E.D. Tex. Feb. 9, 2009). Because Judge Chen in NDCA has extensive familiarity with the technology, the substantially identical claims of the Predecessor Patents, the issues of invalidity, inequitable conduct, and estoppel that were raised in the First Wave Cases, *supra* Section II.A, and because he will preside over the Cisco DJ Action, judicial economy counsels strongly in favor of transfer. *Invitrogen*, 2009 WL 331891, at *4-5 (citation omitted) (finding transfer of substantially related case preserves judicial economy when transferee court was "intimately familiar" with technology, having presided over previous cases involving some of the asserted patents, several of the same accused products, and essentially the same parties); *Regents*, 119 F.3d at 1565 ("the interest of judicial economy may favor transfer to a court that has become familiar with the issues"); *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010) (noting that it promotes judicial economy for the same judge to hear related cases). This is especially salient because Capella has already revealed that it intends to relitigate issues already

13

resolved by Judge Chen by seeking to strike Defendants' inequitable-conduct defense as insufficiently pled (Dkt. 36)—raising nearly identical arguments that it raised (and lost) against Cisco and Fujitsu in the First Wave Cases (*compare id.*, *with* Guske Decl., Ex. 63). Defendants' allegations of inequitable conduct for the Smith patent are nearly identical to Cisco's and Fujitsu's allegations in the First Wave Cases, which Judge Chen found sufficiently pled. Guske Decl., Ex. 40. Judicial economy heavily favors transfer to prevent Capella from relitigating the same issues in a new forum, resulting in a colossal waste of judicial resources and to avoid disrupting judicial comity and creating conflicting rulings on the same issue from different courts.

*Local interests*: NDCA has a strong local interest in adjudicating this case because many of the key individuals related to the claims and defenses reside in or near NDCA. *See In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (whether the case "calls into question the work and reputation of several individuals residing in or near that district"). Capella, its executives, the inventors, the prosecution attorneys ███████████████████████████ ██████ are located in NDCA. *See supra* Section II.C-D. This District, on the other hand, has no connection or local interest to the facts of this case. Guo Decl. ¶ 16.

Capella purports to show a local interest to Texas in two ways. *First*, it points at two alleged office locations of Defendants in Coppell, TX and Dallas, TX. Dkt. 1 ¶¶ 2-3, 9, 11. Neither office location is currently, nor has been at any time during the pendency of this lawsuit, occupied or used by Defendants to conduct their business. Guo Decl. ¶¶ 23-24. Defendants subleased part of the Coppell office to an unrelated company in 2016 and, by virtue of the acquisition, Defendants fully vacated that office in May 2019, well before this suit was filed. *Id.* ¶ 23. Defendants have no employees there, other than individuals who provide janitorial or maintenance services to the subleasee. *Id.* The Dallas office is not affiliated with any Defendant; rather, it is affiliated with

another "Tellabs" entity that Infinera did not acquire. *Id.* ¶ 24; Guske Decl., Ex. 64. Defendants have no employees who work from that Dallas office. Guo Decl. ¶ 24. Because the Accused Infinera Products are not designed, developed, or manufactured from either location, and there are no key witnesses who work from there, *id.*, these offices have no relevance to this case.

*Second*, Capella claims that "Infinera product(s) power CyrusOne's Texas Internet Exchange (IX), the first statewide IX in the United States." Dkt. 1 ¶ 2. This claim misses the mark because the product sold for the Texas IX is not accused in this case. In 2013, Infinera sold a product called the "Infinera DTN" to its customer CyrusOne. Guo Decl. ¶ 6. Capella has not identified the Infinera DTN as an accused product. *See id.*; Dkt. 1 ¶¶ 2, 42; *see generally* Guske Decl., Ex. 25. But even if the "Infinera product(s)" were accused and relevant to the case, Infinera sells its products in many states, Guo Decl. ¶ 10, and even CyrusOne appears to offer a national IX, Guske Decl., Ex. 45. Consequently, the alleged activity does not give Texas any substantial interest to this case. *TS Tech*, 551 F.3d at 1321 (national sales mean that "citizens of [this district] have no more or less of a meaningful connection to this case than any other venue"). Because this District has no specific connection to this case, and NDCA has significant interest, this factor weighs strongly in favor of transfer.

The remaining three public interest factors are neutral because both districts are equally capable of applying federal patent law, have competing statistical advantages on their respective dockets, Guske Decl., Ex. 62; *Invitrogen*, 2009 WL 331891, at *5-6, and these statistics are not "of particular significance" where the plaintiff is a non-practicing entity, *In re Morgan Stanley*, 417 F. App'x 947, 950 (Fed. Cir. 2011).

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court transfer this case to the Northern District of California.

Dated: July 6, 2020                               Respectfully submitted,

                                                  */s/ Kurt Pankratz*
                                                  ─────────────────────────
                                                  Kurt Pankratz (TX SBN 24013291)
                                                  E-mail: kurt.pankratz@bakerbotts.com
                                                  BAKER BOTTS LLP
                                                  2001 Ross Avenue, Suite 900
                                                  Dallas, TX 75201
                                                  Telephone: 214-953-6500
                                                  Facsimile: 214-953-6503

                                                  Sarah J. Guske (CA SBN 232467)
                                                  E-mail: sarah.guske@bakerbotts.com
                                                  BAKER BOTTS LLP
                                                  101 California St, Ste 3600
                                                  San Francisco, CA 94111-5843
                                                  Telephone: (415) 291-6200
                                                  Facsimile: (415) 291-6300

                                                  John Frederick Gaustad (CA SBN 279893)
                                                  *Pro Hac Vice*
                                                  Email: john.gaustad@bakerbotts.com
                                                  BAKER BOTTS LLP
                                                  1001 Page Mill Road
                                                  Building One Suite 200
                                                  Palo Alto, Ca 94304
                                                  Telephone: 650.739.7500
                                                  Facsimile: 650.739.7699

                                                  Lauren J. Dreyer (DC 1007189)
                                                  *Pro Hac Vice*
                                                  Email: lauren.dreyer@bakerbotts.com
                                                  BAKER BOTTS LLP
                                                  700 K St NW
                                                  Washington, DC 20001
                                                  Telephone: 202.639.7700
                                                  Facsimile: 202.639.7890

                                                  Attorneys for Defendants, INFINERA
                                                  CORPORATION, TELLABS, INC.,
                                                  TELLABS OPERATIONS INC.,
                                                  CORIANT AMERICA INC., and
                                                  CORIANT (USA) INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on this 6th day of July, 2020, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Kurt Pankratz*
Kurt Pankratz

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and supporting materials are authorized to be filed under seal pursuant to the Protective Order entered in this matter.

*/s/ Kurt Pankratz*
Kurt Pankratz

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel has complied with the meet and confer requirement in Local Rule CV-7(h). The parties participated in a telephonic conference on July 6, 2020, which was attended for Defendants by Kurt Pankratz, Sarah Guske, and Lauren Dreyer of Baker Botts, LLP and for Plaintiff by Christopher Wanger of Manatt, Phelps & Phillips and Chad Everingham of Ward, Smith & Hill, PLLC. No agreement could be reached, and therefore, discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve. Plaintiff opposes this motion.

*/s/ Kurt Pankratz*
Kurt Pankratz

17