**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |  |
|---|---|---|
| CAPELLA PHOTONICS, INC. | | |
| Plaintiff, | | |
| v. | | Case No.  2:20-cv-00077-JRG |
| INFINERA CORPORATION, TELLABS, INC., TELLABS OPERATIONS INC., CORIANT AMERICA INC., and CORIANT (USA) INC., | | |
| Defendants. | | |

**OPPOSITION OF PLAINTIFF CAPELLA PHOTONICS, INC. TO
DEFENDANTS' MOTION TO TRANSFER VENUE TO NORTHERN DISTRICT OF
CALIFORNIA**

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................................ 1

II.   FACTUAL BACKGROUND ......................................................................... 2

      A.   Plaintiff and the Asserted Patents ..................................................... 2

      B.   The History of Defendants and the Accused Products ......................... 2

      C.   The Prior Actions on the Original Patents ............................................ 6

      D.   The New Actions Filed By Capella on the Reissue Patents ................... 7

III.  DISCUSSION ................................................................................................ 8

      A.   The Applicable Legal Standard ........................................................... 8

      B.   The Defendants Have Not Shown This Case Could Have Been Filed in the
           NDCA ................................................................................................ 9

      C.   The Defendants Have Not Satisfied Their Burden To Establish That The
           NDCA is Clearly More Convenient ..................................................... 10

           1.   The Private Factors Do Not Warrant Transfer ........................... 10

                a)   The Relative Ease of Access to Sources of Proof Does Not
                     Favor Transfer ............................................................... 10

                b)   The Availability of Compulsory Process to Secure the
                     Attendance of Witnesses Does No Favor Transfer ..................... 11

                c)   The Cost of Attendance for Willing Witnesses Does Not
                     Favor Transfer ................................................................ 12

                d)   There Are No Other Practical Problems That Make Trial of
                     the Case in the NDCA More Convenient .................................. 13

           2.   The Public Factors Do Not Warrant Transfer ........................... 13

                a)   Administrative Difficulties Weigh Against Transfer .................. 13

                b)   Local Interests in Having Localized Interests Decided at
                     Home Does Not Favor Transfer ................................................ 14

                c)   Judicial Economy Will Be Served Because there is a Co-
                     pending Case Involving the Same Patents ................................. 14

                d)   There Are No Conflict of Laws Issues ....................................... 15

IV.   CONCLUSION .............................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

## CASES

*AGIS Software Dev. LLC v. Apple, Inc.*,
2018 U.S. LEXIS 94947 (E.D. Tex. June 6, 2018)................................................................10

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
21 F.3d 1558 (Fed. Cir. 1994)................................................................9

*Capella Photonics, Inc. v. Cisco Sys. Inc.*,
No. 14-cv-03348-EMC (N.D. Cal. Sept. 6, 2019) ................................................................7

*Capella Photonics, Inc. v. Tellabs, Inc.*,
No. 3:14-cv-03350-EMC (N.D. Cal. March 6, 2015)................................................................6

*Cooper v. Farmers New Century Ins. Co.*,
593 F. Supp. 2d 14 – 19 (D.D.C. 2008) ................................................................9

*Daimler AG v. Bauman*,
134 S.Ct. 746 (2014)................................................................9

*Diem LLC v. BigCommerce, Inc.*,
No. 6:17-cv-186, 2017 WL 6279907 (E.D. Tex. Dec. 28, 2017) ................................................................10

*Frederick v. Advanced Fin. Sols., Inc.*,
558 F. Supp. 699 (E.D. Tex. 2007)................................................................12

*Fundamental Innovation Sys. Int'l LLC v. LG Elecs., Inc.*,
No. 2:16-cv-1425, 2018 U.S. Dist. LEXIS 22932 (E.D. Tex. Feb. 13, 2018),
*mandamus denied*, ECF No. 137 ................................................................9

*In re Genentech*,
566 F.3d 1338 (Fed. Cir. 2009)................................................................13

*In re Google*,
Case No. 2017-107 (Fed. Cir. Feb. 23, 2017)................................................................14

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) ................................................................8

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ................................................................8, 10

*In re Volkswagen II*,
545 F.3d at 216 ................................................................11

*Innovative Global Sys. LLC v. OnStar, LLC*,
2012 U.S. Dist. LEXIS 114504 (E.D. Tex. February 14, 2012)................................................................13

*Intellectual Ventures I LLC v. T-Mobile USA INc.*,
No. 2:17-cv-577-JRG, 2018 U.S. Dist. LEXIS 231526 (E.D. Tex. June 29, 2018)................................................................12

*Luminati Networks, Ltd. v. BIScience Inc.*,
No. 18-CV-00483-JRG, 2019 U.S. Dist. LEXIS 79843 (E.D.T.X. May 13, 2019) ................................................................12

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*Quest Nettech Corp. v. Apple, Inc.*,
   No. 2:19-cv-118-JRG, ECF No. 53 (E.D. Tex. Nov. 27, 2019) ..............................10

*Sleepy Lagoon, Ltd. v. Tower Group, Inc.*,
   809 F. Supp. 2d 1300 (N.D. Okla. 2011) ....................................................................8

*St. Lawrence Comms. LLC v. Apple Inc.*
   2017 U.S. Dist. LEXIS 192694 (E.D. Tex. 2017) .....................................................12

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
   137 S. Ct. 1514 (2017) ............................................................................................6, 9

*Uniloc USA Inc. v. Samsung Elecs. Am., Inc.*,
   No. 2:16-cv-642-JRG, ECF No. 216 (E.D. Tex. Apr. 19, 2017) ............................10

## STATUTES

28 U.S.C. § 1400(b) ...........................................................................................................9

28 U.S.C. § 1404 ................................................................................................................8

28 U.S.C. § 1404(a) ...........................................................................................................8

35 U.S.C. § 251 ..................................................................................................................7

## OTHER AUTHORITIES

https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2020.pdf 13, 14

U.S. Patent No. 6,625,346 ..................................................................................................2

U.S. Patent No. 6,879,750 ..................................................................................................2

U.S. Patent No. RE42,368 ...............................................................................................2, 7

U.S. Patent No. RE42,678 ...............................................................................................2, 7

U.S. Patent No. RE47,905 ..................................................................................................7

U.S. Patent No. RE47,906 ..................................................................................................7

## I.       INTRODUCTION

The Defendants' motion to transfer to NDCA should be denied. First, the Defendants have failed to make, and cannot now make, the threshold showing that this case could have been brought in the NDCA.  The terse, one-paragraph discussion at pages 10-11 of the motion is insufficient as a matter of law to demonstrate that *both* venue and personal jurisdiction lie in NDCA over *each* defendant.  This alone is basis to deny the Defendants' motion.

Additionally, the Defendants have failed to satisfy their burden to show that the NDCA is clearly more convenient than this Court, which is handling another case on the same patents.  It is not.  Instead, this case is a prime example of why plaintiffs insist on venue discovery. The Defendants' motion and evidence focus on Infinera's presence and witnesses in California and circumscribe the nature of Plaintiff's claims, leading to the impression that nothing outside of California mattered.  But three of the four accused platforms in this action were designed and developed by companies that Infinera Corporation acquired (the "Subsidiary Defendants[1]") *before* Infinera acquired them. These Subsidiary Defendants are and always have been based in Illinois and Texas and they continue to design, develop and manufacture the products outside of California. Defendants' submission also conveniently omits that Infinera's third largest U.S. presence—with over 100 employees—is located in Richardson, Texas.  If Texas is not Infinera's home state, it should qualify as a winter home.  And although the primary basis for the requested transfer is witness location, the reality is that witnesses are spread throughout the U.S. and the World and Infinera has done little, if anything, to show how any witness from California is of significance.  Infinera has not sought discovery from any of them.  In short, the Defendants fail to

---

[1] The Subsidiary Defendants are Tellabs, Inc., Tellabs Operations Inc., Coriant America Inc. and Coriant (USA) Inc.

establish that the NDCA is clearly a more convenient forum.

## II.     FACTUAL BACKGROUND

### A.     Plaintiff and the Asserted Patents

Capella is a pioneer of breakthrough optical switching technologies for use in optical transmission networks.  Capella's technologies include Dense Wavelength Division Multiplexing (DWDM) transport platforms that include reconfigurable optical add and drop multiplexers (ROADMs).  Capella has been granted an extensive patent portfolio on its technologies.

Capella is the owner of U.S. Patent No. 6,879,750 (the "'750 patent"). (Complaint, (Dkt. #1) ¶ 31.) The '750 patent was reissued to Capella on May 17, 2011 as Patent No. RE42,368 (the "'368 patent"). (*Id.*)  Capella also is the owner of U.S. Patent No. 6,625,346 (the "'346 patent"). (*Id.*, ¶ 34) The '346 patent was reissued to Capella on November 14, 2006 as Patent No. RE39,397 and subsequently on September 6, 2011 as Patent No. RE42,678 (the "'678 patent"). (*Id.*) The '368 and '678 patents are referred to herein as the "Original Patents."

### B.     The History of Defendants and the Accused Products

Capella accuses four products or platforms in this case: (1) the 7300 Series platform; (2) the 7100 Series platform; (3) the mTera Universal Transport Platform; and (4) the FlexILS Flexible Grid Line System (collectively, the "Accused Products").  All of the Accused Products are modular DWDM add-drop optical transport platforms that use a flexible ROADM architecture.

The Defendants' motion focuses on Infinera's California presence and a particular component of the Infinera platforms, brushing aside that three of the four Accused Products were developed outside of California by companies that Infinera subsequently acquired.[2]  Specifically,

---

[2] The fourth Accused Product, the FlexILS Flexible Grid Line System, was developed by Infinera in Ottawa, Canada and Sunnyvale, California.  (See Wanger Decl., Exh. 1 at pp. 25-31.)

the 7300 Series Platform, the 7100 Series Platform and the mTera Universal Transport Platform were originally developed by the Subsidiary Defendants at facilities in Napierville, Illinois, Munich, Germany, Shanghai, China and other locations well beyond California's boundaries.  (See concurrently filed Declaration of Christopher L. Wanger filed in support of this Opposition ("Wanger Decl.") at Exh. 1 at pp. 22-35; Exh. 9 and Exh. 14.)   The Accused Products are manufactured in Thailand, Germany, Malaysia and China. (Wanger Decl., Exh. 1 at pp. 37-43.)

Through a series of corporate transactions, the Subsidiary Defendants are now under the Infinera umbrella, although they have retained much of their historic corporate locations, including in Texas. As part of their evidence, the Defendants submitted the Declaration of Jianwei Guo, a Director of Global Strategic Sourcing at Infinera.  (See Dkt. # 37-3)  His deposition and other discovery revealed that Mr. Guo's Declaration was materially incomplete and failed to disclose substantial activities of the Defendants in Texas.  For example, Mr. Guo testified that he had little knowledge of the Subsidiary Defendants and did not know the nature of their businesses. (Wanger Decl., Exh. 1 at pp. 16:19-18:8.)  Although he described Infinera Optical Holding Inc. as a holding company, he did not know what assets it held.  (Wanger Decl., Exh. 1 at p. 84:21-25.)

It also turns out that of the 34 states in which Infinera has employees, Texas ranks third in terms of total employees.  Infinera employs 114 people in Texas at its new offices in Richardson, Texas. (Wanger Decl., Exh. 4.) In his Declaration, Mr. Guo mentions several properties in Texas leased or associated with the Defendants. (Guo Decl. (Dkt. # 37-3) at ¶¶ 23-24.) Mr. Guo, however, made no mention of Infinera's Richardson, Texas offices in his Declaration. When asked about the omission, Mr. Guo could not recall any reason for intentionally leaving it out of his Declaration. (Wanger Decl., Exh 1 at p. 66:10-16.)

Mr. Guo also failed to mention in his Declaration that Infinera's Sr. V.P. of Global

Research and Development, Greg Greco, resides in Texas.  The Defendants only disclosed Mr. Greco in response to Capella's interrogatory seeking the identities of those persons who reside or work in the Eastern District of Texas and Texas with knowledge of facts relevant to this lawsuit. (See Wanger Decl., Exh 5 at pp. 7-8.)

In his Declaration, Mr. Guo states that Infinera Corporation has its "headquarters" in Sunnyvale, California.  In contrast, Mr. Guo fails to state where the Subsidiary Defendants have their headquarters, principal place of business or operations. (Compare Guo Decl. ¶ 18 with ¶¶ 19-20.)  It turns out that none of the Subsidiary Defendants has its headquarters or principal place of business in California; yet one, Coriant (USA) Inc. (now known as Infinera (USA) Inc.) has its principal place of business in Coppell, Texas.[3]  (See Wanger Decl., Exh. 6 at Capella_Infinera0000454520.)  In fact, Tellabs Operations, Inc. used to be named Tellabs Texas, Inc.  (Wanger Decl., Exh. 6 at Capella_Infinera_000045424.)  Moreover, Mr. Guo confirmed that three of the four Accused Products were developed by the Tellabs defendants at the facility in Napierville, Illinois.  (Wanger Decl., Ex. 1 at pp. 22:10-35:24.)  It is no surprise that both Tellabs, Inc. and Tellabs Operations Inc. list Napierville as their primary places of business.  (See Wanger Decl., Exh. 6 at Capella_Infinera0000454523-454524.)

That the Subsidiary Defendants have ultimately been rolled into the Infinera umbrella does not render their activities outside of California irrelevant.  In 2013, Coriant acquired the Tellabs

---

[3] Mr. Guo testified that Coriant (USA) Inc. performed customer support in Coppell but did not know why it had an office located in Coppell or the nature of its business. (Wanger Decl., Exh. 1 at p. 60:1-25.) When asked about the document listing Coriant (USA) Inc.'s principal place of business as Coppell, Texas and whether it allowed him to determine the company's place of business, Mr. Guo testified "If that's something you got from Infinera with the address there, then that's it. And I think that should be in line with the content that bring to the declaration form, yeah." (Wanger Decl., Exh. 1 at p. 86:1-87:4.) Later, under questioning by his own counsel, Mr. Guo testified that Coriant USA Inc. had subleased the specific space at 615 E. Hwy 121 in Coppell but did not testify that the company had ever moved its business out of Texas.

defendants and continued with development of the Accused Products at the Napierville facility and at Coriant's facilities in Germany and China. (Wanger Decl., Exh. 1 at pp. 37-43.) Coriant renamed Tellabs Operations Inc. as "Coriant Operations Inc." (See Guo Decl. (Dkt.# 37-3) at ¶ 7.)

After Infinera acquired Coriant in 2018 it renamed (1) Coriant Operations Inc. (formerly Tellabs Operations Inc.) as "Infinera Optical Networks, Inc.";  (2) Coriant (USA) Inc. as "Infinera (USA) Inc."; and (3) Tellabs Inc. as "Infinera Optical Holding Inc." (Guo Decl. (Dkt # 37-3), at ¶ 7.)   Organizational charts showing the corporate structure of Infinera Corporation and its ownership of the Defendants dated May 12, 2020 and July 7, 2020 are attached respectively as Exhibits 8 and 7 to the Wanger Decl.

Highlighting the material gaps in Mr. Guo's Declaration, the Defendants produced in discovery a document that sets out each of the Subsidiary Defendants' former names, their place of incorporation and their current principal place of business.[4] (Wanger Decl., Exh. 6.) That document confirms that the Subsidiary Defendants are all Delaware corporations and have their places of business in Illinois, Texas or Maryland and not in California:

| Defendant | Former Names | Current Name | Incorporation | Principal Place of Business |
|---|---|---|---|---|
| Coriant (USA) Inc. | Coriant (USA) Inc. | Infinera (USA) Inc. | Delaware | Coppell, TX |
| Coriant America Inc. | Coriant America Inc. | Infinera America Inc. | Delaware | Annapolis Junction, MD |
| Tellabs, Inc. | Tellabs, Inc. | Infinera Optical Holding, Inc. | Delaware | Napierville, IL |
| Tellabs Operations, Inc | Tellabs Texas, Inc. and Tellabs Operations, Inc. | Infinera Optical Networks, Inc. | Delaware | Napierville, IL |

---

[4] The document references a name change made on June 2, 2020 and thus should be current as of the time Capella filed this action. (See Wanger Decl., Exh 6 at Capella_Infinera_000045423 noting date of Tellabs, Inc. name change to Infinera Optical Holding, Inc.)

C.      The Prior Actions on the Original Patents

Though predecessors of the reissued patent at issue in this case were litigated in California, no substantive analysis of the patents took place in those cases.  Specifically, in 2014, Capella sued three of the Defendants—Tellabs, Inc., Tellabs Operations, Inc. and Coriant (USA) Inc.—and three other defendants ((1) Fujitsu Network Communications, Inc.; (2) Ciena Corporation; and (3) Cisco Systems, Inc.) on the Original Patents in the Southern District of Florida. The four actions were consolidated and transferred to the NDCA in 2014. That transfer was granted before the Supreme Court's 2017 opinion in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 1521 (2017), which significantly narrowed venue in patent infringement cases.

In March, 2015, shortly after the transfer, the NDCA stayed the cases pending IPRs.  (See *Capella Photonics, Inc. v. Tellabs, Inc.,* No. 3:14-cv-03350-EMC (N.D. Cal. March 6, 2015) (Dkt. #107).) The court noted that because it had limited the scope of discovery and delayed claim construction, "very little substantive work has been done in this case." (*Id*. at p. 3:3-7.)  As a result of the actions of the PTAB, no substantive activity took place in the NDCA after the stay.

In 2016, the PTAB found all of the challenged claims in the Original Patents to be unpatentable.  The Federal Circuit affirmed the PTAB's decision in 2018.  In the interim, Capella filed with the PTO applications pursuant to 35 U.S.C. § 251 to reissue both of the Original Patents. Based on the PTAB's invalidation of the asserted claims in the Original Patents, the NDCA dismissed the actions as moot and without prejudice pending reissuance of the Original Patents. *See Capella Photonics, Inc. v. Cisco Sys. Inc.*, No. 14-cv-03348-EMC, (N.D. Cal. Sept. 6, 2019) (Dkt. # 226 at p. 6:9-16).

Although Defendants' motion implies that the NDCA had gained familiarity with the substance of the technology and the patents because it held six (6) hearings over a six-year period,

only one of those hearings was substantive.  (See Mot. at p. 3.)  The rest were generally status conferences and a hearing to determine the terms on which the case would be dismissed.

### D.      The New Actions Filed By Capella on the Reissue Patents.

After the NDCA dismissed the consolidated actions, the PTO reissued the '368 patent to Capella with amended claims on March 17, 2020 as U.S. Patent No. RE47,905 (the "'905 patent"). (Complaint (Dkt. #1), ¶ 31.)  The PTO also reissued the '678 patent to Capella with amended claims on March 17, 2020 as U.S. Patent No. RE47,906 (the "'906 patent"). (*Id.*, ¶ 34.)  The '905 and '906 patents are collectively referred to as the "Asserted Patents." Like the Original Patents, the Asserted Patents cover ROADM technology used in optical switching networks or platforms. No court has construed the original or amended claims.

The same day that the Asserted Patents reissued, Capella filed this action against the Defendants and two other actions for infringement of the Asserted Patents: (1) an action against Fujitsu in this Court: E.D. Tex Case No. 20-cv-00076-JRG; and (2) an action against Ciena Corporation in the Maryland District Court: D. Md. Case No. 20-cv-00702-GLR.  Capella also was sued by Cisco for a declaratory judgment of non-infringement of the Asserted Patents in the NDCA: N.D. Cal Case No. 20-cv-01858-EMC.

## III.    DISCUSSION

### A.      The Applicable Legal Standard

The transfer analysis under section 28 U.S.C. § 1404(a) involves a two-step inquiry. First, the Court determines "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) (hereinafter "Volkswagen I"). Next, the Court weighs a number of non-exclusive factors. *See Volkswagen I*, 371 F.3d at 203. The private factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the

attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203. The public factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen I*, 371 F.3d at 203.

While a plaintiff's choice of venue is not an express factor in the § 1404 transfer analysis, the appropriate deference afforded to the plaintiff's choice is reflected by the defendant's elevated burden of proof. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("Volkswagen II"). In order to support its claim for a transfer under § 1404(a), the moving defendant must demonstrate that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *Id*. Absent such a showing, however, the plaintiff's choice is to be respected. *Id*.

Additionally, when deciding a motion to transfer venue under § 1404(a), the court may consider undisputed facts outside of the pleadings such as affidavits or declarations, but it must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party. *See Sleepy Lagoon, Ltd. v. Tower Group, Inc.*, 809 F. Supp. 2d 1300, 1306 (N.D. Okla. 2011); *see also Cooper v. Farmers New Century Ins. Co.*, 593 F. Supp. 14, 18 – 19 (D.D.C. 2008).

**B.    The Defendants Have Not Shown This Case Could Have Been Filed in the NDCA.**

To prove that transfer to the NDCA is proper, the Defendants must first establish that this action could have been brought there. That requires a demonstration that each Defendant is subject to both venue and personal jurisdiction in the NDCA. The Defendants' argument on this issue is contained in one paragraph on pages 10-11 of their motion. But that argument entirely fails to demonstrate the Subsidiary Defendants are subject to venue or personal jurisdiction in the NDCA.

The motion denied on this basis alone.  *See Fundamental Innovation Sys. Int'l LLC v. LG Elecs., Inc.*, No. 2:16-cv-1425, 2018 U.S. Dist. LEXIS 22932, at *4-5 (E.D. Tex. Feb. 13, 2018), *mandamus denied*, ECF No. 137.

The Defendants state, for instance, that "[e]ach Defendant is either qualified to do business in California, operates part of its business in California, and/or has several C-suite executives in California."  But venue for a patent infringement suit requires more than these conclusory statements.  Under the patent venue statute, for venue to be proper in NDCA, the Defendants must demonstrate that *each* defendant is either incorporated in California or has a regular and established place of business and committed the allegedly infringing acts in NDCA.  *See* 28 U.S.C. § 1400(b); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519-21 (2017). The Defendants make no "defendant-by-defendant" showing, and therefore fail on this threshold issue of venue.

The Defendants also have not demonstrated that personal jurisdiction is proper in the NDCA as to each Defendant.  For starters, the motion cites the general venue statute to support the personal jurisdiction argument.  (Dkt. 37 at 11, citing 28 U.S.C. § 1391(b)-(d)).  In addition, the motion does not state whether Defendants are contending that each Defendant is subject to personal jurisdiction under general or specific jurisdiction and, if so, which test is being applied. *See, e.g.*, *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994). Like with venue, the residence of the Defendants' C-suite executives is irrelevant to personal jurisdiction, and incorporations and principal places of business outside of California likewise do not advance the personal jurisdiction inquiry. For this additional reason, Defendants have not made out a threshold showing that the case might have been filed in the NDCA.

**C.**    **The Defendants Have Not Satisfied Their Burden To Establish That The NDCA is Clearly More Convenient.**

    **1.**    **The Private Factors Do Not Warrant Transfer.**

        **a)**    **The Relative Ease of Access to Sources of Proof Does Not Favor Transfer.**

This factor looks at where documents are stored.  *Volkswagen II*, 545 F.3d at 316.  For this factor to weigh in favor of transfer, the Defendants must show that transfer to the NDCA will result in more convenient access to sources of proof.  *See Diem LLC v. BigCommerce, Inc.*, No. 6:17-cv-186, 2017 WL 6279907, at *2 (E.D. Tex. Dec. 28, 2017).

The Defendants concede in an interrogatory response that electronic records are not "located in any particular location."  (Wanger Decl., Exhibit 3 at p. 9.) And the fact that the Subsidiary Defendants still have their principal offices in places other than the NDCA reflects that the location of documents and other sources of proof are also scattered throughout the U.S. and abroad.  Regardless, such records can be easily produced anywhere in the country.  *AGIS Software Dev. LLC v. Apple, Inc.*, 2018 U.S. LEXIS 94947, *8 (E.D. Tex. June 6, 2018); *Quest Nettech Corp. v. Apple, Inc.*, No. 2:19-cv-118-JRG, ECF No. 53, at 7 (E.D. Tex. Nov. 27, 2019) ("However, given the realities of today's digital world where what once would have been boxes and boxes of documents can now be delivered with the click of a mouse this factor's weight is at most minimal."); *Uniloc USA Inc. v. Samsung Elecs. Am., Inc.*, No. 2:16-cv-642-JRG, ECF No. 216, at 8-9 (E.D. Tex. Apr. 19, 2017) ("Despite the absence of newer cases acknowledging that in today's digital world computer stored documents are readily moveable to almost anywhere at the click of a mouse, the Court finds it odd to ignore the reality in favor of a fictional analysis that has more to do with early Xerox machines than modern server farms.").  This factor weighs against transfer.

      b)       **The Availability of Compulsory Process to Secure the Attendance of Witnesses Does Not Favor Transfer.**

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order.  *In re Volkswagen II*, 545 F.3d at 216.

Here, the Defendants fail to identify any third-party witnesses who would need to be subpoenaed in California. The Defendants identify several witnesses associated with Capella, largely former employees, attorneys and named inventors on the Accused Patents or their predecessors. But Defendants are including as "witnesses" individuals with no relevant information.  For example, Defendants list the undersigned lead attorneys in this matter, but fail to state what evidence they could provide .  They list Mark Garret as "Capella's former Director of Optical Engineering, involved in prosecution of Predecessor Patents and relevant to inequitable Conduct" but fail to state what relevant information he has.  Mr. Garret has long since left the company and is not mentioned in Defendants' inequitable conduct claims.  Former executives Trop, Torres, Berberis, and Gray are similarly listed with no helpful information related to the issues in suit.  Defendants appear to have merely listed former executives because they live or have lived in California.  They employ buzzwords like "licensing or enforcement" in referencing the witness but fail to state what material information the witness has on those topics.  The Defendants have utterly failed to carry their burden.

The Defendants also generally identify certain suppliers of a selected component of the Accused Products, the Wavelength Selective Switch or "WSS" component, in an attempt to suggest there are witnesses beyond this court's subpoena power.  But significantly, the Defendants submit no evidence to establish that the persons at their suppliers with knowledge of the actual design and development of the WSS components are based either outside of Texas or in California.

Instead, Mr. Guo identifies in his Declaration certain people based in California and Pennsylvania who are his contacts at the suppliers for "procurement" of WSS components. (Guo Decl. at ¶ 13.) The declaration is silent on what these procurement contacts might know in the way of relevant and admissible evidence.  Indeed, the Defendants make no showing these persons have any information relevant to the design and development of the WSS parts or any other information that would be relevant at trial. And, tellingly, none of the people identified in Mr. Guo's Declaration are identified by the Defendants in their Initial Disclosures. (Wanger Decl., Exh. 10 at pp. 30-38). Instead, the Defendants state that the supplier witnesses are all "TBD".  (*Id.* at pp. 37-38.)   Because the Defendants have not identified any third party witness who would be unwilling or unavailable to testify at trial, they fail to establish that this factor favors transfer.  *See Intellectual Ventures I LLC v. T-Mobile USA Inc.*, No. 2:17-cv-577-JRG, 2018 U.S. Dist. LEXIS 231526, at *17 & n.4 (E.D. Tex. June 29, 2018) ("The Court is of the opinion that a factor which does not reach any witnesses identified by either party is properly considered to be neutral and does not weigh in the transfer analysis," and noting "that neutral factors cut against transfer" "is implicit in the overall evaluation of the factors").

### c)   The Cost of Attendance for Willing Witnesses Does Not Favor Transfer.

The third private interest factor focuses on the cost of attendance for willing witnesses. The convenience of party witnesses is given little weight.  *See, e.g., Frederick v. Advanced Fin. Sols., Inc.*, 558 F. Supp. 699, 704 (E.D. Tex. 2007).  To the extent that the Defendants seek to call any of their employees as witnesses, they are not non-party witnesses and their personal convenience is trumped by the decisions of their employer.  *St. Lawrence Comms. LLC v. Apple Inc.* 2017 U.S. Dist. LEXIS 192694, *14 (E.D. Tex. 2017). And Mr. Guo confirmed that Defendants' likely key party witnesses are not located in NDCA.  Instead, they are located in

Illinois, Germany, China, and other non-California locales, where three of the four Accused Products were developed.[5] Mr. Guo admitted that the person with the most extensive knowledge of the Accused Products is Brian Nagle (a prior Tellabs and Coriant employee and now Infinera employee).  (Wanger Decl., Exh.1 at pp. 25:21-27:8; 29:15-31:8 and 57:23-59:24.) Mr. Nagle has been based in the Defendants' Napierville office since 2000, an office that is more than a thousand miles closer to Marshall, Texas than it is to the NDCA. (Wanger Decl., Exh. 11.) Tellingly, the Defendants made no mention of Mr. Nagle in their Motion and no meaningful attempt to establish that this factor favors transfer.

> **d)   There Are No Other Practical Problems That Make Trial of the Case in the NDCA More Convenient.**

The Defendants also fail to identify any practical problems with proceeding in this District that warrant transfer.  There are none.  The Defendants also waited four months after this action was filed before seeking transfer, which delay should weigh against transfer.  *See Innovative Global Sys. LLC v. OnStar, LLC*, 2012 U.S. Dist. LEXIS 114504, * 22 (E.D. Tex. February 14, 2012) (delay in moving to transfer weighs against transferring the case.").  In the interim, the Court conducted a scheduling conference, set a *Markman* hearing and trial date, issued a Docket Control Order, Discovery Order and Protective order, and Capella served its infringement contentions.

> **2.   The Public Factors Do Not Warrant Transfer.**

> **a)   Administrative Difficulties Weigh Against Transfer.**

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor."  *In re Genentech*, 566 F.3d 1338, 1347 (Fed. Cir. 2009).

---

[5] Foreign witnesses are discounted for the purpose of transfer analysis because they will be inconvenienced with international travel regardless of whether this case is transferred. *Luminati Networks, Ltd. v. BIScience Inc.*, No. 18-CV-00483-JRG, 2019 U.S. Dist. LEXIS 79843 (E.D.T.X. May 13, 2019), *17-18.

The most recent time-to-trial statistics from the U.S. Government reveal that each judge in the NDCA has an average total caseload of 715 cases and the median time from filing to trial for civil cases is 29.3 months.[6]  In contrast, each judge in the EDTX has an average total caseload of 528 cases and the median time from filing to trial for civil cases is 17.7 months.  *Id*.  Because this Court has a significantly lower caseload and the parties can expect a trial here at least a year before they will get one in the NDCA, this factor weighs against transfer.  Significantly, unlike this Court, the NDCA has yet to set a trial date in the Cisco action even though that case was filed before this one.  (Wanger Decl., ¶ 13.)  Indeed, this Court is conducting the first jury trials after the COVID-19 pandemic, while NDCA is not conducting any jury trials. The potential backlog of cases awaiting trial in the NDCA suggests trial settings there may be years away.

> **b)**   **Local Interests in Having Localized Interests Decided at Home Do Not Favor Transfer.**

Where, as here, one of the Defendants has its principal place of business in Coppell, Texas, and Infinera has chosen Richardson, Texas as its third largest facility in the United States, this district has a strong interest in adjudicating the present claims.  Although the NDCA (and potentially the courts in Illinois and Delaware) also have an interest in this dispute, at best, this factor is neutral.

> **c)**   **Judicial Economy Will be Served Because There Is a Co-pending Case Involving the Same Patents.**

This District is perhaps the preeminent forum for patent infringement cases as a result of the Court's substantial expertise in patent law.  The Defendants also conveniently ignore that this Court is presiding over Capella's action against Fujitsu on the Asserted Patents.  There is no co-pending motion for transfer in the Fujitsu case, *see In re Google*, Case No. 2017-107 (Fed. Cir.

---

[6] See https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2020.pdf.

Feb. 23, 2017), and thus the Court should place significant weight on the fact that a single court will be deciding complex issues of claim construction and the effect of the reissues in those two matters.  As a result, judicial economy weighs against transfer.

Nevertheless, the Defendants suggest that transfer is warranted because the Hon Edward Chen in the NDCA, has "extensive familiarity with the technology" and is presiding over Capella's case against Cisco.  Capella acknowledges that Judge Chen is fully capable of applying federal patent law to these infringement claims.  But the argument that Judge Chen has familiarity with the technology does not withstand scrutiny. Although Judge Chen recently issued an order on intervening rights, his analysis did not construe the patent claims.  Similarly, in the prior action on the Original Patents, Judge Chen never had occasion to construe the patents or to familiarize himself with the technology as a result of the stay he imposed early in the case. Thus, despite the Defendants' suggestions to the contrary, this Court will address claim construction in this case and in the *Fujitsu* matter—months before the NDCA Cisco case—and this factor weighs against transfer.

### d)      There Are No Conflict of Laws Issues.

The Defendants do not suggest that this case raises any conflict of law issues. Thus, this factor does not favor transfer.

## IV.     CONCLUSION

For the foregoing reasons, the motion should be denied.

Dated:  August 25, 2020

By: /s/ Robert D. Becker
Charles Everingham IV (TX SBN 00787447)
Email: ce@wsfirm.com
T. John Ward (TX SBN 20848000)
Email: tjw@wsfirm.com
Claire Abernathy Henry (TX SBN 24053063)
Email: claire@wsfirm.com
Andrea Fair (TX SBN 24078488)
Email: andrea@wasfirmn.com
WARD, SMITH & HILL, PLLC
P.O. Box 1231
Longview, TX 75606
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

Robert D. Becker (Cal. Bar 160648)
Email: rbecker@manatt.com
Christopher L. Wanger (Cal. Bar 164751)
Email: cwanger@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
1 Embarcadero Center, 30th Floor
San Francisco, CA 94111
Telephone: (415) 291-7400
Facsimile: (415) 291-7474

Attorneys for Plaintiff,
CAPELLA PHOTONICS, INC.

**CERTIFICATE OF SERVICE**

The undersigned hereby further certifies that the foregoing document, entitled Plaintiff Capella Photonics, Inc.'s Motion to Strike Defendants' Inequitable Conduct Defense, was served on all counsel of record who have consented to electronic service on this 25th day of August 2020.

/s/ Robert D. Becker
Robert D. Becker

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

This is to certify that on June 17, 2020 this Court entered a Protective Order (Dkt. No. 35) which authorizes filing the attached documents under seal.

/s/ Robert D. Becker
Robert D. Becker