**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| CAPELLA PHOTONICS, INC.,<br><br>                    Plaintiff<br><br>      v.<br><br>INFINERA CORPORATION, TELLABS, INC., TELLABS OPERATIONS INC., CORIANT AMERICA INC., and CORIANT (USA) INC.,<br><br>                Defendant. | Civ. No. 2:20-cv-00077<br><br>**JURY TRIAL DEMANDED**<br><br>**ORAL ARGUMENT REQUESTED[1]** |

**INFINERA'S
MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

---

[1] Pursuant to Local Rule CV-7(g) and because resolution of the parties' claim construction disputes would address the issues presented in this motion, Infinera Corp., Tellabs Inc., Tellabs Operations Inc., Coriant America Inc., and Coriant (USA) Inc. (individually and collectively, "Infinera") respectfully request oral argument on this motion at the *Markman* hearing currently set for January 22, 2021, or at the Court's earliest convenience.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     PROCEDURAL HISTORY....................................................................................3

III.    LEGAL STANDARDS ...........................................................................................5

      A.    This Issue Is Ripe for Determination ........................................................ 5

      B.    The Court May Consider the Pleadings, Documents Attached
           Thereto, and Documents Subject to Judicial Notice ................................ 5

      C.    Pre-Issue Damages Are Not Available Where the Claims Are
           Substantively Changed.............................................................................. 7

      D.    Collateral Estoppel Precludes Subsequent Litigation of an Issue
           that Previously Resulted in a Final Judgment.......................................... 8

IV.     CAPELLA IS NOT ENTITLED TO PRE-ISSUE DAMAGES BECAUSE THE
       CLAIMS OF THE ASSERTED PATENTS ARE NOT "SUBSTANTIALLY
       IDENTICAL" TO THE CLAIMS OF THE ORIGINAL PATENTS ...............................9

      A.    Capella Substantively Changed the Claims of the Asserted Patents ..................... 9

      B.    Capella Cannot Rely on the District Court Claim Construction
           Standard to Deny Its Substantive Change to the Claims ...................... 11

V.      IN THE ALTERNATIVE, CAPELLA IS COLLATERALLY ESTOPPED FROM
       LITIGATING ASSERTED CLAIMS ..............................................................13

VI.     CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)....................................................................................................7

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.,*
  672 F.3d 1335 (Fed. Cir. 2012)..............................................................................9, 14

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC,*
  827 F.3d 1341 (Fed. Cir. 2016)..................................................................................6

*Bd. of Regents of the Univ. of Tex. Sys. v. BENQ Am. Corp.,*
  533 F.3d 1362 (Fed. Cir. 2008)................................................................................12

*Bloom Eng'g Co. v. N. Am. Mfg. Co.,*
  129 F.3d 1247 (Fed. Cir. 1997)..........................................................................2, 7, 8

*Capella Photonics, Inc. v. Cisco Sys., Inc.,*
  139 S. Ct. 462 (2018)............................................................................................4, 15

*Cinel v. Connick,*
  15 F.3d 1338 (5th Cir. 1994) .....................................................................................6

*Cisco Sys., Inc. v. Capella Photonics, Inc.,*
  No. 3:20-cv-01858-EMC, 2020 WL 4923697 (N.D. Cal. Aug. 21, 2020) ...........................2, 8

*Cisco Sys., Inc. v. Capella Photonics, Inc.,*
  No. 3:20-cv-01858-EMC, 2020 WL 7227153 (N.D. Cal. Dec. 8, 2020)  ................................3

*Collins v. Morgan Stanley Dean Witter,*
  224 F.3d 496 (5th Cir. 2000) .....................................................................................5

*Convolve, Inc. v. Compaq Computer Corp.,*
  812 F.3d 1313 (Fed. Cir. 2016)..................................................................................7

*Dorsey v. Portfolio Equities, Inc.,*
  540 F.3d 333 (5th Cir. 2008) .....................................................................................6

*Fresenius USA, Inc. v. Baxter Int'l, Inc.,*
  721 F.3d 1330 (Fed. Cir. 2013)..................................................................................9

*Genentech, Inc. v. Chiron Corp.,*
  112 F.3d 495 (Fed. Cir. 1997)....................................................................................6

*Hologic, Inc. v. Minerva Surgical, Inc.*,
957 F.3d 1256 (Fed. Cir. 2020)............................................................................9, 14, 15

*In re ZTE (USA) Inc.*,
890 F.3d 1008 (Fed. Cir. 2018)........................................................................................5

*Integrated Technological Sys., Inc. v. First Internet Bank of Ind.*,
No. 2:16-CV-00417-JRG-RSP, 2017 WL 631195 (E.D. Tex. Jan. 30, 2017).........................6

*Intellectual Ventures I LLC v. T Mobile USA, Inc.*,
No. 2:17-CV-00577-JRG, 2018 WL 6584486 (E.D. Tex. Sept. 4, 2018) ...............................5

*Jackson v. Wilkie*,
No. 4:19-CV-00721, 2020 WL 4912916 (E.D. Tex. July 21, 2020) .....................................6

*Laitram Corp. v. NEC Corp.*,
163 F.3d 1342 (Fed. Cir. 1998)......................................................................................10

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
66 F. Supp. 3d 829 (E.D. Tex. 2014) ............................................................................5, 8

*Mark I Marketing Corp. v. R.R. Donnelley & Sons Co.*,
66 F.3d 285 (Fed. Cir. 1995)...........................................................................................6

*Ohio Willow Wood Co. v. Alps S., LLC*,
735 F.3d 1333 (Fed. Cir. 2013)..................................................................................1, 2, 5

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc).......................................................................11

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
875 F.3d 1369 (Fed. Cir. 2017)..................................................................................7, 8, 9

*R+L Carriers, Inc. v. Qualcomm, Inc.*,
801 F.3d 1346 (Fed. Cir. 2015).......................................................................................7

*Seattle Box Co. v. Indus. Crating & Packing, Inc.*,
731 F.2d 818 (Fed. Cir. 1984).........................................................................................7

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*,
778 F.3d 1311 (Fed. Cir. 2015)..............................................................................8, 12, 14

*State Farm Mut. Auto. Ins. Co. v. LogistiCare Solutions, LLC*,
751 F.3d 684 (5th Cir. 2014)...........................................................................................9

*Thorner v. Sony Comput. Entm't Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012).....................................................................................11

*Tillotson, Ltd. v. Walbro Corp.*,
    831 F.2d 1033 (Fed. Cir. 1987)................................................................8

*Vanbaulen v. Wells Fargo Fin. Tex., Inc.*,
    No. 4:19-CV-00606, 2020 WL 1817311 (E.D. Tex. Mar. 13, 2020) .......................................6

*Vocalife LLC v. Amazon.com, Inc.*,
    No. 2:19-CV-00123-JRG, 2020 WL 4732189 (E.D. Tex. Aug. 14, 2020)............................11

*Water Techs. Corp. v. Aurora SFC Sys.*,
    Civ. No. 11-708-RGA, 2017 WL 3598648 (D. Del. Aug. 21, 2017) ..................................5, 8

*Westvaco Corp. v. Int'l Paper Co.*,
    991 F.2d 735 (Fed. Cir. 1993)................................................................8

*Witt v. Chesapeake Exploration, LLC*,
    No. 2:10-CV-22-JRG-RSP, 2012 WL 13005520 (E.D. Tex. Apr. 26, 2012) .........................6

*Wolcott v. Sebelius*,
    635 F.3d 757 (5th Cir. 2011) ................................................................6

*XY, LLC v. Trans Ova Genetics*,
    890 F.3d 1282 (Fed. Cir. 2018)................................................9, 14, 15

**STATUTES**

35 U.S.C. § 252................................................................7

35 U.S.C. § 307(b) ................................................................8

**OTHER AUTHORITIES**

37 C.F.R. § 42.73(d)(3)(i)................................................................13

Infinera[2] moves for partial judgment on the pleadings under Federal Rule of Civil Procedure 12(c) that Capella Photonics, Inc. ("Capella") is not entitled to damages for any alleged infringement of claims 23-29, 31-35, 37, 39, and 44-54 of the '905 Patent and claims 68-72, 79-85, 87-92, 96-100, 106, 115-118, 122-127, 129-135, and 137-139 of the '906 Patent (collectively, the "Asserted Claims") prior to March 17, 2020, the date that U.S. Patent Nos. RE47,905 (the "'905 Patent") and RE47,906 (the "'906 Patent") (collectively, the "Asserted Patents") issued, or, in the alternative, that the doctrine of collateral estoppel bars Capella from alleging infringement of at least[3] claims 23-28, 31-35, 47, 49, and 51-54 of the '905 Patent and claims 68-71, 76-77, 80, 84, 86-87, 89-91, 95, 97, 115-117, 124, and 133-137 of the '906 Patent.

## I.   INTRODUCTION

This is Capella's second patent infringement suit against Infinera.  Capella previously filed a patent infringement suit against Infinera in 2014 in which Capella asserted various claims (collectively, the "Original Claims") of U.S. Patent Nos. RE42,368 (the "'368 Patent") and RE42,678 (the "'678 Patent") (collectively, the "Original Patents").  Infinera and others challenged the Original Patents in *inter partes* review proceedings before the Patent Trial and Appeal Board ("PTAB") of the U.S. Patent and Trademark Office ("USPTO").  The PTAB held that each of the Original Claims of the Original Patents was unpatentable as obvious, and the Federal Circuit affirmed the PTAB's decisions.  As a result, the district court dismissed the case.

Capella filed reissue applications to amend the Original Claims, and those applications subsequently issued as the Asserted Patents.  The Asserted Claims of the Asserted Patents are

---

[2] Capella has also asserted the '905 and '906 Patents against Fujitsu Network Communications, Inc. ("FNC") in Case 2:20-cv-76-JRG.  FNC is filing a substantively identical motion in its case.

[3] Infinera reserves the right to argue that Capella is barred from asserting additional claims because they are "substantially similar" to invalidated claims. *See, e.g.*, *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013).

narrower than the claims of the Original Patents at least because they now require "fiber collimator" ports instead of "ports" for at least one recited port in every claim. Capella specifically limited the scope of the Asserted Claims in this manner to overcome prior art that taught "ports." Despite these straightforward facts, Capella now seeks to recover damages prior to March 17, 2020, the Asserted Patents' issue date. Capella cannot do so, however, because 35 U.S.C. § 252, first paragraph, bars pre-issue damages in exactly this circumstance, where the scope of the reissue claims have been "substantively changed" and are not "substantially identical" to the claims in the Original Patents. *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1249 (Fed. Cir. 1997) ("[T]he statute relieves those who may have infringed the original claims from liability during the period before the claims are validated."). As a result, Capella cannot recover damages for any alleged infringement before March 17, 2020.

Despite narrowing the claims to overcome the prior art, Capella contends that the amendments made during the reissue applications did not substantively change the claims of the Asserted Patents from those of the Original Patents because "one or more claims" of the Asserted Patents is substantially identical to one or more claims of the Original Patents. Dkt. 1 at ¶¶ 32, 35. This assertion is incorrect. Even if it were correct, however, Capella would be collaterally estopped from asserting claims of the Asserted Patents that are substantially similar to the Original Claims. *E.g.*, *Ohio Willow Wood Co.*, 735 F.3d at 1342.

Accordingly, as a matter of law, either (1) 35 U.S.C. § 252, first paragraph applies because the Asserted Claims *are not* substantially identical to the Original Claims, and Capella cannot obtain damages prior to March 17, 2020, or (2) collateral estoppel bars Capella from relitigating most of the Asserted Claims. One court has already held that Capella cannot obtain pre-issue damages for the Asserted Patents. *See Cisco Sys., Inc. v. Capella Photonics, Inc.*, No. 3:20-cv-

2

01858-EMC, 2020 WL 4923697 (N.D. Cal. Aug. 21, 2020); *see also Cisco Sys., Inc. v. Capella Photonics, Inc.*, No. 3:20-cv-01858-EMC, 2020 WL 7227153 (N.D. Cal. Dec. 8, 2020) (denying Capella's motion to certify for interlocutory appeal).  Infinera respectfully requests that this Court do the same because § 252, first paragraph, bars pre-issue damages or, alternatively, collateral estoppel precludes Capella from alleging infringement of various Asserted Claims.

## II.   PROCEDURAL HISTORY

The Asserted Patents are directed to a reconfigurable optical add and drop multiplexer ("ROADM").  Dkt. 1 at ¶¶ 33, 36.  A ROADM routes signals (*i.e.*, various wavelengths of light) traveling through a fiber-optic network.  *Id.* at ¶¶ 22, 26.  The ROADMs of the Asserted Patents generally receive a multiwavelength signal through an input port, separate the multiwavelength signal by wavelength, and reflect the separated wavelength signals to their respective output ports.  *Id.* at ¶¶ 33, 36.  The ports are the subject of the instant dispute.

In 2011, the USPTO granted the Original Patents, and Capella brought suit in the Southern District of Florida in 2014, alleging that Infinera infringed the Original Patents.  *Id.* at ¶¶ 31, 34, 40.  During the pendency of that litigation, Infinera and several other defendants filed petitions for *inter partes* review, seeking to invalidate the asserted claims of the Original Patents.  Dkt. 1 at ¶¶ 31, 34, 40; Dkt. 22 at 16-17, 19, 24.  Capella argued to the PTAB that the challenged claims of the Original Patents were valid because the prior art disclosed a "circulator port" and the claim term "port" did not include a "circulator port."  Dkt. 22, Ex. 3 at 12-13; *id.*, Ex. 4 at 14-15; *id.*, Ex. 5 at 12-13; *id.*, Ex. 6 at 15-16; *id.*, Ex. 7 at 13-14; *id.*, Ex. 8 at 14-16.

The PTAB rejected Capella's argument and construed "port" to encompass "any 'point of entry or exit of light[,]'" including "circulator" ports.  Dkt. 22, Ex. 3 at 12-13 ("There is no dispute that the ordinary and customary meaning of 'port' encompasses circulator ports."); *id.*, Ex. 4 at 14-15; *id.*, Ex. 5 at 12-13; Ex. 6 at 15-16; *id.*, Ex. 7 at 13-14; *id.*, Ex. 8 at 14-16.  Based on this

3

construction, the PTAB held the asserted claims of the Original Patents unpatentable, the Federal Circuit summarily affirmed, and the Supreme Court denied certiorari.  Dkt. 22 at 16-17, 19, 24; *id.* Exs. 3-8, 13-15; *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 139 S. Ct. 462 (2018).

After the Federal Circuit affirmed Capella's defeat at the PTAB, Capella filed reissue applications, which subsequently issued as the Asserted Patents.  Dkt. 1 Exs. A-B; *see also* Exs. 9-10.  Capella narrowed the scope of the patent claims by specifying that each independent claim must have a port that is limited to a "fiber collimator" port.  Dkt. 22 at 16-17, Exs. 11-12; Dkt. 1 at ¶¶ 31, 34, 55, 83; Exs. 9-10.  For example, claim 23 of the '905 Patent is directed to an optical add-drop apparatus and modified claim 1 of the '368 Patent to require a "<u>fiber collimator</u> input port for an input multi-wavelength optical signal having first spectral channels" and "<u>fiber collimator</u> one or more other ports for second spectral channels."  Dkt. 22 at 16 (emphasis added).

Capella admitted that the claims in its reissue applications substantively changed the scope of the claims in the Original Patents.  Specifically, Capella narrowed its claims to avoid the circulator ports disclosed in the prior art:  "the claimed 'ports' have been differentiated from circulator ports, such as the circulator ports disclosed in [the prior art]."  Ex. 1, 2018-06-29 Applicant Arguments/Remarks Made in an Amendment at 15, 18; Ex. 6, 2018-06-29 Applicant Arguments/Remarks Made in an Amendment at 22.  Capella reaffirmed this narrowing later during the reissue prosecution.  For example, prior to allowance, the USPTO rejected the claim that would issue as claim 51 of the '905 Patent (then numbered claim 39 of the application) in view of the prior art.  Ex. 4, 2019-09-05 Final Rejection at 6-8.  In response, Capella amended that claim to require "one or more fiber collimator serving as drop ports."  Ex. 5, 2019-10-23 Applicant Arguments/Remarks Made in an Amendment at 13-14 (emphasis added).  The USPTO immediately allowed the claim in view of this amendment and the reissue applications issued as

4

the Asserted Patents on March 17, 2020.  Dkt. 1, Exs. A-B.

## III.    LEGAL STANDARDS

Fifth Circuit law applies to procedural issues not specific to patent law.  *See, e.g.*, *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1012 (Fed. Cir. 2018) (citation omitted).  Federal Circuit law applies to issues specific to substantive patent law.  *See, e.g.*, *id.*; *see also Ohio Willow Wood Co.*, 735 F.3d at 1342 (recognizing that Federal Circuit law applies when analyzing patent claims in the context of collateral estoppel).

### A.    This Issue Is Ripe for Determination

The Court needs to decide only whether the "fiber collimator" ports in the Asserted Claims are narrower than the "ports" in the Original Claims, which it can do on a Rule 12 motion.  *See, e.g.*, *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 835 (E.D. Tex. 2014) (granting Rule 12(c) motion shortly after claim construction); *Water Techs. Corp. v. Aurora SFC Sys.*, Civ. No. 11-708-RGA, 2017 WL 3598648, at *4 (D. Del. Aug. 21, 2017) (granting motion to dismiss under § 252).  As explained below in Section IV.B, "ports" as properly construed is not limited to "fiber collimator" ports and encompasses circulator ports.  In fact, Capella is collaterally estopped from raising its primary (if not only) argument for giving "ports" a more limited construction: both the PTAB and the Federal Circuit already rejected Capella's arguments that an alleged disclaimer limited the scope of the "port" to a "fiber collimator" port.  *See infra* note 10.

### B.    The Court May Consider the Pleadings, Documents Attached Thereto, and Documents Subject to Judicial Notice

Under Fifth Circuit law, a district court may look to the pleadings and any documents attached thereto when considering a Rule 12(c) motion.  *See Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, No. 2:17-CV-00577-JRG, 2018 WL 6584486, at *1 (E.D. Tex. Sept. 4, 2018) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)); *see also Loyalty*

*Conversion Sys. Corp.*, 66 F. Supp. 3d at 834 ("A court in ruling on a motion for judgment on the pleadings may consider not only the pleadings themselves, but also any exhibits to the pleadings or matters incorporated by reference in the pleadings, as long as all the material allegations of fact are undisputed and only questions of law remain to be decided by the court.").

A district court may also consider "exhibits and matters . . . subject to judicial notice." *Witt v. Chesapeake Exploration, LLC*, No. 2:10-CV-22-JRG-RSP, 2012 WL 13005520, at *1 (E.D. Tex. Apr. 26, 2012) (citing *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).   The Asserted Patents, their prosecution histories, the Original Patents, and PTAB decisions for the Original Patents are matters of public record appropriate for judicial notice.   *See Integrated Technological Sys., Inc. v. First Internet Bank of Ind.*, No. 2:16-CV-00417-JRG-RSP, 2017 WL 631195, at *2 (E.D. Tex. Jan. 30, 2017) ("Courts evaluating patent-eligibility at the pleading stage nevertheless consider the asserted patent and relevant prosecution history as matters of public record appropriate for judicial notice." (citing *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1344 (Fed. Cir. 2016); *Mark I Marketing Corp. v. R.R. Donnelley & Sons Co.*, 66 F.3d 285, 292 (Fed. Cir. 1995))); *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, n.1 (Fed. Cir. 1997) (taking judicial notice of filings before the PTAB's predecessor, the Board of Patent Appeals and Interferences); *see also Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) ("In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record.").   The order of the Northern District of California granting the requested relief against Capella in a different case involving the same patents and asserted claims is also appropriate for judicial notice.[4]   *E.g.*, *Vanbaulen v. Wells*

---

[4] This order is appropriate for judicial notice even though it was not attached to the pleadings. *E.g.*, *Jackson v. Wilkie*, No. 4:19-CV-00721, 2020 WL 4912916, at *7 (E.D. Tex. July 21, 2020).

*Fargo Fin. Tex., Inc.*, No. 4:19-CV-00606, 2020 WL 1817311, at *3 (E.D. Tex. Mar. 13, 2020).

Finally, although Capella alleges in its complaint that "one or more claims of [each of the Asserted Patents] is identical to one or more claims of [each of the Original Patents]," such an allegation is, as discussed below, a conclusion of law that merely parrots the language of 35 U.S.C. § 252.  Dkt. 1 at ¶¶ 32, 35.  The Court should therefore afford it no weight.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  Therefore, the Court may resolve the issues raised in this motion on the record before it.

### C.       Pre-Issue Damages Are Not Available Where the Claims Are Substantively Changed

Pre-issue damages are available only if Asserted Claims "are substantially identical" to the Original Claims.  35 U.S.C. § 252, ¶ 1.  "Substantially identical" means "without substantive change."  *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997) (citing *Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 827–28 (Fed. Cir. 1984)).[5] Courts must construe both the original and reissued claims under the *Phillips* standard before comparing their scope.  *Convolve, Inc. v. Compaq Computer Corp.*, 812 F.3d 1313, 1325 (Fed. Cir. 2016).

Courts analyze whether a reissue claim was substantively changed by "'determin[ing] whether there is any product or process that would infringe the original claim, but not infringe the amended claim.'"  *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1378 (Fed. Cir. 2017) (quoting *R+L Carriers, Inc. v. Qualcomm, Inc.*, 801 F.3d 1346, 1350 (Fed. Cir.

---

[5] Although *Bloom Engineering* considered a differently worded version of 35 U.S.C. § 252, the same "substantively changed" standard applies to the current version.  H.R. Rep. No. 105-39, at 64 (1997) ("This change … is not intended to change the law of intervening rights but rather is intended only to codify existing decisional law.").

2015)).[6]  If the claims of a reissue patent have substantively changed, the first paragraph of § 252

bars all pre-issue damages.  *See Bloom Eng'g Co.*, 129 F.3d at 1249.

      Whether a reissue claim is substantially identical in scope to the original claim is a question

of law.  *Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735, 741 (Fed. Cir. 1993) (citing *Tillotson,*

*Ltd. v. Walbro Corp.*, 831 F.2d 1033, 1037 (Fed. Cir. 1987)).  Here, as explained below, resolving

the parties' claim construction disputes determines whether Capella is barred from recovering pre-

issue damages under § 252 or precluded from relitigating the validity of the Asserted Patents.

Accordingly, this motion is appropriate for resolution at the *Markman* stage.  *See, e.g.*, *Loyalty*

*Conversion Sys. Corp.*, 66 F. Supp. 3d at 835 (granting Rule 12(c) motion shortly after issuing

claim construction opinion in case any claim construction issues impacted the Court's analysis);

*see also Cisco Sys., Inc.*, 2020 WL 4923697, at *7 (granting judgment on the pleadings against

Capella, precluding pre-issue damages); *Water Techs. Corp.*, 2017 WL 3598648, at *4 (granting

motion to dismiss under § 252).

### D.    Collateral Estoppel Precludes Subsequent Litigation of an Issue that Previously Resulted in a Final Judgment

      Under Fifth Circuit precedent, collateral estoppel (*i.e.*, issue preclusion) applies where:

(1) "the issue under consideration in a subsequent action [is] identical to the issue litigated in a

prior action;" (2) "the issue [was] fully and vigorously litigated in the prior action;" (3) "the issue

[was] necessary to support the judgment in the prior case;" and (4) "there [is] no special

circumstance that would render preclusion inappropriate or unfair."  *Soverain Software LLC v.*

*Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1315 (Fed. Cir. 2015) (applying Fifth

---

[6] The *Presidio Components* court addressed a patent changed during a reexamination – rather than a reissue – proceeding.  875 F.3d at 1377–78.  The same standard applies to patents changed in reexamination and reissue proceedings. 35 U.S.C. § 307(b) ("Any proposed amended or new claim determined to be patentable and incorporated into a patent following a reexamination proceeding will have the same effect as that specified in section 252 for reissued patents….").

Circuit law and quoting *State Farm Mut. Auto. Ins. Co. v. LogistiCare Solutions, LLC*, 751 F.3d 684, 689 (5th Cir. 2014)).  Federal Circuit law determines "whether a particular claim in a patent case is the same as or separate from another claim" for collateral estoppel purposes.  *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1341 n.1 (Fed. Cir. 2012).  Notably, the affirmance of a final judgment from the PTAB on the invalidity of a patent claim has an issue-preclusive effect.  *XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1294 (Fed. Cir. 2018) (holding *sua sponte* that "an affirmance of an invalidity finding, whether from a district court or the Board, has a collateral estoppel effect on all pending or co-pending actions"); *Hologic, Inc. v. Minerva Surgical, Inc.*, 957 F.3d 1256, 1266 (Fed. Cir. 2020) (recognizing that the patent owner "c[ould not] seek ongoing monetary or injunctive relief based on infringement" because affirmance of the PTAB's "invalidity decision . . . is dispositive of the validity of the [asserted] patent claims"); *see Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1344 (Fed. Cir. 2013).

## IV.  CAPELLA IS NOT ENTITLED TO PRE-ISSUE DAMAGES BECAUSE THE CLAIMS OF THE ASSERTED PATENTS ARE NOT "SUBSTANTIALLY IDENTICAL" TO THE CLAIMS OF THE ORIGINAL PATENTS

### A.    Capella Substantively Changed the Claims of the Asserted Patents

Capella is not entitled to pre-issue damages because the claims of the Asserted Patents are not "substantially identical" (*i.e.*, "without substantive change") to the claims of the Original Patents as required under 35 U.S.C. § 252, first paragraph.  A narrowing amendment—such as the change from "ports" generally to "fiber collimator" ports specifically—is a substantive change when "[a] product or process . . . would infringe the original claim, but not infringe the amended claim." *Presidio Components*, 875 F.3d at 1378.  Here, Capella's narrowing amendment is plainly substantive.  The PTAB has already found that the port language of the Original Claims would read on any port, including a circulator port.  *E.g.*, Dkt. 22, Ex. 3 at 12 ("Patent Owner contends that . . . the recited at least three ports are all structurally described as 'fiber collimators.' . . . We

9

disagree."), *aff'd id.*, Ex. 13.  And Capella admitted during the prosecution of the Asserted Patents that a product with a circulator port would not meet the claims as amended.  *Id.* Ex. 1 at 18 ("[T]he claimed 'ports' have been differentiated from circulator ports, such as the circulator ports disclosed in [the prior art]."); *id.*, Ex. 2 at 32.  As a result, Capella is barred from seeking pre-issue damages.

The Federal Circuit has recognized that claims amended to avoid a particular feature disclosed in the prior art are substantively changed.  *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1349 (Fed. Cir. 1998) ("[I]t is difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment.").  In *Laitram Corp.*, the reissue patent-in-question modified the term "alphanumeric characters" to "***type quality*** alphanumeric characters."  *Id.* (emphasis added).  The Federal Circuit held that the addition of "type quality" necessarily excluded other qualities of "alphanumeric characters" and thus, substantively changed the claim scope.  *Id.*  The Federal Circuit reasoned that "[m]ost significantly, . . . the addition of the 'type quality' limitation, along with other amendments, resulted in the allowance of claims that had been rejected . . . over prior art."  *Id.* at 1348. In other words, the fact that the prior art disclosed "alphanumeric characters," but not "*type quality* alphanumeric characters," was significant evidence that this change in claim language resulted in a substantive change in claim scope.  *Id.* at 1349.

Here, Capella explicitly amended its claims from "ports" generally to "fiber collimator" ports specifically.  The PTAB invalidated the Original Claims in part because (1) "ports" included circulator ports and (2) the prior art taught circulator ports.  Dkt. 22, Exs. 3-8. When it later amended the claims, Capella specifically restricted the original "ports" to "fiber collimator" ports to overcome the prior art.  As in *Laitram Corp.*, the addition of "fiber collimator" excluded "circulator" ports.  *See* 163 F.3d at 1349.  As such, Capella substantively changed the scope of the

Asserted Claims when it added the "fiber collimator" limitation and is barred from obtaining pre-issue damages.  *See Vocalife LLC v. Amazon.com, Inc.*, No. 2:19-CV-00123-JRG, 2020 WL 4732189, at *4 (E.D. Tex. Aug. 14, 2020) (finding "no rights to enforce prior to the date of reissue" where the reissue claims "are substantively different" than the original claims).

### B.    Capella Cannot Rely on the District Court Claim Construction Standard to Deny Its Substantive Change to the Claims

Construing "port" in the Original Patents under the *Phillips* standard as opposed to the broadest reasonable interpretation yields the same result: Under *Phillips*, "port" in the Original Patents was broader than a "fiber collimator" port.[7]  "The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history."  *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc)).  Under *Phillips*, the scope of "fiber collimator" port in the Asserted Claims is narrower than the scope of "port" in the claims of the Original Patents at least because "port" included circulators and "fiber collimator" port in the reissue claims does not.[8]  415 F.3d at 1314 ("[T]he claim in this case refers to 'steel baffles,' which strongly implies that the term 'baffles' does not inherently mean objects made of steel").

First, the ordinary and customary meaning of "port" includes circulator ports.[9]  *E.g.*, Dkt.

---

[7] The parties will also address this issue in their claim construction briefs, as Capella selected this term for construction. *See, e.g.*, Dkt. 72 at 6–13. The analysis herein is consistent with Infinera's forthcoming responsive claim construction brief that "port" in the Original Patents is broader than a "fiber collimator" port.

[8] In fact, "port" as found in the Original Claims was not limited to *any* particular type of port, much less to a fiber collimator port. The amendments to the Asserted Claims narrowed the scope of certain "ports" to "fiber collimator" ports.

[9] Because the PTAB found that "[t]here is no dispute that the ordinary and customary meaning of 'port' encompasses circulator ports, and, indeed, any 'point of entry or exit of light[]'" (Dkt. 22, Ex. 3 at 12-13; *id.*, Ex. 4 at 14-15; *id.*, Ex. 5 at 12-13; *id.*, Ex. 6 at 15-16; *id.*, Ex. 7 at 13-14; *id.*, Ex. 8 at 14-16), and because that finding was necessary to the PTAB's invalidity ruling, Capella

11

22, Ex. 3 at 15-16.  This tracks the specification shared by the Original and Asserted Patents, which says that ports *may be* fiber collimators, but never says that the ports *must* be collimators.  *See* Ex. 7, '368 Patent at 6:52–63 ("Fig. 1A depicts a first embodiment … according to the present invention. . . . [A]pparatus 100 comprises multiple input/output ports which may be in the form of an array of fiber collimators 110").  The provisional application to which the Asserted Patents claim priority describes an embodiment that uses circulators as ports.  Dkt. 22, Ex. 3 at 13; *id.*, Ex. 6 at 16.  And the Board in its decisions affirmed by the Federal Circuit already recognized that the specification does not otherwise disavow circulator ports from the meaning of "port" in the Original Patents.[10]  Thus, the scope of "port" in the Original Patents was broad enough to include circulator ports and was not limited to "fiber collimator" ports.

Second, the claims of the Original Patents recite "port" and "collimator" as separate claim terms.  *See, e.g.*, Ex. 8, '678 Patent at 14:6–23 (claim 1 reciting "multiple fiber collimators, providing an input port … and an output port").  Similarly, the Asserted Claims of the Asserted Patents continue to recite "port" and "collimator" as separate limitations.  *See, e.g.*, Ex. 9, '905 Patent at 16:38-47 (claim 23 reciting "an output port and fiber collimators serving as an input port…").  Different words in the same claims presumably have different meanings.  *Bd. of Regents of the Univ. of Tex. Sys. v. BENQ Am. Corp.*, 533 F.3d 1362, 1371 (Fed. Cir. 2008).  Thus, Capella cannot equate the terms "port" and "fiber collimator" port where both the Original Patents and Asserted Patents use these different words in the same claims. In fact, Capella was able to obtain

---

is collaterally estopped from arguing that the ordinary and customary meaning of "port" excludes circulator ports.  *See, e.g.*, *Soverain Software LLC*, 778 F.3d at 1315 (citation omitted).

[10] Because the PTAB found that the specification did not disavow circulator ports (Dkt. 22, Ex. 3 at 12-13; *id.*, Ex. 4 at 14-15; *id.*, Ex. 5 at 12-13; *id.*, Ex. 6 at 15-16; *id.*, Ex. 7 at 13-14; *id.*, Ex. 8 at 14-16), and because that finding was necessary to the PTAB's invalidity ruling, Capella is collaterally estopped from arguing that the specification disavowed circulator ports from the scope of "ports." *See, e.g.*, *Soverain Software LLC*, 778 F.3d at 1315 (citation omitted).

this claim (among others) only *because* "port" is broader than a "fiber collimator" port. *See* Ex. 2, 2019-06-26 Office Action at 6 (rejecting "[a]n optical add-drop apparatus comprising *fiber collimators serving as an…output port*" as new matter (emphasis added)); Ex. 3, 2019-07-29 Applicant Arguments/Remarks at 13 ("amend[ing] the claims to remove the limitation of the *fiber collimators serving as* output ports" to secure allowance (emphasis added)).

Third, Capella was legally barred from obtaining new claims with substantially identical scope to the Original Claims.  Because the PTAB canceled the Original Claims, Capella was estopped from "obtaining in any patent . . . [a] claim that is not patentably distinct from a . . . canceled claim."  37 C.F.R. § 42.73(d)(3)(i).  If the Asserted Claims were substantially identical to the Original Claims, as Capella alleges, those claims would not be patentably distinct, and Capella would have been estopped from obtaining them.

After the PTAB invalidated the Original Claims, Capella decided to surrender the remaining claims in the Original Patents and add the "fiber collimator" limitation in the reissue applications to avoid the prior art and obtain the Asserted Patents.  Capella must be held to the consequences of that decision and cannot simultaneously obtain the benefit of having substantially narrowed claims, while asserting that the claims were not substantially narrowed.

## V.    IN THE ALTERNATIVE, CAPELLA IS COLLATERALLY ESTOPPED FROM LITIGATING ASSERTED CLAIMS

To the extent that the Court agrees with Capella that the Asserted Claims are substantially identical to the Original Claims, collateral estoppel bars any such attempt by Capella to litigate at least certain Asserted Claims.[11]  *See* Dkt. 22, Exs. 11-12.  Under Fifth Circuit precedent, collateral

---

[11] For the purposes of this motion, Infinera is limiting its collateral estoppel defense to claims 23-28, 31-35, 47, 49, and 51-54 of the '905 Patent and claims 68-71, 76-77, 80, 84, 86-87, 89-91, 95, 97, 115-117, 124, and 133-137 of the '906 Patent because the PTAB canceled the original versions of these claims that were found in the Original Patents. Infinera reserves the right to argue that estoppel bars Capella from litigating additional claims from the Asserted Patents.

estoppel (*i.e.*, issue preclusion) applies where: (1) "the issue under consideration in a subsequent action must be *identical* to the issue litigated in a prior action;" (2) "the issue must have been *fully and vigorously litigated* in the prior action;" (3) "the issue must have been *necessary* to support the judgment in the prior case;" and (4) "there must be *no special circumstance* that would render preclusion inappropriate or unfair." *Soverain Software LLC*, 778 F.3d at 1315 (applying Fifth Circuit law) (emphasis added). The affirmance of an invalidity decision by the PTAB is given preclusive effect in a district court. *E.g.*, *Hologic, Inc.*, 957 F.3d at 1266; *XY, LLC*, 890 F.3d at 1294.

As to the first requirement, if, as Capella erroneously alleges, the claims of the Asserted Patents are substantially identical to those invalidated in the Original Patents, the issue in this action is identical to the issue litigated in the prior action. Federal Circuit law determines "whether a particular claim in a patent case is the same as or separate from another claim" for collateral estoppel purposes. *Aspex Eyewear, Inc.*, 672 F.3d at 1341 n.1. Here, Capella affirmatively alleges that claims of the Asserted Patents are substantially identical to those of the Original Patents. Assuming that is true (it is not), the issue in this action is identical to the issue already decided by the PTAB and affirmed by the Federal Circuit. So long as the other requirements are satisfied, collateral estoppel applies to the Asserted Claims of the Asserted Patents. *E.g.*, *XY*, 890 F.3d at 1294 ("[W]e find that an affirmance of an invalidity finding, whether from a district court *or the Board*, *has a collateral estoppel effect* on all pending or co-pending actions." (emphasis added)).

As to the second requirement, Capella "fully and vigorously litigated" the issue of invalidity. Both the PTAB and the Federal Circuit rejected Capella's arguments that the Original Claims were valid. *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 711 Fed. App'x 642 (Fed. Cir. 2018). Accordingly, Capella has had its "day in court." *XY, LLC*, 890 F.3d at 1294.

As to the third requirement, the issue of validity was "necessary" to the judgment in the *inter partes* review.  The PTAB canceled the Original Claims *because* they were invalid as obvious.  *See* Dkt. 22, Ex. 3 at 26; *id.*, Ex. 4 at 51; *id.*, Ex. 5 at 43; Ex. 6 at 29; *id.*, Ex. 7 at 39; *id.*, Ex. 8 at 44-45.  And as noted above, the affirmance of a final decision by the PTAB on invalidity of a patent claim is afforded preclusive effect.  *See Hologic, Inc.*, 957 F.3d at 1266; *XY, LLC*, 890 F.3d at 1294.

Finally, as to the fourth requirement, there is no special circumstance that would render preclusion inappropriate or unfair.  To the contrary, a finding of substantial identicality but no preclusion would be unfair to Infinera as it would permit Capella to circumvent the PTAB's invalidation of the Original Patents and litigate claims with substantially similar scope.

As such, if the Court agrees with Capella that the claims of the Asserted Patents are substantially identical to those of the Original Patents, then collateral estoppel applies, and Capella is precluded from relitigating the validity of certain Asserted Claims.  *E.g.*, *XY, LLC*, 890 F.3d at 1294 (holding that an affirmed finding of invalidity "collaterally estops [Plaintiff] from asserting the patent in any further proceeding").

## VI.      CONCLUSION

For the foregoing reasons, Infinera respectfully requests that the Court grant the present motion and hold that Capella is precluded from seeking damages for alleged infringement of the Asserted Patents prior to March 17, 2020, pursuant to Fed. R. Civ. Procedure 12(c), because the Asserted Claims are not substantially identical to the Original Claims.  In the alternative, if the Court agrees with Capella that certain Asserted Claims are substantially identical to the claims of the Original Patents, then Infinera respectfully requests that the Court apply collateral and owner estoppel and bar Capella from asserting those Asserted Claims.

Dated: December 14, 2020

Respectfully submitted,

*/s/ Sarah Guske*

Melissa Richards Smith
State Bar No. 24001351
GILLAM & SMITH LLP
303 S. Washington Avenue
Marshall, Texas 75702
Telephone: (903) 934-8450
melissa@gillamsmithlaw.com

Kurt Pankratz (TX SBN 24013291)
E-mail: kurt.pankratz@bakerbotts.com
Melissa Muenks (TX SBN 24097442)
E-mail: melissa.muenks@bakerbotts.com
BAKER BOTTS LLP
2001 Ross Avenue, Suite 900
Dallas, TX 75201
Telephone: 214-953-6500
Facsimile: 214-953-6503

Sarah J. Guske (CA SBN 232467)
E-mail: sarah.guske@bakerbotts.com
BAKER BOTTS LLP
101 California St, Ste 3600
San Francisco, CA 94111-5843
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

John Frederick Gaustad (CA SBN 279893)
*Pro Hac Vice*
Email: john.gaustad@bakerbotts.com
BAKER BOTTS LLP
1001 Page Mill Road
Building One Suite 200
Palo Alto, Ca 94304
Telephone: 650-739-7500
Facsimile: 650-739-7699

Lauren J. Dreyer (DC 1007189)
*Pro Hac Vice*
Email: lauren.dreyer@bakerbotts.com
BAKER BOTTS LLP
700 K St NW
Washington, DC 20001
Telephone: 202-639-7700
Facsimile: 202-639-7890

Attorneys for Defendants INFINERA
CORPORATION, TELLABS, INC.,
TELLABS OPERATIONS INC., CORIANT
AMERICA INC., and CORIANT (USA) INC.

16

## **CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on December 14, 2020.


By:   */s/ Sarah Guske*_____