IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| CAPELLA PHOTONICS, INC., § § *Plaintiff*, § § v. § CIVIL ACTION NO. 2:20-CV-00077-JRG § INFINERA CORPORATION, TELLABS, § INC., TELLABS OPERATIONS INC., § CORIANT AMERICA INC., CORIANT § (USA) INC., § § *Defendants*. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Capella Photonics, Inc.'s ("Capella") Motion to Strike Inequitable Conduct Affirmative Defense (the "Motion to Strike"). (Dkt. No. 36). In the same, Capella asks the Court to strike Defendants Infinera Corporation, Tellabs, Inc., Tellabs Operations Inc., Coriant America Inc., and Coriant (USA) Inc.'s (collectively, "Defendants") seventh affirmative defense, which alleges that the patents in suit are unenforceable due to inequitable conduct. After careful consideration of the briefing (Dkt. Nos. 36, 38, 42, 44) and the oral arguments presented at the hearing on January 27, 2021 (*see* Dkt. Nos. 97, 98), the Court is of the opinion that the Motion to Strike should be **GRANTED-IN-PART** and **DENIED-IN-PART**. For the reasons stated herein, the Court **DENIES** the Motion to Strike as to Defendants' first grounds of inequitable conduct based on prosecution of the predecessor patents (U.S. Patent Nos. RE42,368 and RE42,678), but **GRANTS** the Motion to Strike as to Defendants' second grounds of inequitable conduct based on the reissue proceedings that led to the issuance of the asserted aatents (U.S. Patent Nos. RE47,905 and RE47,909). Accordingly, the Court **STRIKES** those allegations relating to Defendants' second grounds of inequitable conduct.

I.      BACKGROUND

Capella sued Defendants on March 17, 2020, alleging infringement of U.S. Patent Nos. RE47,905 (the "'905 Patent") and RE47,906 (the "'906 Patent") (together, the "Asserted Patents"). (Complaint, Dkt. No. 1). The Asserted Patents, as their patent numbers suggest, are reissues. *See* 35 U.S.C. § 251. When a patent is "deemed wholly or partly inoperative or invalid" by reason of certain errors, the reissue procedure permits a patentee to surrender the original, defective patent and obtain a new, corrected patent for the remainder of the unexpired term. *Id.* The '905 Patent reissued from U.S. Patent No. RE42,368 (the "'368 Patent"), and the '906 Patent reissued from U.S. Patent No. RE42,678 (the "'678 Patent") (together, the "Predecessor Patents").

Defendants answered the Complaint on May 29, 2020. (Answer, Dkt. No. 22). In their Answer, Defendants alleged that the Asserted Patents are unenforceable due to inequitable conduct. (*Id.* at 19–39, ¶¶ 11–73).[1] Defendants pled two main theories of inequitable conduct. First, Defendants alleged that Capella and its associates concealed certain references (the Smith patent and its application) from the patent office during the prosecution of the Predecessor Patents. (Answer ¶¶ 11–66). Second, Defendants alleged that Capella's attorney made misrepresentations to the patent office during the reissue proceedings that led to the Asserted Patents. (Answer ¶¶ 67–73). Capella moves to strike both of Defendants' inequitable conduct theories.

Prior to reissue, Capella asserted the Predecessor Patents against Cisco Systems, Inc. ("Cisco"), Fujitsu Network Communications, Inc., ("Fujitsu"), and other defendants in the Northern District of California. *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850

---

[1] Defendants' Answer has a first set of numbered paragraphs (Answer at 1–15, ¶¶ 1–106) responding to the allegations in Capella's complaint and a second set of numbered paragraphs (Answer at 15–41, ¶¶ 1–83) pleading their affirmative defenses. As only the affirmative defenses are relevant to the Motion to Strike, all citations to the Answer are to the second set of paragraphs unless otherwise indicated.

(N.D. Cal. 2014).[2] In that case, Cisco and Fujitsu raised essentially the same inequitable conduct defense that Defendants pled as their first theory here. Cisco and Fujitsu alleged that Capella had failed to disclose U.S. Patent No. 6,798,941 (the "Smith patent") during the prosecution of the Predecessor Patents. *Id.* at 855–56. Capella filed a motion to strike. *Id.* at 853. In December 2014, the presiding judge, the Honorable Edward M. Chen, denied Capella's motion to strike, in relevant part, finding that Cisco and Fujitsu had properly pled an inequitable conduct defense based on nondisclosure of the Smith patent. *Id.* at 864.

A few months later, the Patent Trial and Appeal Board (PTAB) instituted *inter partes* review (IPR) of the Predecessor Patents and Judge Chen stayed the California litigation. *See* Order Granting Cisco's Motion to Stay Consolidated Cases Pending *Inter Partes* Review of Patents-In-Suit, Dkt. No. 168, *Capella Photonics, Inc. v. Cisco Sys., Inc.*, No. 3:14-cv-3348 (N.D. Cal. Mar. 6, 2015). The PTAB proceeded to invalidate the claims of the Predecessor Patents as obvious based on combinations including the Smith patent. Capella then sought reissue of the Predecessor Patents. It is Capella's conduct during these reissue proceedings that forms the basis of Defendants' alleged second theory of inequitable conduct. In 2018, the PTAB's decision invalidating the Predecessor Patents was affirmed by the Federal Circuit. *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 711 F. App'x 642 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 462 (2018). The Asserted Patents reissued on March 17, 2020. Shortly after they reissued, Capella filed the instant suit.

---

[2] The case was initially filed in the Southern District of Florida and was later transferred to the Northern District of California. (Dkt. No. 38 at 4–5).

## II. LEGAL STANDARDS

### A. Inequitable Conduct

Inequitable conduct is a form of fraud committed on the patent office. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326–27 (Fed. Cir. 2009). If proven, inequitable conduct renders a patent unenforceable. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011). Unenforceability is a potent remedy, often called the "atomic bomb" of patent law. *Id.* at 1288. The taint of inequitable conduct cannot be cured by reissue or reexamination and it can render unenforceable other patents in the same technology family. *Id.* at 1289. To prevail on an inequitable conduct defense, the defendant must prove three elements: (1) the patentee (or a person associated with the patentee) made a material misrepresentation to or withheld material information from the patent office; (2) that person knew of the falsity of the statement or of the materiality of the information withheld; and (3) that person had a specific intent to deceive the patent office. *Exergen*, 575 F.3d at 1327; *Therasense*, 649 F.3d at 1290.

Intent and materiality are separate requirements, and both must be proven independently to establish inequitable conduct. *Id.* Mere negligence or gross negligence under a "should have known" standard does not satisfy the intent requirement. *Id.* The materiality standard required for inequitable conduct is but-for materiality. *Id.* at 1291. Although but-for materiality must generally be proven in all cases, the Federal Circuit has recognized an exception to the materiality requirement in cases of "affirmative egregious misconduct." *Id.* at 1292. As the Federal Circuit explained, "the general rule requiring but-for materiality provides clear guidance to patent practitioners and courts, while the egregious misconduct exception gives the test sufficient flexibility to capture extraordinary circumstances." *Id.* at 1293.

### B. Pleading Standards

Inequitable conduct, while a broader concept than fraud, is subject to the heightened pleading standards under Fed. R. Civ. P. 9(b). *Exergen*, 575 F.3d at 1326–27. That rule reads as follows:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b). In the context of inequitable conduct before the patent office, Rule 9(b) requires "the specific who, what, when, where, and how" of the fraud to be stated in the operative pleading. *Exergen*, 575 F.3d at 1327. Although state of mind may be averred generally, the allegations must include sufficient facts from which a court can reasonably infer that the patentee or its associate had the requisite knowledge and intent. *Id.* at 1328–29.

## III. DISCUSSION

Defendants pled two theories of inequitable conduct: one pertaining to the prosecution of the Predecessor Patents and one pertaining to the reissue proceedings that led to the Asserted Patents. Capella moves to strike each set of allegations. The Court will address each theory in turn.

### A. Defendants Have Properly Pled Inequitable Conduct Based on Prosecution of the Predecessor Patents.

First, Capella moves to strike Defendants' inequitable conduct allegations pertaining to the Predecessor Patents. As discussed below, Defendants' Answer adequately pleads inequitable conduct based on the Predecessor Patents and does so as Fed. R. Civ. P. 9(b) and Federal Circuit precedent requires. The Court concludes that these allegations pass muster, and finds the Motion to Strike should be denied on these grounds.

The first element of inequitable conduct is satisfied if the patentee or a person associated with the patentee withholds material prior art from the patent office. *Exergen*, 575 F.3d at 1327.

Defendants have pled that the "Applicants" (including Capella CEO Larry Schwerin, inventor Joseph Davis, and attorney Barry N. Young) failed to disclose the Smith patent and its application to the patent office. (Answer ¶¶ 16, 19, 24). Defendants have also pled that the Smith patent is material prior art, based in part on the PTAB's ruling that the Smith patent (in combination with other references) rendered the Predecessor Patents obvious. (Answer ¶¶ 25, 41, 42). As noted, the PTAB's ruling was affirmed by the Federal Circuit.

Capella argues that the Smith patent could not be prior art because it was filed after the applications leading to the Predecessor Patents. (Dkt. No. 36, at 5–6). Capella is incorrect for two reasons. First, the Smith patent on its face claims priority to U.S. Provisional Application No. 60/234,683 (the "'683 Provisional"), filed on September 22, 2000—prior to the earliest provisional applications that matured into the Predecessor Patents.[3] Notwithstanding the ultimate merits of this issue, the Court must view the facts in the light most favorable to the pleading party—here, Defendants. Defendants have pled that the Smith patent is prior art because it claims priority to the '683 Provisional—at least with respect to the features Defendants claim are material to patentability (two-dimensional mirror control and power control). (Answer ¶ 29). Therefore, on its face, Defendants' Answer pleads *prima facie* that the Smith patent is material prior art.

Second (and perhaps more importantly), the PTAB has already found and the Federal Circuit affirmed that the Smith patent rendered the Predecessor Patents obvious. While this issue was not squarely presented to the Court as a case of issue preclusion, the Court sees no reason why Capella should not be collaterally estopped from relitigating the priority of the Smith patent.[4] The

---

[3] Both Predecessor Patents claim priority at the earliest to U.S. Provisional Application 60/277,217 filed on March 19, 2001. *See* U.S. Patent No. RE42,368; U.S. Patent No. RE42,678. The Smith patent has a filing date of September 20, 2001 but claims priority to U.S. Provisional Application No. 60/324,683 filed on September 22, 2000 and U.S. Provisional Application No. 60/267,285 filed on February 7, 2001.

[4] "[A]bsent a contrary indication" from Congress, agency decisions are entitled to *res judicata* effect. *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148–51, 160 (2015); *see also Oil States Energy Servs. v. Greene's Energy*

elements of issue preclusion (collateral estoppel) are (1) identity of the issues; (2) the issue was actually litigated in the prior matter; and (3) the determination of the issue was a necessary part of a prior judgment on the merits. *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005) (en banc). Preclusion applies when the party to be precluded had a full and fair opportunity to litigate the merits of the issue. *See Blonder-Tongue Laboratories, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 328 (1971); *Xitronix Corp. v. KLA-Tencor Corp.*, 916 F.3d 429, 439 (5th Cir. 2019). The identical question of whether the Smith patent is prior art for the Predecessor Patents was actually litigated by Capella before the PTAB and was a necessary conclusion for the final judgment of invalidity. *Cisco Sys., Inc. v. Capella Photonics, Inc.*, No. IPR2014-01276, 2016 WL 783545, at *9–11 (P.T.A.B. 2016) ('678 Predecessor Patent); *Cisco Sys., Inc. v. Capella Photonics, Inc.*, No. IPR2014–01166, 2016 WL 386733, at *9 (P.T.A.B. 2016) ('368 Predecessor Patent); *Capella Photonics, Inc. v. Cisco Sys., Inc.*, 711 F. App'x at 642 (affirming both), *cert. denied*, 139 S. Ct. at 462. The PTAB's decision invalidating the Predecessor Patents based on the Smith patent also provides a sufficient allegation that Predecessor Patents would not have issued but for the alleged failure to disclose the Smith patent to the examiner. In any event, therefore, Defendants' Answer adequately pled that the Smith patent is material prior art.

The second element of inequitable conduct is satisfied if the patentee or their associate knew of the reference and its materiality at the time of application. *Exergen*, 575 F.3d at 1327–28. Defendants pled that Capella and its Applicants (including Larry Schwerin, Joseph Davis, Barry Young, and another attorney, Joshua D. Isenberg) were aware of the Smith patent because it was cited by the patent office in connection with another Capella application prior to prosecution of the Predecessor Patents. (Answer ¶¶ 32–36). Defendants allege that a patent office examiner cited

---

*Grp.*, 138 S. Ct. 1365, 1378 (2018) (final judgments of invalidity from the PTAB are no less binding than those issued by district courts).

the Smith patent as disclosing two-dimensional mirror control and power control (the features alleged here to be material to patentability) in multiple office actions in 2006 and 2007. (Answer ¶¶ 21, 22, 32, 33). Defendants further allege that the named persons would have been aware of the Smith patent citation at that time because those persons are involved in patent prosecution for Capella. (Answer ¶¶ 19, 20, 23, 33, 35, 40). Presumably, the inference goes, Schwerin, Davis, Young, and Isenberg would have read the office actions and investigated the references cited by the patent examiner—including the Smith patent. Therefore, they must have known that the Smith patent taught two-dimensional mirror control and power control—the very features alleged to be novel here. At least at the pleading stage, the inference that those persons knew of the Smith patent and its materiality is eminently reasonable.

The third element of inequitable conduct is a specific intent to deceive the patent office. *Exergen*, 575 F.3d at 1327–28. Defendants made several allegations that support an inference of deceptive intent. First, Defendants allege that Messrs. Schwerin and Young and the other Capella applicants intended to deceive the patent office because they "stood to profit more from selling off a company with a patent portfolio that was perceived to be relatively stronger due to the reissues." (Answer ¶ 43). Defendants also allege that the same applicants directed the examiner's attention to certain references (*e.g.*, the Boutevich patent) and away from others (*e.g.*, the Neukermans patent and the Lucent prior art 2-axis mirror) as part of a systematic scheme to deceive the patent office and get the Predecessor Patents issued. (Answer ¶¶ 53–66). Defendants allege that, when viewed together with the failure to disclose the Smith patent, "the single most likely explanation for these acts is that they were done with an intent to deceive the Patent Office and obtain patents that could be enforced against Infinera and others." (Answer ¶ 66). Accepting these factual

allegations as true, the Court is persuaded that the inference that the Capella applicants intended to deceive the patent office is reasonable.[5]

The Court is also persuaded that Defendants' allegations of inequitable conduct satisfy the strictures of Fed. R. Civ. P. 9(b). Defendants have alleged the "who" (Larry Schwerin, Barry Young, Joseph Davis, and Joshua Isenberg), the "what" (the failure to disclose the Smith patent's teaching of two-dimensional mirror control and power control), the "where" (in filings before the patent office), the "when" (during the reissue proceedings leading to the predecessor patents), and the "how" (by concealing the Smith patent, a reference known to be material to patentability, with a specific intent to deceive the patent office) of the inequitable conduct.

Capella also argues that the Court should strike Defendants' allegations because Defendants name specific individuals "and '*possibly* the other applicant(s), their attorney(s), and/or their agent(s) and other person(s) involved'" in prosecution. (Dkt. No. 36 at 2 (quoting Answer ¶ 12) (Capella's emphasis)). Similarly, Capella argues that Defendants alleged "intentional misrepresentations and/or omissions *including, without limitation*, the failure to disclose one or more references during prosecution." (*Id.* at 2–3 (quoting Answer ¶ 12) (Capella's emphasis)). Obviously, Defendants will not be permitted to try new theories of inequitable conduct that were not adequately pled in their Answer. However, Defendants' open-ended phrasing does not somehow impugn those theories that were properly put forward.

Finally, since inequitable conduct cannot be cured by reissue, it follows that a well-pleaded allegation of inequitable conduct related to the Predecessor Patents is also a well-pleaded allegation of inequitable conduct related to the Asserted Patents. Accordingly, Defendants' first

---

[5] The Court notes that Defendants will face a much higher evidentiary burden on both elements of scienter when the merits are eventually considered. At the pleading stage, however, a reasonable inference is sufficient. *Exergen*, 575 F.3d at 1328–29.

9

theory of inequitable conduct is not insufficient as a matter of law, and the Motion to Strike is **DENIED** on this ground.[6]

### B. Defendants Have Not Properly Pled Inequitable Conduct During Prosecution of the Asserted Patents.

Next, Capella moves to strike Defendants' inequitable conduct allegations regarding prosecution of the Asserted Patents themselves. As will be discussed, the Court is not persuaded that Defendants' allegations are legally sufficient, and the Court finds the Motion to Strike should be granted on these grounds.

Defendants allege that attorney Jason Eisenberg[7] made three misrepresentations to the patent office during the reissue proceedings that led to the Asserted Patents, all concerning the finality of the PTAB judgment and appeal. First, Defendants allege that Mr. Eisenberg misrepresented to the patent office the status and finality of the IPR appeals themselves. (Answer ¶¶ 67–69). Although the Federal Circuit had affirmed the PTAB and the Supreme Court had denied Capella's petition for writ of certiorari, Defendants allege that Mr. Eisenberg told the patent office in a filing that "Applicant respectfully disagrees despite the Federal Circuit's affirmance and current [*sic*] intends to continue the appeal." (Answer ¶¶ 67–69). Second, Defendants allege that Mr. Eisenberg re-raised claim construction and disavowal arguments concerning the term "port" as used in the patent family, despite those arguments having been rejected by the PTAB—and therefore foreclosed by entry of final judgment. (Answer ¶ 70). Third, Defendants allege that Mr.

---

[6] The Court is further persuaded by the sound reasoning in Judge Chen's treatment of this issue in 2014. *See Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d at 850. Although the pleadings in the California court were slightly different than those here and were offered by different parties, the Court sees no reason to reach a different result.

[7] It is not clear from Defendants' Answer whether Jason Eisenberg is the same person as Joshua Isenberg discussed *supra*, or if they are two patent prosecution attorneys for Capella with similar names. The Court uses these names consistently with Defendants' use in their Answer.

Eisenberg continued to argue that the Smith patent was not prior art despite that issue having been conclusively decided by the PTAB. (Answer ¶ 71).

Capella argues that Defendants have not alleged how Mr. Eisenberg's legal arguments and statements were misrepresentations and how they were material. (Dkt. No. 36, at 13–14). Capella argues that these statements could not be material misrepresentations because (1) the patent office was aware of the PTAB's claim cancellation, the Federal Circuit's affirmance, and the Supreme Court's denial of certiorari; and (2) the patent office maintained its rejections based on the Smith patent and only reissued the Asserted Patents after other action by Capella. (*Id.*).

Defendants argue that Mr. Eisenberg's statements fall within the exception to the materiality requirement recognized in *Therasense* for cases of affirmative egregious misconduct.[8] They point to paragraphs 70 and 71 of their Answer, in which they plead that "[t]he misrepresentations in contravention of the adverse judgment against Capella . . . constitute affirmative egregious misconduct." (Answer ¶¶ 70, 71).

As a general rule, inequitable conduct should only be applied when the patentee's misconduct results in the unfair benefit of receiving an unwarranted patent claim. *Therasense*, 649 F.3d at 1292. Yet, in *Therasense*, the Federal Circuit explained that an exception to the general rule requiring but-for materiality exists in cases of "affirmative egregious misconduct." *Id.* This exception derives from the Supreme Court's early cases of unclean hands, "which dealt with 'deliberately planned and carefully executed scheme[s]' to defraud the PTO and the courts." *Id.* (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245 (1944)). The Federal Circuit explained that when a patentee engages in affirmative acts of egregious misconduct, the

---

[8] Defendants also argue in their briefing that Mr. Eisenberg's statements were material to patentability. (*See* Dkt. No. 38 at 14). During oral arguments, Defendants explained that they rely on the exception rather than the but-for materiality standard. (*See* Transcript, Dkt. No. 98 at 67:3–23). As Defendants acknowledged, the relevant paragraphs of their Answer do not plead but-for materiality. (*Id.*; Answer ¶¶ 70–71).

misconduct is deemed material. *Id.* It is not that materiality is not required *at all* in such cases; rather, materiality is presumed, premised on the notion that "a patentee is unlikely to go to great lengths to deceive the PTO with a falsehood unless it believes that the falsehood will affect issuance of the patent." *Id.*; *see also Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1345 (Fed. Cir. 2013). "[T]he general rule requiring but-for materiality provides clear guidance to patent practitioners and courts, while the egregious misconduct exception gives the test sufficient flexibility to capture extraordinary circumstances." *Therasense*, 649 F.3d at 1293. The symbiosis between rule and exception "strikes a necessary balance between encouraging honesty before the PTO and preventing unfounded accusations of inequitable conduct." *Id.*

The paradigmatic examples of affirmative egregious misconduct cited in *Therasense* include perjury and "unmistakably false affidavit[s]," the manufacture and suppression of evidence, and bribery. *Therasense*, 649 F.3d at 1292–93. (citing *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240 (1933) (bribery and suppression of evidence); *Hazel-Atlas*, 322 U.S. at 238 (manufacture and suppression of evidence); *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 805 (1945) (perjury and suppression of evidence); *Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556 (Fed. Cir. 1983) (false affidavits); *Refac Int'l, Ltd. v. Lotus Dev. Corp.*, 81 F.3d 1576 (Fed. Cir. 1996) (false affidavits)); *see also Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1339, 1342 (Fed. Cir. 2013) (false affidavit). As the en banc majority in *Therasense* made clear, affirmative egregious misconduct is not strictly constrained to these named examples. *See Therasense*, 649 F.3d at 1293 ("The concurrence mischaracterizes this exception for affirmative egregious acts by limiting it to the example provided . . . . In actuality, however, the materiality standard set forth in this opinion includes an exception for affirmative acts of egregious misconduct, not just the filing of false affidavits."). Yet, the guiding principles

12

cited by the Federal Circuit make clear that the exception must nonetheless be limited. While all inequitable conduct is misconduct, not all inequitable conduct is affirmative egregious misconduct.

The extraordinary nature of the circumstances required for this exception is underscored by circumstances to which it *does not* apply. The Federal Circuit explained in *Therasense* that "neither mere nondisclosure of prior art references to the PTO nor failure to mention prior art references in an affidavit constitutes affirmative egregious misconduct[.]" *Id.* at 1292–93. Thus, even for willful concealment of prior art with an intent to deceive the patent office—undisputedly an intentional fraud committed on an agency of the United States government—materiality is required. Misconduct though it may be, affirmative egregious misconduct it is not.

In *Powell v. Home Depot U.S.A., Inc.*, the patentee had filed a Petition to Make Special, seeking expedited prosecution, because he was obligated to manufacture and supply devices embodying the claims. 663 F.3d 1221, 1235 (Fed. Cir. 2011). Before the Petition was granted, the patentee's contract to supply those devices fell through, but the patentee never updated the Petition to indicate the change in the circumstances. *Id.* The Federal Circuit held that the patentee's failure to update the Petition to Make Special could not constitute inequitable conduct. *Id.* The court reasoned that "Mr. Powell's conduct obviously fails the but-for materiality standard and is not the type of unequivocal act, 'such as the filing of an unmistakably false affidavit,' that would rise to the level of "affirmative egregious misconduct." *Id.*

In *United Food and Commercial Workers Union v. Novartis Pharmaceuticals Corp.*, the First Circuit addressed the egregious misconduct exception in the context of a *Walker Process* fraud claim. 902 F.3d 1, 12–13 (1st Cir. 2018). A *Walker Process* claim is a type of antitrust claim premised on procuring a patent by fraud. *See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 173 (1965). In *United Food*, the plaintiffs accused drug makers of violating

federal and state antitrust law by enforcing a patent allegedly obtained through a fraud on the patent office. *United Food*, 902 F.3d at 7. The District Court dismissed the *Walker Process* fraud claims, concluding that the plaintiffs had not plausibly pled materiality or fraudulent intent. *Id.* at 9. The First Circuit affirmed, noting that a "merely 'misleading, if not false'" affidavit as alleged (but not one that was "unmistakably false") did not meet the Federal Circuit's threshold for affirmative egregious misconduct. *Id.*

Ultimately, as an equitable doctrine, inequitable conduct "hinges on basic fairness." *Therasense*, 649 F.3d at 1292. "Just as it is inequitable to permit a patentee who obtained his patent through deliberate misrepresentations or omissions of material information to enforce the patent against others, it is also inequitable to strike down an entire patent where the patentee only committed minor missteps or acted with minimal culpability or in good faith." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008). Materiality is required in these cases and cases of a similar nature; the exception cannot provide an end run around the rule. To apply the exception broadly to every misstep would gut the certainty and clear guidance offered by the black-letter principle of but-for materiality. It would also encourage the bringing of unfounded inequitable conduct allegations that would plague the courts and the patent system. *Therasense*, 649 F.3d at 1289. Put simply, the exception must be exactly that—an exception. It must not swallow the rule.

As alleged, Mr. Eisenberg may indeed have made arguments that were not legally available to him. Even viewing these facts in a light most favorable to Defendants, however, the Court is not persuaded that this rises to the level of affirmative egregious misconduct. A key difference is that the subject of the alleged misrepresentations—decisions of the PTAB, the Federal Circuit, and the Supreme Court—were not only called out to the patent office examiner (*see* Answer Ex. 2 at

14

27, Dkt. No. 22-2) but are publicly available court decisions whose content is easy to verify. Mr. Eisenberg's conduct as alleged does not keep company with deliberate perjury, bribery, or the manufacture or suppression of evidence. In those cases, the deception is uniquely within the mind of the culpable party. The conduct alleged here seems more in line with that in *Powell* and *United Food*—missteps perhaps, but not unequivocal acts of deception. Materiality is required.

With respect to the Asserted Patents, Defendants have not sufficiently pled but-for materiality or a proper case of affirmative egregious misconduct. As such is necessary for inequitable conduct, the Court is persuaded that Defendants' second grounds of inequitable conduct are insufficient as a matter of law. Accordingly, the Motion to Strike is **GRANTED** on this ground. The Court will strike Defendants' inequitable conduct allegations relating to the reissue proceedings that issued the Asserted Patents (Answer ¶¶ 67–73). As these allegations reflect a legal insufficiency rather than a sufficiency-of-pleadings issue, those paragraphs should be struck with prejudice.

## IV.   CONCLUSION

For the reasons stated above, the Court concludes that the Motion to Strike should be and hereby is **GRANTED-IN-PART** and **DENIED-IN-PART**. Accordingly, it is **ORDERED** that paragraphs 67 through 73 of Defendants' Answer are **STRUCK WITH PREJUDICE**.

**So ORDERED and SIGNED this 25th day of February, 2021.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE