EXHIBIT 14

Part 2 of 2

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

52 of the MEMS array 50." (*Id.* at 14:52-63, 10:47-51, Fig. 11-Annotation 2).

Each reflector is individually controlled in one axis to deflect the respective beam

to either the output or the drop port. (*Id.*; *see also* Ex. 1028 at ¶ 57.)

Second, Bouevitch indicates that its reflectors are "continuously"

controllable because (as discussed below) the amount of power the device

attenuates is a direct (e.g., analog) function of the angle of the deflector in that one

axis. (*Id.*, 7:35-37 ("The degree of attenuation is based on the degree of deflection

provided by the reflector (i.e., the angle of reflection)"; Ex. 1028 at ¶ 58.))

Bouevitch also describes the attenuation resulting from the deflector as "variable."

(*Id.*, 12:59-60; Ex. 1028 at ¶ 58.))  Further, in addition to the disclosure of

"continuously" controlling in Bouevitch, Smith also expressly discloses this

element.

Smith teaches continuous control of its MEMS mirrors in an analog manner,

where the force used to tilt the mirrors is "approximately ***linearly*** proportional to

the magnitude of the applied voltage. (*Id.*, 15:41-42; emphasis added, 6-35; 17:1-

23; Ex. 1028 at ¶ 59.)  This linear proportionality is another way of describing a

continuous, analog, relationship between the voltage driving the mirrors and the

resulting mirror angle. (Ex. 1028 at ¶ 59.)   The Smith Provisional echoes this

disclosure:

"[a]ccording to a preferred embodiment of the invention, the optical

28

Capella_Infinera_000047906

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

*throughput of each wavelength channel may be controlled by using a mirror array with elements that can be rotated in an <u>analog fashion</u> about <u>two orthogonal axes</u>.  Angular **displacement in a first, switching plane, is used to perform an OXC, ADM or other switching function** while **angular displacement about the orthogonal axis is used for power control.**" (Id.* at 6 (emphasis added); *see also id.*, 12:29-42, Fig. 9, 9:6-57, 10:37-43, 11:2-11, 14:49-65, 16:8-51.)

### (6)   Ground 2 – Bouevitch + Smith + Lin

Petitioner asserts that Ground 1 is sufficient for institution.  Bouevitch + Smith discloses all claimed elements, including the "continuously" limitation.  Ground 2 adds one additional reference, Lin, to Ground 1 to further address the "continuously" limitation.  If the Board decides that Bouevitch + Smith does not adequately disclose the "continuously" limitation, then the Board should adopt Ground 2.

Under Ground 2, U.S. Patent No. 5,661,591 to Lin also teaches continuous, analog control of MEMS mirrors.  (Ex. 1028 at ¶ 61.)  As discussed below, it would be obvious to combine Lin's continuous, analog control with Bouevitch and Smith.  For example, Figure 3B of Lin shows a graph disclosing the continuous deflection angle of MEMS mirrors as a function of the voltage applied to affect that deflection.  Figure 3B shows the relationship as continuous and linear:

Capella_Infinera_000047907

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368



FIG. 3B

To the extent Bouevitch does not fully disclose continuous (analog) mirror control, it also would have been obvious to substitute one control method for the other, including substituting Smith's or Lin's analog control into the COADM of Bouevitch.  (Ex. 1028 at ¶¶ 62-65.)  The PHOSITA would combine the teachings of these references at least for the reasons that (1) continuously controlled mirrors were known to be interchangeable with discrete-step mirrors; (2) continuously controlled mirrors allow arbitrary positioning of mirrors and can more precisely match the optimal coupling value; and (3) Lin specifically teaches that its analog, continuous MEMS mirrors would be useful in optical switching applications like Bouevitch's and Smith's ROADM devices.  (Ex. 1010 at 2:6-9; Ex. 1028 at ¶ 62.)

In addition, analog (continuous) control of the mirrors would be obvious to try because there are only two general options for such control—either analog (continuous) or discrete (step-wise) control. (Ex. 1028 at ¶ 63.)  For example, Lin discusses analog control as the alternative to binary (discrete) control of mirrors to increase the precision of the mirror placement. (*Id.*, 2:7-9; 3:41-57; Ex. 1028 at ¶¶ 61-62.)  With only two options, both of which were known in the prior art, and

30

Capella_Infinera_000047908

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

both of which were suggested as working solutions for control, PHOSITA would

have expected that trying analog control would work well in the device of

Bouevitch. (Ex. 1028 at ¶¶ 62-65.)

### (7)   2-axis beam-deflecting elements

Returning now to both Grounds 1 and 2, the only portion of this part of

element 1[d] arguably not taught by Bouevitch is a beam deflecting element with a

second dimension ("axis" under Petitioner's BRI) of control.  But as discussed in §

VIII.C, Smith discloses a 2-axis beam deflecting element.  (*See also* Ex. 1028 at ¶

66.)  In particular, Smith describes a "multi-wavelength…optical switch including

an array of mirrors tiltable about two axes, both to control the switching and to

provide variable power transmission." (Ex. 1004 at Abstract; *Id.*, 7:1-3 (describing

"switching elements controllable in two different scales or dimensions"), 7:32-44,

Fig. 14, 8:19-20 ("FIG. 14 is plan view of two-axis tiltable mirror usable with the

invention."), 14:49-65.)  Similarly, the Smith Provisional describes the use of two-

axis mirrors in its add/drop multiplexor (ADM) with tilting in one axis to switch

add/drop beams, and in a second axis to control power.  (Ex. 1005 at 6 ("each

wavelength channel may be controlled by using a mirror array with elements that

can be rotated in an analog fashion about two orthogonal axes. Angular

displacement in a first, switching plane, is used to perform an OXC, ADM or other

switching function while angular displacement about the orthogonal axis is used

Capella_Infinera_000047909

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

for power control.'"))

As discussed in § VIII.D, above, it would be obvious (and PHOSITA would be motivated) to exchange the 1-axis mirrors in Bouevitch with the 2-axis mirrors of Smith because the two were known to be interchangeable.  The exchange would achieve benefits such as reduced device size (by eliminating gaps incorporated between ports for attenuation), allowing for no-crosstalk ('hitless') switching operation by moving the light beam around to avoid intermediate fiber ports when switching. (Ex. 1028 at ¶ 67.).  As discussed below in § VIII.E.1(8), 2-axis mirrors also have benefits for power control.

Replacing Bouevitch's 1-axis mirrors with Smith's 2-axis mirrors had the known benefit of minimizing the resulting device's size, which is desirable in optical devices. (Ex. 1003 at 2:9-21; Ex. 1028 at ¶ 68.)  Size reduction results from "minimal spacing between crossconnect components," (Ex. 1006 at 3:10-11), and PHOSITA knew that 2-axis mirrors allow for beam-steering between more compactly-spaced input/output ports arranged as a 2-D array. (Ex. 1009 at 1:65-2:13.) The patentee itself acknowledged the need for 2-axis mirrors in the '368 patent, saying that when the input and output ports are arranged in a 2-D array, "the channel micromirrors must be pivotable biaxially." (*Id.*, 4:26-29; *see also* Ex. 1028 at ¶ 68.); § VIII.D, above.)  Others also recognized the need for 2-axis mirrors. (Ex. 1028 at ¶¶ 68-69.)

32

Capella_Infinera_000047910

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

With respect to the last term of this portion of 1[d] ("to reflect its corresponding spectral channel to a selected one of said ports"), that term is merely an intended use, and should not be limiting, as discussed in the BRI section.

In an abundance of caution, Petitioner addresses this use limitation. Both Bouevitch and Smith describe how the goal of controlling the MEMS mirrors is to effect the add/drop process, which includes reflecting the spectral channels to selected add/drop ports.  (*See, e.g.*, Ex. 1003 at 14:66-15:18; Ex. 1004 at Fig. 5, 8:47-59, 12:4-12, 10:37-44; *see also* Ex. 1005 at 7; Ex. 1028 at ¶ 70.)

### (8)    Power Control  using 2-Axis Mirrors:

The third part of element 1[d] recites wherein each of the beam-deflecting elements is controllable "to control the power of the spectral channel reflected to said selected port."  As discussed in the BRI section, this statement of intended use should not be limiting in the first instance.  Again, in an abundance of caution, Petitioner addresses this language as if it were limiting.

Bouevitch discusses power control by tilting one-axis mirrors to effect a slight misalignment between the beam and the output port.  Bouevitch shows how each MEMS mirror controls the power of a "respective" channel, where "the degree of [power] attenuation is based on the degree of deflection provided by the reflector (i.e., the angle of reflection)." (*Id.* 1:24-27, 7:23-37; *see also Id.*, 1:21-24, 50-53; 5:16-46; 2:22-25; Abstract; see also Ex. 1028 at ¶ 71.)

33

Capella_Infinera_000047911

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

Smith discusses two-axis (two dimensional) tilting for both switching and power control, including continuous control of such mirrors. (Ex. 1028 at ¶ 72.) The Smith Patent teaches a "two-dimensional array of two-axis tiltable mirrors." (*Id.*, 16:9-11.) Smith switches with mirror rotation in one axis, and control powers with mirror rotation in a second axis. The "principal switching operations us[e] the one mirror tilt axis," while "[t]he other mirror tilt axis, the minor axis, can be used for power adjustment." (*Id.*, 16:9-11, 34-51; *see also* Ex. 1005 at 6 ("Angular displacement in a first, switching plane, is used to perform an OXC, ADM or other switching function while angular displacement about the orthogonal axis is used for power control.").)

The PHOSITA would be motivated to use the 2-axis system of Smith within the system of Bouevitch for power control. (Ex. 1028 at ¶ 73.) First, power control was desirable generally and would be just as desirable after switching to 2-axis mirrors for the benefits cited above. Bouevitch notes both the desirability of power equalization across spectral channels, and the need for devices that perform both power control and add/drop functions. (Ex. 1003 at 1:18; 1:50-42.) The patentee also recognized this, claiming that ("spectral power-management capability is essential in WDM optical networking applications.") (Ex. 1001 at 11:21-24; *see also* Ex. 1028 at ¶ 73.) Second, while power control in an axis orthogonal to the switching axis is not absolutely necessary, "second axis tilting is nonetheless

34

Capella_Infinera_000047912

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

desired for optimization." (Ex. 1004 at 16:55-59.)   This is because a ROADM can control power by moving a beam off-center of a port in an axis orthogonal to the switching axis without the risk of the signal bleeding into a port that is adjacent to the output port along the switching axis. (Ex. 1028 at ¶ 74.); Ex. 1004 at 18:18-25.) Third, using one axis for power control would allow designers to use a finer-grained movement for power (which was more sensitive to small changes in mirror angle) than the coarser-grained control that accommodates the wider-range of potential tilt angles useful for switching. (Ex. 1004 at 17:53-18:25, Ex. 1028 at ¶ 75.)

### 2.      Claim 2

Claim 2 recites "the optical add-drop apparatus of claim 1 further comprising a control unit for controlling each of said beam-deflecting elements." Bouevitch must contain a control unit for controlling the tilt on the individual mirrors (50, 51) in the MEMS array (50).  (Ex. 1028 at ¶ 76.)  But rather than rely on this inherent property of Bouevitch, Petitioner will address this element in terms of obviousness.

It would be obvious to PHOSITA to add a control unit to Bouevitch, including the Smith control unit, because the Bouevitch device is required to function with some type of control unit. The "selective switching" that Bouevitch performs with its MEMS mirrors would need to be performed by some type of

Capella_Infinera_000047913

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

control unit, accepting commands for switching state change from a remote

network controller, and in response issuing the actuation controls required for

completing the switching function.  (Ex. 1028 at ¶¶ 77-78.)  Individual mirrors

could not otherwise be manually aligned and maintained in accuracy necessary for

the switching operation.  (Ex. 1028 at ¶ 79.)

 Moreover, Smith explicitly describes a control unit for its micromirrors.  It

would have been obvious to use the Smith control unit in Bouevitch.  (Ex. 1028 at

¶ 80.)  Smith explains that its "controller controls the driver circuit and hence the

mirrors in a multiplexed control system."  (Ex. 1004 at 11:18-21, Fig. 13 ("220

CONT"); *see also* Ex. 1005 at Fig. 11, pp. 6, 11).  Smith gives an example of the

controller as a "microprocessor [that] reads the optimum position settings for both

axes of both the input and output mirrors." (*Id.*, 18:42-53.)  Smith also uses its

controller for power control in a feedback loop, as the controller "receives the

outputs of the optical power monitor 218, or more specifically the detected optical

intensities of the detector array, and accordingly readjusts the tilt positions of the

micromirrors in the MEMS array." (*Id.*, 13:20-24; *see also Id.,* Figs. 8, 12, 8:3-4,

9:29-10:13, 13:20-14:15; Ex. 1005 at Fig. 4, 6 ("In this system, an optical

performance monitor measures the power spectra at the switch output ports and

transfers the data to a control processor. This unit generates electronic signals that

adjust the angles of individual micro-mirrors within the switch to optimize the

36

Capella_Infinera_000047914

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

output power spectra")).

To the extent Bouevitch does not already disclose a "control unit," adding the control unit of Smith (or other control units) to Bouevitch would have been obvious to the PHOSITA because control units such as microprocessors were known elements with almost universal applicability. (Ex. 1004 at 18:42-53; Ex. 1028 at ¶ 81.)  The PHOSITA could have added such a control unit to Bouevitch with no change in the unit's functions (to act as a controller of electronic elements).  This addition would have yielded the predictable result of electronic control to one of ordinary skill in the art—a microprocessor-controlled COADM. (Ex. 1028 at ¶ 81.)  And as previously stated, optical communications requires accurate switching.  (Ex. 1028 at ¶¶ 79, 95.)  A control unit that realigns the mirrors in <u>configurable</u> OADM would maintain that accuracy.  (*Id.*, Ex. 1028 at ¶¶ 76-81, 95.)  A control unit would also affect the power feedback loop in a timely fashion.  (*Id.; see also id.* at ¶ 90.)

### 3.    Claim 3

Claim 3 has two parts, referred to in this section by the shorthand "servo-control assembly" and "spectral monitor."

**<u>Servo Control Assembly:</u>**  The "servo-control assembly" part of Claim 3 fully recites "wherein the control unit further comprises a servo-control assembly." As discussed in the BRI section, above, the BRI of a "servo-control assembly" is a

37

Capella_Infinera_000047915

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

"feedback-based control assembly." (*See* § VII.F, above.) The '368 patent explains how its servo-control assembly measures the actual output power and then uses that measurement in a feedback loop to further adjust the MEMS mirrors to ensure that the output power remains where it should. (*See* Ex. 1028 at ¶ 83.)

Smith discloses this servo control assembly in Fig. 8-Annotation 1, below, in the form of a "controller" ("B") that receives feedback from an "optical power monitor" ("A"). Specifically, Smith discloses a "microprocessor" that uses feedback of data from a power spectral monitor to generate signals to adjust the angles of individual micro-mirrors. (*Id.*, 18:42-53, 13:20-24.) "FIG. 8 is a block diagram of an optical switching system including an optical power monitor and feedback control" (*Id.*, 8:2-4; *see also* Ex. 1005 at Fig. 4):



| Smith Patent at Fig. 8 (Annotation 1) | Ex. 1005 at Fig. 4  (Annotation 1) |
| --- | --- |

(*See also Id.*, 18:42-53, 13:20-24; *see also Id.*, Fig. 12, 8:3-4, 9:29-10:13, 13:20-14:15; Ex. 1005 at 11 ("This resulting feedback loop may be used to actively

Capella_Infinera_000047916

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

optimize the power spectra of the signals leaving the ADM switch")).

It would be obvious to PHOSITA to try the internal feedback loop in Smith for use in Bouevitch as an alternative to the "external feedback" for power control that Bouevitch explains should be eliminated. (*Id.* at 10:17-21; Ex. 1028 at ¶ 85.) This is obvious because the only alternatives to provide such feedback would be the use of (1) internal or (2) external feedback. (Ex. 1028 at ¶¶ 85-86.)  Using the Smith internal feedback technique was known (*id.*), and one of skill would be motivated to do so to allow for the use of internal feedback to respond to power levels. (*Id.*; *see also* Ex. 1001 at 12:9-15 ("The electronic circuitry and the associated signal processing algorithm/software for such processing unit in a servo-control system are known in the art."))

**Spectral Monitor:**   The spectral monitor portion of claim 3 more fully requires the control unit to "include[] a spectral monitor for monitoring power levels of selected ones of said spectral channels, and a processing unit responsive to said power levels for controlling said beam deflecting elements."  The BRI for the term "spectral monitor" is "a device for measuring power."

Smith discloses a "spectral monitor" as "optical power monitor (OPM) 156" at "A" in the above Figure 8-Annotation 1 that measures power.  Smith's OPM 156 receives input from taps at 152 and 154.  The OPM then provides optical power data to the controller 158.  (*Id.*, 13:20-24; *see also id.*, Figs. 8, 9, 12, 8:3-4, 9:29-

Capella_Infinera_000047917

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

10:21, 13:20-14:15, 9:42-49, 11:39-45; Ex. 1005 at 6, 11, Fig. 4; Ex. 1028 at ¶ 88.)

The controller 158 in Fig. 8 can then adjust the output power on $Out_1$ and $Out_2$ by

changing the tilt on the mirrors in the switch 142, thereby forming a feedback loop.

(*Id.*, 9:29-33, Fig. 8, *see also* 18:42-53.)

As for the use phrases, a spectral monitor "for monitoring…" and a

processing unit "for controlling…," the quoted phrases are non-limiting and need

not be shown in the prior art. (§ VII.C) But in an abundance of caution, Petitioner

addresses the phrases. Smith discloses that its spectral monitor is for monitoring

the power of the optical outputs by tapping the outputs at taps 152 and 154. (Fig.

8-Annotation 1, Ex. 1004 at 9:29-49; Ex.1005 at Fig. 11, pp. 6, 11; Ex. 1028 at ¶

90.) And Smith also describes how its microprocessor-based controller controls

mirrors by "readjust[ing] the tilt positions of the micromirrors in the MEMS

array." (*Id.*, 13:20-24, 18:42-53.)

It would also be obvious to a PHOSITA to use the spectral monitor of the

Smith ROADM within the Bouevitch OADM, which otherwise disclosed an

external monitor and feedback. (Ex. 1028 at ¶ 90.) As the patentee stated in the

'368 patent, a "skilled artisan will know how to implement a suitable spectral

monitor along with an appropriate processing unit to provide a servo-control

assembly in a WSP-S apparatus according to the present invention, for a given

application." (*Id.* 12:11-15.) PHOSITA would also understand that the feedback

40

Capella_Infinera_000047918

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

from the monitor would need to be processed to turn the power measurement into control signals for the mirrors. (Ex. 1028 at ¶ 90.)  For example, the processor would need to determine the amount of tilt change required on the mirrors to adjust the power output. (*Id.*)  The PHOSITA had ample motivation to combine the Smith feedback loop within Bouevitch because PHOSITA would appreciate that the feedback-driven control of Smith would improve the precision of the mirror-based switching system of Bouevitch. (*Id.*, ¶ 90.)  As a contemporary document in the optical switching field stated "the actuation method for [micromirrors] is often imprecise. To achieve a variable switch, it is typically necessary to use a very high level of optical feedback." (Ex. 1009 at 2:4-9; *see also* Ex. 1028 at ¶ 90.)

### 4.    Claim 4

Claim 4 recites "The optical add-drop apparatus of claim 3, wherein said servo-control assembly maintains said power levels at predetermined values." Specifically, Smith teaches "adjust[ing] the mirror positions to adjust the transmitted power to conform to one or more ***predetermined criteria***." (*Id.*, 11:48-51; *see also* Ex. 1005 at 4, 11, Fig. 10.)  Smith discloses several such predetermined criteria, including a fixed (and thus predetermined) power level for all channels, as well as a predetermined ("standard") set of levels for each channel. First, Smith discusses setting all channels to the same power level so that downstream components can depend on equal intensity channels.  (*Id.* at 9:59-

41

Capella_Infinera_000047919

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

10:13.)   Second, Smith discusses setting the power of each individual channel power to a "standard" power spectrum to compensate for non-flat wavelength response of downstream components. (*Id.*)  This standard spectrum would require predetermined levels for each such channel.  (*Id.*; Ex. 1028 at ¶ 91.)

It would have been obvious to try the predetermined power settings of Smith within Bouevitch, because there are only a limited set of types of power settings to use:  predetermined and not-predetermined.  (Ex. 1028 at ¶ 92.)  And PHOSITA would have expected a likelihood of success using predetermined values based at least in part on Smith.  Smith teaches that predetermined power values could make up for inherent problems in optical switching, such as power variations from optical amplifiers and manufacturing and environmental variations, and because "WDM systems must maintain a significant degree of uniformity of power levels across the WDM spectrum." (*Id.*, 6:24-50; Ex. 1028 at ¶ 92.)

### 5.   Claim 5

Claim 5 recites "The optical add-drop apparatus of claim 2, wherein the control unit controls said beam-deflecting elements to direct selected ones of said first spectral channels to one or more of said second ports to be dropped as second spectral channels from said output multi-wavelength optical signal."  Bouevitch is an add-drop multiplexer, and as such, discloses the ability to direct channels to a drop port. (*See* § VIII.E.1(3), above.)

42

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

Petitioner has included Figure 11-Annotation 3 from Bouevitch below.  In

this figure, beam-deflecting mirror 52 (annotation "A") directs the channel

associated with $\lambda_2$ along a different path ( "B") than the $\lambda_1$ channel and finally out

of "OUT DROP" port 3 of 80b ("C").  Accordingly, the Figure illustrates the exact

path that a spectral channel, once separated from the other channels, would follow

to be dropped.  (*Id.*, Fig 11, 14:60-65; Ex. 1028 at ¶ 94.)



As explained for claim 2, above, it would be obvious to use the "control

unit" of Smith to control MEMS mirror 52 to perform this selective beam

dropping.  (§ VIII.E.2; Ex. 1004 at Fig. 5, 8:47-59, 12:4-12, 10:37-44; *see also* Ex.

1005 at 11, 7, 8, Fig. 4; Ex. 1028 at ¶ 95.)  To achieve switching accuracy

necessary to support an optical communications application, a control unit would

be necessary to position the individual mirrors 51 and 52.  (*See* § VIII.E.2, above.)

**6.    Claim 6**

43

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

Claim 6 recites "The optical add-drop apparatus of claim 2, wherein the control unit controls said beam-deflecting elements to direct selected ones of said second spectral channels to said output port to be added to said output multi-wavelength optical signal." This claim is similar to claim 5 except that it relates to adding a channel rather than dropping a channel.

Bouevitch discloses a configurable optical add drop module. (§ VIII.E.1(1), above.) It is designed to both drop and add channels to a multi-wavelength signal. (§ VIII.E.1(3), above; Ex. 1028 at ¶¶ 96-97.) Bouevitch illustrates the IN ADD port in Figure 11—shown as annotation D in Figure 11-Annotation 3 above—and explains in the corresponding specification portions that channel $\lambda_2$ enters at the IN ADD port and is combined with channel $\lambda_1$. The combined channels exit together. (*Id.*, 14:66-15:18.)

Bouevitch would have performed this addition with a control unit. (Ex. 1028 at ¶ 96-97.) But to the degree that the control unit in Bouevitch was not inherent, it would be obvious to use Smith's control unit to perform this channel addition. (*See id.* ;§VIII.E.2.) Smith describes using its control unit to perform both add and drop operations. (*Id.*, Fig. 5, 8:47-59, 12:4-12, 10:37-44; *see also* Ex. 1005 at 7 ("Under the control of an external control signal, the ADM may allow a wavelength channel to pass through the switch from input to output or, alternatively, to route the input signal to the drop port and simultaneously connect the add port to the

44

Capella_Infinera_000047922

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

output.").)   As explained for claim 2, above, it would be obvious to use the "control unit" of Smith to control MEMS mirror 52 to perform this selective beam addition in order to achieve the necessary switching accuracy. (VIII.E.2; Ex. 1004 at Fig. 5, 8:47-59, 12:4-12, 10:37-44; *see also* Ex. 1005 at 11, 7, 8, Fig. 4.)

### 7.   Claim 9

Claim 9 recites "The optical add-drop apparatus of claim 1, wherein said wavelength selective device further combines selected ones of said spectral channels reflected from said beam-deflecting elements to form said output multi-wavelength optical signal."   Bouevitch discloses this combination of channels when a channel is added and then combined with an existing channel.   For example, Bouevitch explains, "[a]t the diffraction grating, the added optical signal corresponding to $\lambda_2$ is combined with the express signal corresponding to $\lambda_1$. The multiplexed signal is returned to the lens 90, passes through port 85, and returns to port 2 of the first circulator 80a where it is circulated out of the device from port 3." (*Id.* 15:13–18.; Figure 11; Ex. 1028 at ¶ 98.)

### 8.   Claim 10

Claim 10 recites "The optical add-drop apparatus of claim 1, wherein said one or more other ports comprise an add port and a drop port for respectively adding second and dropping first spectral channels."   Bouevitch discloses these ports at the "IN ADD" port and the "OUT DROP" port. (*Id.*, Fig. 11; 14:62–15:1;

Capella_Infinera_000047923

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

Ex. 1028 at ¶ 99.)   For convenience, Petitioner labeled the ports in Fig. 11-

Annotation 3, above.  IN ADD port is labeled as "D" and the "OUT DROP" port is

labeled as C.   Petitioner previously discussed these two ports when addressing

claims 5 and 6. (*See* §§ VIII.E.5, VIII.E.6.)

9.    **Claim 11**

Claim 11 recites "The optical add-drop apparatus of claim 1 further

comprising a beam-focuser for focusing said separated spectral channels onto said

beam deflecting elements."  As discussed in the BRI section VII.H, above, the BRI

for the term "beam focuser" is "a device that directs a beam of light to a spot."

Bouevitch discloses this beam-focuser element at reflector 10 in Figure 11.

Referring to Figure 11-Annotation 3 above, reflector 10 directs the separated

beams of light $\lambda_1$ and $\lambda_2$ from the points on the reflector annotated as R onto the

corresponding beam deflecting mirrors 51 and 52 in MEMS array 50. (Ex. 1028 ¶

101; Bouetvitch, Figs. 11, 6a, 15:7-11, 14:14-20, 48-55; Ex. 2018, Fig. 1, 8:46–49

(A beam of light "is reflected from the diffraction grating 120, and is transmitted

through lens 110b, where it is collimated and incident on the modifying means

150."); *see also* Ex. 1004 at 12:43-50 ("A lens system 202 focuses the beams onto

a MEMS mirror array"), Ex. 1005 at 7-8.)   Bouevitch's description of other

examples of reflector 10 (examples that Bouevitch describes as compatible with

the Fig. 11) confirms that the reflector focuses channels onto the MEMS mirrors.

46

Capella_Infinera_000047924

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

Specifically, "The plurality of **sub-beams of light** are transmitted to the spherical reflector **610** where they are collimated and transmitted to the modifying means **150** where they **are incident thereon as spatially separated spots** corresponding to individual spectral channels." (*Id.*, 10:41-47; emphasis added; Ex. 1028 at ¶ 101.) The "modifying means 150" includes the MEMs array 50 of Fig. 11. (*Id.*)

### 10.   Claim 12 – Grounds 1, 2, 3 and 4

Claim 12 recites "The optical add-drop apparatus of claim 1, wherein said wavelength-selective device comprises a device selected from the group consisting of ruled diffraction gratings, holographic diffraction gratings, echelle gratings, curved diffraction gratings, and dispersing prisms." Petitioner discusses below four separate grounds under which claim 12 is obvious.

Under Ground 1 (Bouevitch+Smith), Bouevitch discloses the claimed wavelength-selective element in the form of a prism. As discussed further below, the use of a prism as recited in claim 12 was obvious.

Under Ground 2, Petitioner adds Lin to Bouevitch+Smith, should the Board decide that Ground 1 does not disclose "continuously." (*See* ¶ VIII.E.1(6), above) Because ground 2 includes Bouevitch, Claim 12 is obvious under Ground 2 for the same reasons as Ground 1.

Ground 3 is only necessary should the Board find that neither Grounds 1 nor 2 describe the "wavelength-selective device" of Claim 12.   Under Ground 3

47

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

(Bouevitch+Smith+Dueck, also discussed below), Petitioner adds the Dueck reference to Ground 1 to further disclose "ruled diffraction gratings" and support the obviousness of using these gratings in the system of claim 12.

Under Ground 4, Petitioner adds Dueck to Ground 2.  Claim 12 is obvious under Ground 4 (Bouevitch+Smith+Lin+Dueck) for the same reasons as Ground 3.

Returning now to Grounds 1 and 2, it would have been obvious under either ground to use any of the types of wavelength-selective devices recited in claim 12. Each type was known in the prior art, each was interchangeable as a wavelength-selective device, and each was one of a small set of possible choices. (Ex. 1028 at ¶¶ 103-104.)  For example, Bouevitch discloses the use of prisms as wavelength-selective devices through Bouevitch's incorporation by reference of U.S. Patent No. 5,414,540 ("Patel").   Patel notes that prisms are one type "frequency-dispersive mediums" that include diffraction gratings. (*Id.*, 3:20-36 (incorporated in Ex. 1003 at 1:37-39).)

Under Ground 3, it was obvious to combine Bouevitch+Smith with other teachings of specific types of wavelength-selective devices for WDM, including Dueck.  Dueck discusses "ruled diffraction gratings." (*Id.*, 6:26-30; Ex. 1028 at ¶¶ 103-104; *see also* Ex. 1027 at 6:33-36 (discussing "grating prisms").)  It would be obvious to try Dueck's ruled diffraction gratings in the devices of Bouevitch and Smith. (*Id.*)  The PHOSITA would be motivated to do so because Dueck describes

48

Capella_Infinera_000047926

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

its grating as part of the "best mode" of separating wavelengths in WDM devices,

which include the Bouevitch and Smith devices. (*Id.;* Ex. 1028 at ¶¶ 103-104.)

Similarly, under Ground 4, it was obvious to combine Bouevitch+Smith+Lin

with Dueck for the same reasons given for Ground 3. (*Id.*)

### 11.    Claim 13

Claim 13 recites "The optical add-drop apparatus of claim 1, wherein said

beam-deflecting elements comprise micromachined mirrors."  The MEMS (micro

electromechanical systems) 1-axis and 2-axis mirrors discussed in Bouevitch and

Smith are beam-deflecting "micromachined mirrors." (Ex. 1028 at ¶ 105.) MEMS

are often described in the prior art as "micromachined mirrors." (*See, e.g.,*

Goldstein, 3:48-50 ("In free-space MEMS crossconnects, micromachined mirrors

are utilized as the switching elements."); *see also* § VIII.E.1(5) (discussing element

1[d], above);  Ex. 1028 at ¶ 105.)

### 12.    Claim 15 – Grounds 1 and 2

Claim 15 is an independent claim that very closely resembles claim 1.  The

preamble and first two elements of claim 15 are identical to the preamble and

elements [a]-[b] of claim 1.  These elements are disclosed by Bouevitch for the

same reasons set forth in claim 1. (§ VIII.E.1)  To avoid unnecessary repetition,

those arguments are not copied here.  They are incorporated by reference.  As in

claim 1, Petitioner again points to Smith+Bouevitch under Ground 1.  To the extent

49

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

the Board disagrees that the "continuously" element is not present under Ground 1,

Petitioner also analyzes claim 15 under Ground 2 of Smith+Bouevitch+Lin by

incorporating that analysis from claim 1 here.

The remaining elements of claim 15 are discussed below. The only

substantive difference between the rest of claim 15 and the other elements of claim

1 is that claim 15 replaces the "other ports" of claim 1 with "drop ports" for

dropped channels. But this change does not impact validity. The differences are

expressly disclosed in the applied references.

### (1)   Element 15[c] – drop ports for dropped channels

Claim 15 recites "one or more drop ports for selected spectral channels

dropped from said multi-wavelength optical signal." Petitioner identifies this

element as element 15[c]. Bouevitch discloses the "drop port" of element 15[c] as

the "OUT DROP" port in element 80b port 3. Petitioner labels this port as "D" in

Fig. 11-Annotation 1 in § VIII.E.1(2), above. This drop port is used for dropped

channels. A spectral channel with wavelength $\lambda_2$ is dropped from the combined $\lambda_1$

and $\lambda_2$ multi-wavelength input signal and sent out the OUT DROP port. (*Id.*, 14:27-

65; § VIII.E.1(3) (discussing element 1[b], above); Ex. 1028 at ¶ 108.)

### (2)   Element 15[d]-[e]

The next element of claim 15— referred to as 15[d], recites "a wavelength-

selective device for spatially separating said multiple spectral channels." This is

50

Capella_Infinera_000047928

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

identical to claim 1[c], and is disclosed by Bouevitch for the same reasons discussed for 1[c]. (§ VIII.E.1(4).)

The next element of claim 15—15[e]—recites "a spatial array of beam-deflecting elements…" This element is identical to claim 1[d] and is disclosed by Bouevitch+Smith for the same reasons discussed for 1[d], above. (§ VIII.E.1(5).)

### (3)    Element 15[f] – dropped channels to drop ports

Finally, the last element of claim 15, identified here as 15[f], recites "whereby a subset of said spectral channels is directed to said drop ports." As discussed in the BRI section, this element should not be limiting. But even if it is limiting, Bouevitch discloses dropping subset channel $\lambda_2$ from the combined set of channels $\lambda_1$ and $\lambda_2$ and directing $\lambda_2$ out the OUT DROP port. (Ex. 1003 at 14:27-65; § VIII.E.12(1) & VIII.E.1(3) (15[c] and 1[b], above) ; Ex. 1028 at ¶111.)

### 13.    Claim 16 – Grounds 1 and 2

Claim 16 is another independent claim. The only difference between claim 16 and claim 15, above, is that claim 16 focuses on add ports instead of drop ports. Claim 16 recites one or more ***add*** ports for ***adding*** channels to the multi-wavelength output channel instead of one or more ***drop*** ports for ***dropping*** channels. Specifically, claims 15 and 16 are identical but for claim 16's recitation of element 16[c]: "one or more add ports for selected spectral channels to be added to said output multi-wavelength optical signal," and 16[e]: "whereby said spectral

51

Capella_Infinera_000047929

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

channels from said add ports are selectively provided to said output port."

Thus, Bouevitch+Smith under Ground 1 or Bouevitch+Smith+Lin disclose all elements of claim 16 (other than [c] & [e]) for the same reasons as discussed for claim 15, above. (*See* §VIII.E.12.)  This same combination also teaches elements 16[c] & [e], as discussed below.

### (1)   Element 16[c] – Add ports for added channels

Element 16[c] recites "one or more add ports for selected spectral channels to be added to said output multi-wavelength optical signal."  Bouevitch discloses an "add" port in Figure 11.  Figure 11 shows the port as 80b port 1, labelled "IN ADD" (annotated as "C" in *Id.*, Fig. 11-Annotation 1, § VIII.E.1(2), above). (*See* §§ VIII.E.1(3), VIII.E.6 (discussing element 1[b] and claim 6, above); Ex. 1028 at ¶ 114.)  Bouevitch explains that the purpose of the add port is for allowing a selected subset of channels to be added to a multi-wavelength signal.  Specifically, Bouevitch adds spectral channel $\lambda_2$ at the IN ADD port. (*Id.*, 14:27-65.)  Channel $\lambda_2$ is then added into the output multi-wavelength optical signal.  (*Id.*, 14:66-15:18 (channel $\lambda_2$ entering at annotation "D" in Fig. 11-Annotation 1 is added to another channel ($\lambda_1$), which together exit output port "C").)

### (2)   Element 16[e] – Addition of channels from add ports

With respect to element 16[e] ("whereby said spectral channels from said

52

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

add ports are selectively provided to said output port"), Bouevitch teaches that added channel $\lambda_2$ from the IN ADD port is selectively added to the final output channel that exits the "OUT EXPRESS" port (annotated as "E," in Fig. 11-Annotation 1, above). Depending on the orientation of MEMS mirror 52 in Fig. 11, the added channel $\lambda_2$ is either directed to the OUT EXPRESS port, or is reflected back along the same optical path to the ADD port from where it originated, thus dropping the channel. (*See id.*, 14:38-15:18; Ex. 1028 at ¶ 115.)

### 14.   Claim 17 – Grounds 1 and 2

Claim 17 is a method claim version of claim 1 with very minor additions. The preamble of claim 17 recites "A method of performing dynamic add and drop in a WDM optical network." Bouevitch describes a method for operating a "Configurable Optical Add/Drop Multiplexer (COADM)." (*See* § VIII.E.1(1), above; Ex. 1003 at Abstract; *see also Id.*, 3:9-63, 5:15–20; 14:14-21; Figs. 1, 11.) The "dynamic" portion of this preamble is discussed below for element 17[c]. Bouevitch also describes WDM (wavelength division multiplexing) as the background of the Bouevitch invention, in which the COADM operates to add/drop different wavelengths that are multiplexed together in the input port. (*See* Ex. 1003 at 1:18-30, 14:14-15:18; § V.) As for claims 1, 15 and 16, claim 17 is obvious under both Grounds 1 and 2, and Petitioner incorporates by reference its arguments for those claims here to avoid replication.

Capella_Infinera_000047931

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

### (1)   Element 17[a] – Separating signal into channels

What is identified here as claim 17[a] recites "separating an input multi-wavelength optical signal into spectral channels." Bouevitch discloses this step at Figure 11, where diffraction grating 20 spatially separates combined channels $\lambda_1\lambda_2$ ("A" at Fig. 11-Annotation 2, above) into spatially-separated channels. (*See, e.g.*, § VIII.E.1(4) (element 1[c]), above, Bouevitch, annotation "B"; Ex. 1003 at 14:48-53, 8:10–22; Ex. 1028 at ¶ 117.)

### (2)   Element 17[b] – Imaging channels

What is identified here as claim 17[b] recites "imaging each of said spectral channels onto a corresponding beam-deflecting element." Claim 21 confirms that one type of such "imaging" is focusing, by reciting "the method of claim 17, wherein said ***imaging comprises focusing*** said spectral channels onto said beam–deflecting elements" (emphasis added). By using the word "comprising" in claim 21, it indicates that imaging is apparently broader than focusing, and thus that imaging at least encompasses focusing. Therefore, art that teaches focusing necessarily discloses the "imaging" of element 17[b], because a species anticipates a claim to a genus. (MPEP §§ 2131.02.)

Bouevitch discloses this imaging step by using reflector 10 in Figure 11-Annotation 3, above, to image (focus) each channel onto a corresponding MEMS mirror element. (*See* § VIII.E.9 (claim 11), Ex. 1003 at Figs. 11, 6a, 15:7-11,

54

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

14:14-20, 48-55, Fig. 1, 8:46–49; Ex. 1004 at 12:43-50 ("lens system 202 focuses

the beams onto a MEMS mirror array 204, placing the gaussian waists of the

beams at the mirror surfaces."), Ex. 1005 at 7-8; Ex. 1028 at ¶ 119.)

### (3)   Element 17[c] – Dynamic & continuous 2-axis control

What is identified here as claim 17[c] recites: "controlling dynamically and

continuously said beam-deflecting elements in two dimensions so as to combine

selected ones of said spectral channels into an output multi-wavelength optical

signal and to control the power of the spectral channels combined into said output

multi-wavelength optical signal."  The only substantive difference between claim

17[c] and claim 1[d] is the addition in 17[c] of "controlling ***dynamically*** and

continuously."  Thus, other than for "dynamically," the method step of claim 17[c]

is disclosed by Bouevitch+Smith for all the reasons discussed for claim 1[d],

above. (*See* § VIII.E.1(5).)

As for "dynamically" controlling the beam-deflecting mirrors, both

Bouevitch and Smith contemplate this manner of control.  The plain and ordinary

meaning of "dynamically" in the context of the '368 patent is "during operation."

(*See* Ex. 1003 at 3:22-23 (contrasting routing that is fixed during operation: "the

[prior art] wavelength routing is intrinsically static, rendering it difficult to

dynamically reconfigure these OADMs."); Ex. 1028 at ¶ 121.)

55

Capella_Infinera_000047933

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

Both Bouevitch and Smith teach dynamic control during the operation of their add/drop devices. (Ex. 1028 at ¶ 122.)   Bouevitch's device can be used as a "dynamic gain equalizer and/or configurable add/drop multiplexer," which  plainly includes dynamic control of the mirrors that perform those actions. (*Id.*, 2:24-25.) Smith notes that it "is well known" that power control "should be dynamic and under feedback control since the various wavelength components *vary in intensity with time*." (*Id.*, 6:37-50; emphasis added, 2:23-31, 7:24-31).    The Smith Provisional also supports dynamic control, as is apparent from the fact that the Smith OADM accepts control signals/commands as it operates. (*See* Smith Provisional, Fig. 11 (noting "continuous" calibration and control by "network commands"), 7 (add/drop under control of an external (and thus changeable) signal); Ex. 1028 at ¶ 122.)

### 15.    Claim 18

Claim 18 recites "The method of claim 17, wherein said selected ones of said spectral channels comprises a subset of said spectral channels, such that other non-selected ones of said spectral channels are dropped from said output multi-wavelength optical signal."   Claim 18 is substantively identical to a portion of apparatus claim 15, whereby "a subset of said spectral channels is directed to said drop ports," and is disclosed by Bouevitch+Smith for the same reasons discussed for claim 15. (*See* § VIII.E.12.)    Unsurprisingly, because both Bouevitch and

Capella_Infinera_000047934

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

Smith describe optical add/drop multiplexers, both also describe dropping one subset of channels, adding others, and passing the resulting combination on through an output port.  For example, Bouevitch describes selecting a subset of combined channels $\lambda_1\lambda_2$ (i.e., the subset $\lambda_1$) to pass through to the output, while the non-selected channel, $\lambda_2$, is dropped. (*See* §§ VIII.E.5, VIII.E.6; Ex. 1028 at ¶114.)

### 16.    Claim 19

Claim 19 recites "The method of claim 18, wherein said controlling comprises reflecting said non-selected ones of said spectral channels to one or more drop ports."  Claim 19 is also substantively identical to a portion of apparatus claim 15, where the beam-deflecting elements reflect a subset of their corresponding channels to one or more drop ports.  Thus, claim 19 is disclosed by Bouevitch+Smith for the same reasons as for claim 15.  For example, if input channel is not selected for retention, it is reflected along a path where it exits the "OUT DROP" port in Bouevitch.  (*See id.*, 14:60-65, § VIII.E.12, above.)

### 17.    Claim 20

Claim 20 recites "The method of claim 17 further comprising imaging other spectral channels onto other corresponding beam-deflecting elements, and controlling dynamically and continuously said other beam-deflecting elements so as to combine said other spectral channels with said selected ones of said spectral channels into said output multi-wavelength optical signal."  The only limitations

57

Capella_Infinera_000047935

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

this dependent claim adds to the operations recited in parent claim 17 is imaging

(focusing) "other channels" to "other beam-deflecting elements" to combine the

resulting channels into one output signal.

In addition to the two channels and respective mirrors addressed for claim

17 (§VIII.E.14, above), both Bouevitch and Smith disclose arbitrarily-sized

ROADMS and explicitly discuss embodiments that process additional channels by

selectively reflecting them to respective deflecting elements.  (*E.g.*, Ex. 1028 at ¶

126; Ex. 1003 at 8:8-43 (discussing dropping $\lambda_3$, while passing through "the other

7 channels having central wavelengths $\lambda_1$-$\lambda_2$ and $\lambda_4$-$\lambda_8$."; Ex. 1004 at 12:4-11 ("An

NxN cross connect can be implemented by increasing the numbers of fibers"),

2:64-67; Ex. 1005 at 2 ("At the present time, commercially-available systems can

support 40, 2.5GHz channels").)

It was also obvious to perform the add/drop steps of Bouevitch+Smith on

additional spectral channels, as more channels provides additional (and desirable)

capacity in a WDM system, and multi-channel systems were known. (Ex. 1001 at

1:31-42; Ex. 1028 at ¶ 127.)

### 18.    Claim 21

Claim 21 recites "The method of claim 17, wherein said imaging comprises

focusing said spectral channels onto said beam–deflecting elements."  Claim 17[b]

already recites "imaging each of said spectral channels onto a corresponding beam-

Capella_Infinera_000047936

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

deflecting element." And Bouevitch discloses the recited "imaging" by using reflector 10 in Figure 11-Annotation 3, above, to image (focus) each channel onto a corresponding MEMS mirror element. (*See* § VIII.E.14(2), Ex. 1028 at ¶ 128.)

### 19.    Claim 22

Claim 22 recites "The method of claim 17 further comprising monitoring a power level in one or more of said selected ones of said spectral channels, and controlling an alignment between said input multi-wavelength optical signal and corresponding beam-deflecting elements in response to said monitoring."  Claim 22 is similar to claim 3, and is obvious for the same reasons. (*See* § VIII.E.3.) Under either Grounds 1 or 2, Smith explicitly describes the use of a feedback loop to control alignment of the angle of the beam-deflecting elements with respect to the angle of the input signals incident on those elements. (*See, e.g.* Smith, 16:9-11, 34-51; § VIII.E.1(5), "2-Axis Mirrors & Power Control" section, above.)  This angle affects alignment of those same signals and the output ports, which then determines the power level of the output ports, and which are in turn monitored to provide a feedback signal to further control the alignment of the beam-deflecting elements.  Specifically, Smith's controller "receives the outputs of the optical power monitor 218, or more specifically the detected optical intensities of the detector array, and accordingly readjusts the tilt positions of the micromirrors in the MEMS array." (*See* Ex. 1004 at 18:11-21 ("Moving a beam off maximum

59

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

alignment with its waveguide in the direction of a closely neighboring waveguide

may increase the cross talk"), Ex. 1005 at 6, Fig. 4; Ex. 1028 at ¶ 129.)

## IX.    WRITTEN DESCRIPTION SUPPORT FOR THE SMITH PATENT'S SEPTEMBER 22, 2000, PRIORITY DATE

The Smith Patent is § 102(e) prior art as of the September 22, 2000, filing

date of its corresponding provisional application, No. 60/234,683.  (*See* § VIII.A,

above.)  As shown by Petitioner's parallel citations above to both the Smith Patent

and Provisional, the Smith Provisional patent provides written description support

for each aspect of the Smith Patent which Petitioner relies upon.  (Ex. 1028 at

130.)  To further confirm the Smith Patent's priority date, Dr. Marom analyzed

each claimed feature of the claimed invention of the '368 patent and concluded that

both the Smith Patent and the Smith Provisional disclose each such feature. (Ex.

1028 at ¶¶ 130-132.)  As part of this analysis, Dr. Marom provides an element-by-

element comparison of the Smith Provisional and the Smith Patent in chart form in

his declaration. (Ex. 1028 at ¶ 132.)

Dated:  July 15, 2014

COOLEY LLP
ATTN: Wayne O. Stacy
1299 Pennsylvania Ave., NW, Suite 700
Washington, DC  20004
Tel: (703) 456-8000
Fax: (202) 842-7899

Respectfully submitted,
**COOLEY LLP**

By:    / Matt Leary /
Matt Leary
Reg. No. 58,593
Back-up Counsel

60

Capella_Infinera_000047938

Petition for *Inter Partes* Review of
U.S. Reissued Patent No. RE42,368

## CERTIFICATE OF SERVICE

Pursuant to 37 C.F.R.  §§ 42.6(e) and 42.105(b), the undersigned certifies that on

July 15, 2014, a complete and entire electronic copy of this **Petition for Inter**

**Partes Review No. 2014-01166**, including Exhibit Nos. 1001-1038 and a Power of

Attorney, was served via USPS EXPRESS MAIL, costs prepaid, to the Patent

Owner by serving the correspondence address of record as follows:

> LAW OFFICES OF BARRY N. YOUNG
> P.O.  Box 61197
> Palo Alto, CA  94306

A courtesy copy was also served via USPS EXPRESS MAIL on the Patent

Owner's counsel at the following address:

> Robert D. Becker
> MANATT, PHELPS & PHILLIPS, LLP
> 1841 Page Mill Road, Suite 200
> Palo Alto, CA 94304

> By:  / Matt Leary / _____
>      Matt Leary
>      Reg. No. 58,593
>      Back-up Counsel

1

Capella_Infinera_000047939