**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| CAPELLA PHOTONICS, INC., <br><br> Plaintiff <br><br> v. <br><br> INFINERA CORPORATION, TELLABS, INC., TELLABS OPERATIONS INC., CORIANT AMERICA INC., and CORIANT (USA) INC., <br><br> Defendants. | Civ. No. 2:20-cv-00077 |

**DEFENDANTS' MOTION (1) TO STRIKE CAPELLA'S UNTIMELY DISCLOSED
PRIORITY DATE OR, IN THE ALTERNATIVE, (2) FOR SUMMARY JUDGMENT
THAT THE EARLIEST POSSIBLE PRIORITY DATE OF THE ASSERTED CLAIMS IS
MARCH 19, 2001 OR THAT THE KRAMER AND ROSE PATENTS ARE PRIOR ART**

## **TABLE OF CONTENTS**

**Page**

I. CAPELLA SHOULD BE PRECLUDED FROM ASSERTING A PRIORITY DATE (WHETHER BASED ON A FILING DATE OR CONCEPTION AND REDUCTION TO PRACTICE) EARLIER THAN JANUARY 19, 2001 ................................................. 1

    A. Legal Standards ........................................................................................................ 1

    B. Capella Failed to Timely Disclose Its November 28, 2000 Priority Date .............. 1

    C. Capella's Failure to Timely Disclose Prejudiced Defendants ................................ 3

    D. Capella Should Be Precluded from Relying on a Priority Date Earlier than March 19, 2001 .................................................................................................................. 3

II. THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT THE EARLIEST PRIORITY DATE FOR THE ASSERTED CLAIMS IS MARCH 19, 2001 OR THAT THE KRAMER AND ROSE PATENTS ARE PRIOR ART ........................................... 5

    A. Issues to Be Decided By the Court .......................................................................... 5

    B. Statement of Undisputed Materials Facts ................................................................ 6

    C. Legal Standards ........................................................................................................ 7

    D. Argument .................................................................................................................. 9

        1. The Named Inventors Did Not Reduce the Alleged Invention to Practice Prior to March 19, 2001 ............................................................................... 9

        2. The Named Inventors Were Not Reasonably Diligent Throughout the Period Between Conception and Reduction to Practice ............................. 9

III. CONCLUSION ................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
　477 U.S. 242 (1986) ............................................................................................................... 8

*CQ, Inc. v. TXU Min. Co., L.P.*,
　565 F.3d 128 (5th Cir. 2009) .................................................................................................. 1

*Creative Compounds, LLC v. Starmark Labs.*,
　651 F.3d 1303 (Fed. Cir. 2011) .............................................................................................. 8

*Elbit Sys. Land & C4I Ltd. V. Hughes Network Sys., LLC*,
　No. 2:15-CV-00037-RWS-RSP, 2017 WL 2651618 (E.D. Tex. June 20, 2017) .......... 1, 3, 4, 5

*In re Mulder*,
　716 F.2d 1542 (Fed. Cir. 1983) ............................................................................................ 10

*Invitrogen Corp. v. Clontech Labs., Inc.*,
　429 F.3d 1052 (Fed. Cir. 2005) ......................................................................................... 9, 10

*Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*,
　964 F. Supp. 2d 653 (E.D. Tex. 2013) ................................................................................... 2

*Mahurkar v. C.R. Bard, Inc.*,
　79 F.3d 1572 (Fed. Cir. 1996) ................................................................................................ 8

*Masson v. New Yorker Magazine, Inc.*,
　501 U.S. 496 (1991) ............................................................................................................... 8

*Matsushita Elec. Indus. Co. v. Zenith Radio*,
　475 U.S. 574 (1986) ............................................................................................................... 8

*Monsanto Co. v. Mycogen Plant Science, Inc.*,
　261 F.3d 1356 (Fed. Cir. 2001) .............................................................................................. 9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 37(c)(1) ................................................................................................................. 1

Fed. R. Civ. P. 56(c) ..................................................................................................................... 7

I.  **CAPELLA SHOULD BE PRECLUDED FROM ASSERTING A PRIORITY DATE (WHETHER BASED ON A FILING DATE OR CONCEPTION AND REDUCTION TO PRACTICE) EARLIER THAN JANUARY 19, 2001**

Capella has been litigating this patent family since 2014. Yet, three weeks after the March 15, 2021 deadline for completing fact discovery and serving opening expert reports (including Defendants' opening invalidity report), Capella for the first time disclosed in its expert's rebuttal validity report an alleged priority date prior to March 19, 2001 (November 28, 2000). Defendants respectfully request that the Court strike this untimely disclosed priority date and preclude Capella from offering any argument or evidence in support of this date at trial.

   A.  **Legal Standards**

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In deciding whether a failure to disclose is harmless, courts consider (1) the party's explanation for its failure to disclose, (2) the importance of the evidence, (3) the potential prejudice to the opposing party in allowing the evidence, and (4) the availability of a continuance. *Elbit Sys. Land & C4I Ltd. V. Hughes Network Sys., LLC*, No. 2:15-CV-00037-RWS-RSP, 2017 WL 2651618, at *10 (E.D. Tex. June 20, 2017) (citing *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 128, 280 (5th Cir. 2009)).

   B.  **Capella Failed to Timely Disclose Its November 28, 2000 Priority Date**

Capella failed to disclose its new November 28, 2000 priority date prior to the close of fact discovery or the date on which Defendants served its expert's opening invalidity report. Capella was required to identify "the priority date to which each asserted claim allegedly is entitled" in its May 25, 2020 infringement contentions. P.R. 3-1(e). In its contentions, Capella asserted that "the Asserted Claims are entitled to priority dates of at least as early as March 19, 2001." Ex. 1 at 5.

1

Defendants later served an interrogatory on Capella on October 9, 2000, asking Capella to "[i]dentify and describe all factual and legal bases that support or contradict the priority date You contend that each Asserted Claim is entitled to." Ex. 2 at 6. Capella responded that "each claim of the Asserted Claims is entitled to a priority date of no later than March 19, 2001[,]" and cited the provisional application that was filed on March 19, 2001, consistent with its infringement contentions. Ex. 3 at 6–7.

Thereafter, Defendants informed Capella in a first meet-and-confer letter that Capella had "identified no facts or legal bases that would support a priority date earlier than March 19, 2001, such as (1) facts or legal bases of an earlier alleged conception date, (2) facts or legal bases of an earlier alleged actual or constructive reduction to practice date, or (3) facts or legal bases of alleged diligence between any alleged conception date and any alleged actual or constructive reduction to practice date." Ex. 4 at 6. Defendants specifically noted that Capella's failure to disclose any earlier priority date prejudiced Defendants' ability to conduct a factual investigation and prepare its defense (should Capella later assert an earlier priority date), and they indicated that they would move to strike any new priority date assertion. *See id.* (citing *Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 659 (E.D. Tex. 2013)). In response, Capella represented that it "w[ould] amend" its interrogatory response *if* it "intend[ed] to assert an earlier date." Ex. 5 at 5. Defendants sent Capella a second meet-and-confer letter on February 26, 2001 (several weeks before the close of fact discovery, *see* Dkt. 85 at 3), asking Capella to "immediately provide any supplements to these interrogatory responses" and informing Capella that it would "move to strike" if Capella "later tries to rely on any facts or raise any arguments that should have been presented in response to Infinera's interrogatories." Ex. 6 at 2. Capella represented to Defendants that it "stands by its responses." Ex. 7 at 1.

2

### C. Capella's Failure to Timely Disclose Prejudiced Defendants

Capella's failure to timely disclose an earlier priority date prejudiced Defendants because they relied on the March 19, 2001 priority date to identify prior art for their invalidity contentions, complete fact discovery, and assist its expert with preparing his opening invalidity report. Capella never supplemented its response to Interrogatory No. 1 prior to the March 15, 2021 close of fact discovery. When Defendants served the opening report of its invalidity expert on the same day, they (and its expert) relied on Capella's assertion of a March 19, 2001 priority date. *See* Ex. 8 at 10 n.1, 24–25, and 55. Despite the promises and representations made by Capella's counsel (1) that it would amend its response to Interrogatory No. 1 if it intended to assert an earlier date, (2) that Capella "stood by" its interrogatory responses, and (3) that Capella's interrogatory responses were "complete and accurate," Capella served the Expert Report of Dr. Alexander V. Sergienko on April 5, 2021, which—three weeks after the close of fact discovery and after Defendants served its expert's opening invalidity report—asserted for the first time that Capella is entitled to a priority date of November 28, 2000. *See* Ex. 9 at 13–16 (¶¶ 51–59). Dr. Serigenko opined that, based on this new priority date, several prior art references relied upon by Defendants' invalidity expert were not actually prior art. *See, e.g., id.* at 53 (¶ 181), 58 (¶ 220).

### D. Capella Should Be Precluded from Relying on a Priority Date Earlier than March 19, 2001

Given that (1) Capella failed to timely disclose its alleged November 28, 2000, and (2) Defendants relied on the later date that Capella actually disclosed (March 19, 2001), the Court should preclude Capella from asserting an earlier date. *See Elbit*, 2017 WL 2651618, at *10. In *Elbit*, the patent owner disclosed a filing date as an alleged priority date and changed its position "shortly before the close of fact discovery," arguing that the actual priority date was earlier "based on an earlier conception and reduction to practice." *Id.*, at *9. The Court found that this "change

3

in priority date was untimely under Rule 26(e)(1)." *Id.*, at *10. Here, the facts are even worse: Capella changed its alleged priority date **after** the close of fact discovery and **after** Defendants had served its expert's opening invalidity report. Accordingly, Capella's disclosure is untimely under Rule 26(e)(1).

Capella has argued in meet-and-confer correspondence that this disclosure is not untimely because the alleged *conception* date is different from the alleged *priority* date. *See* Ex. 10. This, however, is a distinction without a difference. **First**, the Court in *Elbit* recognized that a date earlier than the filing date achieved through alleged conception and reduction to practice is the "priority date." *See id.* at *9–10. **Second**, Defendants clearly stated in their first meet-and-confer letter to Capella on this issue that a complete response would require Capella's assertion and support of any alleged conception, reduction to practice, and diligence. *See* Ex. 4 at 6. Capella did not disagree: it instead promised to supplement its interrogatory response if it intended to assert an earlier date (Ex. 5 at 5) and thereafter failed to supplement.

Accordingly, the Court should strike this newly disclosed priority date (including Dr. Serigenko's opinions related to and reliance on this newly disclosed priority date in Paragraphs 51–59, 99, 181, and 220 of his expert report) and preclude Capella from asserting a priority date at trial earlier than March 19, 2001. Capella failed to disclose the earlier date, and it has no excuse for failing to do so. Capella's invalidity expert relies on only the provisional application itself as establishing this new purported priority date (*see* Ex. 9 at 13–16, ¶¶ 51–59), and the provisional application is what provided Capella's initial alleged priority date of March 19, 2001. Capella did not suddenly discover any new facts between March 15, 2021 (the close of fact discovery and deadline for serving opening expert reports) and April 5, 2021 (the deadline for serving rebuttal expert reports). Because Defendants were unable to conduct fact discovery targeted to this newly

4

alleged priority date, and because Defendants' expert relied on the March 19, 2001 priority date in his opening invalidity report, Defendants were prejudiced. Finally, because trial is only approximately three months away, "any continuance would delay trial." *Elbit*, 2017 WL 2651618, at *10. Accordingly, Capella should be precluded from relying on a priority date (including any date allegedly achieved through conception and reduction to practice) earlier than March 19, 2001.[1]

## II. THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT THE EARLIEST PRIORITY DATE FOR THE ASSERTED CLAIMS IS MARCH 19, 2001 OR THAT THE KRAMER AND ROSE PATENTS ARE PRIOR ART

Even if the Court does not strike Capella's new alleged priority date, Defendants respectfully request that the Court grant summary judgment against Capella because there is no genuine issue of material fact that the earliest priority date (via conception and diligent reduction to practice or otherwise) for the asserted claims is March 19, 2001 or that U.S. Patent No. 6,583,934 to Kramer (the "Kramer Patent") or U.S. Patent No. 6,978,062 to Rose et al. (the "Rose Patent") are prior art.

### A. Issues to Be Decided By the Court

Whether there is a genuine dispute of material fact that the asserted claims are not entitled to a priority date of November 28, 2000 because (1) the earliest date on which the asserted claims were reduced to practice was March 19, 2001, and (2) there is no evidence that the named inventors exercised reasonably continuous diligence between November 28, 2000 (Capella's newly alleged conception dated) and March 19, 2001 (the constructive reduction to practice date).

---

[1] If the Court does not strike Capella's newly-disclosed priority date or find that the earliest possible priority date of the '905 Patent is March 19, 2001, Defendants respectfully request that the Court reopen fact and expert discovery to allow Defendants to address Capella's newly disclosed theory.

5

Whether there is a genuine dispute of material fact that the Kramer and Rose Patents are prior art because (1) the earliest date on which the asserted claims were reduced to practice was March 19, 2001, and (2) there is no evidence that the named inventors exercised reasonably continuous diligence between February 9 or 21, 2001 (the days on which the applications for the Kramer and Rose Patents were filed) and March 19, 2001 (the constructive reduction to practice date).

B. **Statement of Undisputed Materials Facts**

Dr. Sergienko has opined that the Asserted Claims are entitled to a conception date of November 28, 2000. *See* Ex. 9 at 13–14 (¶¶ 52–53). The earliest constructive reduction to practice date of the Asserted Claims is March 19, 2001, when U.S. Provisional Application No. 60/277,217 (the "Provisional Application") was filed. *See* Ex. 11; Ex. 9 at 14 (¶¶ 54–55). Dr. Sergienko indicated that the November 28, 2000 document that allegedly shows conception may have been an actual reduction to practice. *See* Ex. 9 at 14 (¶ 54).

The time period between Capella's newly alleged priority date (November 28, 2000) and its date of alleged reduction to practice (March 19, 2001) is 111 days. *See* Ex. 12. The only evidence that Capella can identify for alleged diligence of the named inventors (aside from Dr. Sergienko's conclusory testimony) is (1) three drawings purportedly signed by one of the three named inventors (Jeffrey Wilde) on November 28, 2000 (*see* Ex. 13 at CAPELLA_000632–634), (2) two drawings purportedly signed by a second of the named inventors (Joseph Davis) on December 28, 2000 (*see id.* at 636–37), and (3) two pages dated (but not witnessed or signed) January 9, 2001 (*see id.* at 638–39). This is confirmed by Dr. Sergienko's (Capella's validity expert) own report:[2]

---

[2] The report references a signature on January 3, 2001, but it appears this signature is associated with a "Mark H. Garrett" (*see id.* at 636), who is not a named inventor (*see* Ex. 11).

> Here, the diligence period spans from November 28, 2000 to at least the inventors' constructive reduction to practice March 19, 2001. To show diligence during any of these periods, Capella relies on the signed and dated disclosure pages in Capella Provisional Appendixes A-D. The evidence shows that the inventors were diligently working on the conceived invention during the critical period to constructively reduce their invention to practice and/or file Capella Provisional. For example, the disclosure pages dated December 28, 2000 and signed January 3, 2001 in Capella Provisional Appendix C show the reconfigurable OADM with dynamic equalization improved by the inventors. *See* CAP_0002105-CAP_0002107. The disclosure pages dated January 9, 2001 in Appendix D show the technical specifications for dynamic optical add/drop multiplexer set up by the inventors. *See* CAP_0002108-CAP_0002109.
>
> Capella has shown conception by at least November 28, 2000 and constructively reduced to practice by at least March 19, 2001, and reasonable diligence from November 28, 2000 to a constructive reduction to practice.

Ex. 9 at 15–16 (¶¶ 58–59). Dr. Sergienko admitted at his deposition that he did not know what any of the named inventors were doing on any other day between November 28, 2000 and March 19, 2001. *See* Ex. 14 at 134:23–141:20, 149:18–150:18, 154:4–158:5. He admitted that his diligence opinions were speculative (*see id.* at 150:20–151:14, 157:7–157:24) and acknowledged that each page of the Provisional Application could have been drafted in as little as 20 minutes (*see id.* at 153:18–154:2).

The application for the Kramer Patent was filed on February 9, 2001. Ex. 15. Dr. Sergienko has opined that the Kramer Patent is not prior art because the Asserted Claims are entitled to an earlier priority date. *See* Ex. 9 at 58 (¶ 220). The application for the Rose Patent was filed on February 21, 2001. Ex. 16. Dr. Sergienko has opined that the Rose Patent is not prior art because the Asserted Claims are entitled to an earlier priority date. *See* Ex. 9 at 48 (¶ 181).

### C.  Legal Standards

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and thus "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The

court must draw all reasonable inferences in favor of the non-moving party. See *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991); *see also Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986). However, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *See Matsushita*, 475 U.S. at 588. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment is thus warranted. *See id.* at 587. Thus, the existence of a mere scintilla of evidence in support of the opposing party's position will not prevent entry of summary judgment; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

"Reduction to practice follows conception to show actual reduction to practice, an inventor must demonstrate that the invention is suitable for its intended purpose." *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1578 (Fed. Cir. 1996) (citation omitted). For even the most simple inventions, actual reduction to practice requires "complete construction" to "demonstrate workability." *Id.* (citation omitted).

"Where a party is first to conceive but second to reduce to practice, that party must demonstrate reasonable diligence toward reduction to practice from a date just prior to the other party's conception to its reduction to practice." *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1578 (Fed. Cir. 1996). "Merely asserting diligence is not enough; a party must 'account for the entire period during which diligence is required." *Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1312–13 (Fed. Cir. 2011).

### D. Argument

#### 1. The Named Inventors Did Not Reduce the Alleged Invention to Practice Prior to March 19, 2001

The named inventors did not reduce the invention to practice prior to March 19, 2001 because (1) the Provisional Application was not filed until March 19, 2001 (*see* Ex. 11) and (2) there is no evidence of an earlier actual reduction to practice. Dr. Sergienko identifies a *document* allegedly demonstrating a *conception date* as possible evidence of actual reduction to practice. *See* Ex. 9 at 14 (¶ 54). These three pages, however, merely show a *design*; they are not evidence that anything was actually constructed. *See* Ex. 13 at CAPELLA_000632–634. Accordingly, the earliest reduction to practice date that Capella can claim is the March 19, 2001 filing date of the Provisional Application. *See* Ex. 11; Ex. 9 at 14 (¶¶ 54–55).

#### 2. The Named Inventors Were Not Reasonably Diligent Throughout the Period Between Conception and Reduction to Practice

Because Capella can identify specific activity by the named inventors on only three days of the 111-day period , and because Dr. Sergienko's purported diligence testimony is conclusory and speculative, Capella's diligence allegation (and its untimely disclosed allegation for a priority date prior to March 19, 2001) cannot survive summary judgment. *E.g.*, *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1068 (Fed. Cir. 2005) (finding that an expert's conclusory assertions based on notebook entries "cannot carry [the patent owner]'s burden on summary judgment" on alleged diligence). "The evidence must show that the alleged earlier inventor was diligent throughout the *entire* critical period" and—although "there need not necessarily be evidence of activity on every single day if a satisfactory explanation is evidenced" (*Monsanto Co. v. Mycogen Plant Science, Inc.*, 261 F.3d 1356, 1369 (Fed. Cir. 2001) (citations omitted))—there is no explanation in the record for the 108 days that are completely unaccounted for during the 111-day period between conception and reduction to practice. *See* Ex. 14 at 134:23–141:20,

9

149:18–150:18, 154:4–158:5. Dr. Sergienko admitted that his diligence opinions were speculative (*see id.* at 150:20–151:14, 157:7–157:24) and acknowledged that each page of the Provisional Application could have been drafted in as little as 20 minutes (*see id.* at 153:18–154:2). Dr. Sergienko's conclusory opinion of diligence does not create a genuine issue of material fact. *E.g.*, *Invitrogen Corp.*, 429 F.3d at 1068. Accordingly, there is no genuine dispute of material fact that Capella cannot claim a priority date earlier than March 19, 2001. No rational juror could conclude on this record that the named inventors exercised reasonably continuous diligence.

Even if the de minimis alleged activity on November 28, 2000, December 28, 2000, and January 9, 2001 were sufficient to raise a genuine issue of material fact (it is not) as to reasonably continuous diligence between November 28, 2000 (the alleged conception date) and March 19, 2001 (the constructive reduction to practice date), that activity all occurred *prior* to the February 9, 2001 and February 21, 2001 filing dates of the Kramer and Rose Patents. There is no evidence of *any activity at all* during the critical period between the constructive reduction to practice dates of the Kramer and Rose Patents and the Asserted Patent (based on the filing date of the priority application), much less reasonably continuous diligence. Accordingly, there is at a minimum no genuine dispute of material fact that the Kramer and Rose Patents are prior art to the Asserted Claims. *See, e.g.*, *In re Mulder*, 716 F.2d 1542, 1545 (Fed. Cir. 1983) (affirming a finding of no diligence where there was no evidence of activity during a two-day critical period).

### III.    CONCLUSION

Defendants respectfully request that the Court strike Capella's untimely disclosed priority date of November 28, 2000, and preclude Capella from offering testimony or evidence in support of this priority date. Alternatively, Defendants respectfully request that the Court grant summary judgment that (1) Capella is not entitled to a priority date of November 28, 2000, or (2) that the Kramer and Rose Patents are prior art.

Dated: April 26, 2021

Respectfully submitted,

By: <u>/s/ Kurt Pankratz</u>
Kurt Pankratz (TX SBN 24013291)
Email: kurt.pankratz@bakerbotts.com
Melissa Muenks (TX SBN 24097442)
Email: melissa.muenks@bakerbotts.com
BAKER BOTTS LLP
2001 Ross Avenue, Suite 900
Dallas, TX 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503

Sarah J. Guske (CA SBN 232467)
Email: sarah.guske@bakerbotts.com
BAKER BOTTS LLP
101 California Street, Suite 3600
San Francisco, TX 94111-5843
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

John Fredrick Gaustad (CA SBN 279893)
*Pro Hac Vice*
Email: john.gaustad@bakerbotts.com
BAKER BOTTS LLP
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94301
Telephone: (650) 739-7500
Facsimile: (650) 739-7699

Lauren J. Dreyer (DC 1007189)
*Pro Hac Vice*
Email: lauren.dreyer@bakerbotts.com
BAKER BOTTS LLP
700 K Street NW
Washington, DC 20001
Telephone: (202) 639-7700
Facsimile: (202) 639-7890

*Attorneys for Defendants, Infinera Corporation, Tellabs, Inc., Tellabs Operations Inc., Coriant America Inc., and Coriant (USA) Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on April 26, 2021.

By: */s/ Kurt Pankratz*
Kurt Pankratz

**CERTIFICATE OF CONFERENCE**

I hereby certify that counsel has complied with the meet and confer requirement in Local Rule CV-7(h). The parties participated in a telephonic conference on April 26, 2021, which was attended for Defendants by Kurt Pankratz and John Gaustad of Baker Botts, L.L.P. and for Plaintiff by Robert Becker of Manatt, Phelps & Phillips and Chad Everingham of Ward, Smith & Hill, PLLC. No agreement could be reached, and therefore, discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve. Plaintiff opposes this motion.

By: */s/ Kurt Pankratz*
Kurt Pankratz